UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

MICHAEL L. McGINLEY, et al.,

        Plaintiffs,

vs.

LUV N' CARE, LTD., et al.,

        Defendant.

Case No 3:17-cv-00821 LEAD

Honorable Judge Terry A. Doughty

Magistrate Judge Karen L. Hayes

**DEFENDANTS' ANSWER TO
AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendants Luv n' care, Ltd. (LNC), Admar International, Inc. (Admar), Bayou Graphics & Design, LLC (BGD), BuyBabyDirect, LLC (BBD), Control Services, Inc. (CS) and HHHII, LLC (HI) (collectively the LNC Parties) hereby submit their answer to the Amended Complaint, affirmative defenses and counterclaims as follows:

1.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1 of the Amended Complaint and, therefore, deny those allegations.

2.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2 of the Amended Complaint and, therefore, deny those allegations.

3.      Defendants admit only so much of paragraph 3 of the Amended Complaint as alleges that LNC is "organized under the laws of Louisiana with its principal place of business at 3030 Aurora, Monroe, Ouachita Parish, Louisiana." Defendants deny the remaining allegations in paragraph 3 of the Amended Complaint.

4.      Defendants admit the allegations of paragraph 4 of the Amended Complaint.

5.      Defendants admit the allegations of paragraph 5 of the Amended Complaint.

6.      Defendants admit the allegations of paragraph 6 of the Amended Complaint.

7.      Defendants admit only so much of paragraph 7 of the Amended Complaint as alleges that CS is "organized under the laws of Louisiana with its principal place of business at 3030 Aurora, Monroe, Ouachita Parish, Louisiana."  Defendants deny the remaining allegations in paragraph 7 of the Amended Complaint.

8.      Defendants admit only so much of paragraph 8 of the Amended Complaint as alleges that HI is "a limited liability company organized under the laws of Florida."  Defendants deny the remaining allegations in paragraph 8 of the Amended Complaint.

9.      Defendants admit only so much of paragraph 9 of the Amended Complaint as alleges that Defendants LNC, Admar, BGD, BBD and CS have a continuous and systematic presence in the State of Louisiana."  Defendants deny the remaining allegations in paragraph 9 of the Amended Complaint.

10.      Defendants admit only so much of paragraph 10 of the Amended Complaint as alleges that the Court has original jurisdiction over the subject matter of Plaintiffs' claims to the extent they arise under the Patent Laws of the United States.  Defendants deny the remaining allegations in paragraph 10 of the Amended Complaint.

## GENERAL ALLEGATIONS

11.      Defendants admit only so much of paragraph 11 of the Amended Complaint as alleges that "[o]n October 28, 2008, the United States Patent Office" "issued United States Letters Patent No. 7,441,675 (the "'675 Patent") to McGinley and Brian Lau and that a "true and accurate copy of the '675 Patent" is attached to the Amended Complaint as Exhibit 1.  Defendants deny the remaining allegations in paragraph 11 of the Amended Complaint.

12.      Defendants admit only so much of paragraph 12 of the Amended Complaint as alleges that "[o]n July 20, 2010, the United States Patent Office" "issued United States Letters

Patent No. 7,757,895 (the "'895 Patent") to McGinley and Brian Lau and that a "true and accurate copy of the '178 Patent" is attached to the Amended Complaint as Exhibit 2. Defendants deny the remaining allegations in paragraph 12 of the Amended Complaint.

13. Defendants admit only so much of paragraph 13 of the Amended Complaint as alleges that "[o]n June 28, 2014, the United States Patent Office" "issued United States Letters Patent No. 8,636,178 (the "'178 Patent") to McGinley and Brian Lau and that a "true and accurate copy of the '178 Patent" is attached to the Amended Complaint as Exhibit 3. Defendants deny the remaining allegations in paragraph 13 of the Amended Complaint.

14. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14 of the Amended Complaint and, therefore, deny those allegations.

15. Defendants admit only so much of paragraph 15 of the Amended Complaint as alleges that the Untied States Patent and Trademark Office granted a Petition to Correct Inventorship and a Certificate of Correction is attached as Exhibit 4. Defendants deny the remaining allegations in paragraph 12 of the Amended Complaint.

16. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16 of the Amended Complaint and, therefore deny those allegations.

17. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17 of the Amended Complaint and, therefore deny those allegations.

18. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18 of the Amended Complaint and, therefore deny those allegations.

19. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19 of the Amended Complaint and, therefore deny those allegations.

20. Defendants lack knowledge or information sufficient to form a belief about the truth

of the allegations in paragraph 20 of the Amended Complaint and, therefore deny those allegations.

## COUNT I
### (Patent Infringement – Luv n' care)

21. Defendants repeat their responses to the preceding paragraphs.

22. Defendants admit the allegations of paragraph 22 of the Amended Complaint.

23. Defendants admit the allegations of paragraph 23 of the Amended Complaint.

24. Defendants admit the allegations of paragraph 24 of the Amended Complaint.

25. Defendants deny the allegations of paragraph 25 of the Amended Complaint.

26. Defendants deny the allegations of paragraph 26 of the Amended Complaint.

27. Defendants deny the allegations of paragraph 27 of the Amended Complaint.

28. Defendants deny the allegations of paragraph 28 of the Amended Complaint.

29. Defendants deny the allegations of paragraph 29 of the Amended Complaint.

30. Defendants deny the allegations of paragraph 30 of the Amended Complaint.

31. Defendants deny the allegations of paragraph 31 of the Amended Complaint.

32. Defendants deny the allegations of paragraph 32 of the Amended Complaint.

33. Defendants deny the allegations of paragraph 33 of the Amended Complaint.

## COUNT II
### (Patent Infringement – BBD)

34. Defendants repeat their responses to the preceding paragraphs.

35. Defendants deny the allegations of paragraph 35 of the Amended Complaint.

36. Defendants deny the allegations of paragraph 36 of the Amended Complaint.

37. Defendants deny the allegations of paragraph 37 of the Amended Complaint.

38. Defendants deny the allegations of paragraph 38 of the Amended Complaint.

39. Defendants deny the allegations of paragraph 39 of the Amended Complaint.

40.     Defendants deny the allegations of paragraph 40 of the Amended Complaint.

41.     Defendants deny the allegations of paragraph 41 of the Amended Complaint.

**COUNT III**
**(Single Business Enterprise/Alter Ego)**

42.     Defendants repeat their responses to the preceding paragraphs.

43.     Defendants deny the allegations of paragraph 43 of the Amended Complaint.

44.     Defendants deny the allegations of paragraph 44 of the Amended Complaint.

45.     Defendants deny the allegations of paragraph 45 of the Amended Complaint.

46.     Defendants deny the allegations of paragraph 46 of the Amended Complaint.

47.     Defendants deny the allegations of paragraph 47 of the Amended Complaint.

48.     Defendants deny the allegations of paragraph 48 of the Amended Complaint.

**AFFIRMATIVE DEFENSES**

Defendants hereby assert the following affirmative defenses to the Amended Complaint:

**FIRST AFFIRMATIVE DEFENSE**

The Amended Complaint fails to state any claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Defendants have not directly or indirectly infringed any claim of the '178 patent, either literally or under the doctrine of equivalents, and are not liable as an infringer with respect to any claim of the '178 patent.

**THIRD AFFIRMATIVE DEFENSE**

Based on the factual allegations set out below and incorporating by reference those allegations as if fully set forth herein, the '178 patent is unenforceable.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for damages are barred, in whole and in part, by 35. U.S.C. § 287.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' are not entitled to recover damages, in whole or in part, based on provisional rights under 35 U.S.C. § 154(d)(1) as a result of: (1) the failure to provide actual notice of the publication of the '178 patent application (US 2009/0045229 A1) to Defendants; (2) the lack of substantial identicality between the invention disclosed in US 2009/0045229 AI and the purported invention disclosed in the '178 patent; and (3) the admitted incorrect inventorship of the '178 patent and incorrect assignment of the '178 patent filed in the PTO. Plaintiffs' errors in both the inventorship and assignment of the '178 patent as compared to the purported corrected inventorship on the '178 patent misled Defendants into believing, based on the public record available in the PTO, that McGinley was not the sole inventor and owner by assignment of the '178 patent and, therefore, any notice of infringement by less than all the inventors identified in the assignment on record in the PTO is invalid.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs have waived and are estopped from seeking the recovery of damages for infringement of the '178 patent, including provisional damages under 35 U.S.C. § 154(d)(1), for the period of time since the issuance of the '178 patent and the purported correction of inventorship.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff McGinley is estopped from claiming sole inventorship of the '178 patent which claim is in direct contradiction of both the prosecution history of the '178 patent and assignment records maintained as a matter of public record in the PTO and Plaintiff's sworn statements, declarations

and judicial admissions that Lau is a co-inventor on the '178 patent.

## EIGHTH AFFIRMATIVE DEFENSE

The '178 and patent is invalid for failing to meet the patentability requirements of 35 U.S.C. §§102 and 103.  Prior art not presented to the U.S. Patent and Trademark Office (PTO) during the prosecution of U.S. Patent Application Serial No. 12/255,797 (the '797 application), including but not limited to U.K. Patent No. 2,269,811, CH Patent No. 274,789, and DE Published Patent Application Nos. 19,517,228 and 19,625,475 together with patents considered by the PTO such as U.S. Patent No. 2,610,490, render at least claims 1-2 and 6-7 of the '178 patent unpatentable as anticipated and obvious.

## NINTH AFFIRMATIVE DEFENSE

All claims of the '178 patent are invalid under 35 U.S.C. §102(f) in that the claimed invention was invented by another, namely McGinley acting alone, and that the named inventors Lau and McGinley did not invent the subject matter of those claims.

## TENTH AFFIRMATIVE DEFENSE

In the alternative and in light of the recent purported correction of inventorship and in direct conflict to sworn testimony, declarations and judicial admissions by Plaintiff McGinley, the '178 patent in invalid under 35 U.S.C. § 102(f) in that the claimed invention, now claimed to be the sole invention of McGinley acting alone, was invented in concert with Brian Lau and that both McGinley and Lau actually invented the alleged subject matter of the '178 patent.

## ELEVENTH AFFIRMATIVE DEFENSE

In the alternative, McGinley claims sole ownership by assignment of the '178 patent. The assignment of the '178 patent filed with the Assignment Records maintained by the PTO reflect that the co-inventors on the '178 patent are Counterclaim Defendant McGinley, Lau, and Gary L. Murphy. Mr. Murphy is not named as a co-inventor on the '178 patent and, therefore, the '178 patent is invalid

7

under 35 U.S.C. §102(f) for failure to name all of the inventors of the '178 patent as reflected in the assignment of the '178 patent filed in the PTO and relied upon by the public, including Defendant, to establish proper patent ownership of the '178 patent.

## TWELFTH AFFIRMATIVE DEFENSE

McGinley is not the owner of all right, title and interest in the '178 patent. Documents purporting to transfer ownership to McGinley expressly recognize that the '178 patent is owned by at least two others.

## THIRTEENTH AFFIRMATIVE DEFENSE

McGinley's express abandonment of the invention described and claimed in U.S. Patent Application Serial No. 357,651, an invention for a pitcher without a divider, constitutes a waiver and estoppel of any right to subsequently claim or seek a patent for an invention for a pitcher without a divider.

## FOURTEENTH AFFIRMATIVE DEFENSE

McGinley's express abandonment of the invention described and claimed in U.S. Patent Application Serial No. 357,651, an invention for a pitcher without a divider, constitutes a waiver and estoppel of any right to subsequently claim or seek a patent for an invention for a pitcher without a divider.

## FIFTEENTH AFFIRMATIVE DEFENSE

That the prosecution of the '797 application leading to the issuance of the '178 patent is so rife with mistakes and/or material misrepresentations as to proper inventorship and assignment of ownership in the '178 patent and that Defendant has correctly asserted invalidity due to incorrect inventorship as now confirmed by Plaintiff McGinley's recent successful petitioning of the PTO to correct inventorship to name him as the sole inventorship in an effort to rescue the validity of

8

the '178 patent, that the public record available in the PTO to accused infringers of the '178 patent, including Defendant, prior to the PTO's August 7, 2017 correction of inventorship confirms that Plaintiff is not entitled to a finding of willful infringement or enhanced damages under 35 U.S.C. §284 and/or the recovery of attorneys' fees under 35 U.S.C. §285 against Defendant.

## COUNTERCLAIMS

For their counterclaims against Plaintiffs, Defendants state as follows:

1.      Counterclaim Plaintiffs' counterclaims seek damages and injunctive relief for trade dress infringement, false advertising, false representation and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., and under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, *et seq* for Counterclaim Defendants' acts of unfair competition associated with the manufacture, distribution and sale of rinse pails and for a declaratory judgment of non-infringement, invalidity and unenforceability of the '178 patent.

2.      Rinse pails are used to rinse the heads of toddlers at bath time. Counterclaim Defendants, who have acted jointly as a single business enterprise, have knocked-off Counterclaim Plaintiffs' innovative, elegant and attractive rinse pail design, and then used photographs of the knock-off rinse pail to compete unfairly with Counterclaim Plaintiffs in a classic bait-and-switch scheme. Counterclaim Defendants have also created web advertisements falsely describing the availability of its knock-off product. These acts by Counterclaim Defendants have caused and will continue to cause grave injury and damage to Counterclaim Plaintiffs unless enjoined by this Court.

**THE COUNTERCLAIM PARTIES**

3.      Counterclaim Plaintiff Luv n' care, Ltd. (LNC) is a Louisiana corporation having its principal place of business in Monroe, Louisiana.

4.      Counterclaim Plaintiff Admar International, Inc. (Admar) is a Delaware corporation having its principal place of business in Monroe, Louisiana.

5.      Counterclaim Plaintiff Bayou Graphics & Design LLC (BGD) is a Louisiana limited liability corporation having its principal place of business in Monroe, Louisiana.

6.      Counterclaim Plaintiff BuyBabyDirect, LLC (BBD) is a Louisiana limited liability corporation having its principal place of business in Monroe, Louisiana.

7.      Counterclaim Plaintiff Control Services, Inc. (CS) is a Louisiana corporation having its principal place of business in Monroe, Louisiana.

8.      Counterclaim Plaintiff HHHII, LLC (HI) is a Florida limited liability corporation having its principal place of business in Monroe, Louisiana.

9.      Counterclaim Defendant S.C. Products, Inc. (SCP) is a Missouri corporation having its principal place of business located at 4010 Washington Street, Suite 201, Kansas City, Missouri 64111.

10.     Counterclaim Defendant Michael L. McGinley (McGinley) is an individual residing in Prairie Village, Kansas, and upon information and belief is an officer, director and the controlling party of Counterclaim Defendant SCP.

11.     Upon information and belief, at all times relevant to the acts and omissions forming the basis of this action, Counterclaim Defendants SCP and McGinley have operated as a single business enterprise under Louisiana Law.

**JURISDICTION AND VENUE**

12.     The Court has jurisdiction over the counterclaims pursuant to: (i) 28 U.S.C. §§ 1331 and 1338(a) because the counterclaims arise under the Trademark Laws of the United States; (ii) 28 U.S.C. § 1332(a)(1) because the matter exceeds the sum or value of $75,000, exclusive of interests and costs, and is a controversy between citizens of different states, the Counterclaim Plaintiffs being citizens of the States of Louisiana, Delaware and Florida, and the corporate Counterclaim Defendant being a citizen of the State of Missouri, and the individual Counterclaim Defendant being a citizen of the State of Kansas; (iii) the Declaratory Judgment Act, §§ 2201 and 2202, in that the declaratory judgment counterclaim is based in part on an actual case and controversy between the parties regarding the alleged infringement, validity and enforceability of the '178 patent; (iv) 28 U.S.C. § 1338 (a) and (b) because the counterclaims arising under the Lanham Act and the assertion of the Louisiana unfair competition claim is joined with a substantial and related claim under the Trademark Laws of the United States; and (v) the Court may exercise supplemental jurisdiction over these counterclaims under 28 U.S.C. § 1367(a) as they are so related to claims in this action falling within the original jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1338 and the exercise of supplemental jurisdiction over these counterclaims does not otherwise conflict with 28 U.S.C. § 1367(b).

13.     The Court has personal jurisdiction over the Counterclaim Defendants by virtue of their having conceded and waived any objections to both jurisdiction and venue in this court.

**FACTS RELEVANT TO COUNTERCLAIMS**

14.     Counterclaim Plaintiff LNC was founded in Monroe, Louisiana by Eddie Hakim who, in the 1980's, invented and commercialized a revolutionary no-spill cup. Both before and since that time, LNC has continued as a designer and seller of innovative, high quality attractive

11

products for babies and small children. Based on its innovative, high quality and attractive designs, LNC is now known as one of the leading baby product companies in the world. LNC's headquarters are in Monroe, Louisiana, where it conducts most of its business, maintains its corporate books and records, and where its officers and directors are located.

15.     LNC's products are sold in the United States, including the territory of the Western District of Louisiana, by major retailers such as Wal-Mart, Toys "R" Us, Babies "R" Us, Target and others. LNC's products are also resold by others through online retailers such as Amazon.com. LNC's products are also available in some 150 foreign countries.

16.     LNC enjoys a good reputation with consumers, both in the United States and internationally, for innovative, high quality and attractive product designs.

17.     LNC's products are among the most popular and well-known products in the baby products industry and those products are famous throughout the United States and worldwide.

18.     LNC products are purchased and sold by independent retailers in interstate and international commerce under various registered and common law trademarks including the mark NUBY.

19.     On March 28, 2000, United States Trademark Registration No. 2,335,700 for the mark NUBY was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO"). The NUBY trademark registration is valid and subsisting. Pursuant to 15 U.S.C. § 1065, the NUBY trademark registration has been deemed incontestable by the USPTO.

20.     LNC is a licensee of the NUBY mark.

12

21.     The NUBY mark is a distinctive symbol which serves as the predominant trademark for LNC's products promoted and sold in the United States and throughout the world.

22.     The appearance of LNC's products, packaging, and the NUBY mark are distinctive symbols, which serve as trademarks for LNC's products in the United States and throughout the world.

23.     As a result of LNC's long term, continuous and extensive use of the NUBY mark, it has acquired common law rights to that mark for the products to which it has been applied.

24.     LNC uses the NUBY mark on a wide variety of baby and children's products sold in the United States including rinse pails.

25.     LNC's long term, continuous and extensive use of the NUBY mark on innovative, high quality and attractive products, including rinse pails, has generated substantial good will for LNC associated with the NUBY mark.

26.     As a result of LNC's innovative and attractive designs, together with an uncompromising commitment to high quality and consumer safety, extensive promotional activities by independent retailers together with its widespread and substantial sales, LNC's products, packaging and the NUBY mark have all become widely known throughout the United States and worldwide and have become directly associated with LNC as a source of innovative, attractive, safe, and high-quality products.

27.     The NUBY mark is a famous mark.

28.     The NUBY mark, the appearance of LNC's products, and their product configurations, together with the associated packaging, are distinctive, have all become very well

known, have accrued secondary meaning, and are recognized as identifying LNC as the sole source of its products. Consumers have come to associate LNC's innovative and distinctive rinse pail product configuration solely and exclusively with LNC.

29.     Counterclaim Defendant SCP purports to be a Missouri corporation located in Kansas City, Missouri.

30.     Counterclaim Defendant McGinley purports to be a Kansas resident, and upon information and belief, is an officer and director of defendant SCP.

31.     McGinley and SCP have engaged in a joint venture and enterprise to unlawfully and unfairly compete with LNC in the sale of rinse pails. Upon information and belief, McGinley dominates and controls SCP and uses SCP for his own personal pecuniary gain. Upon further information and belief, McGinley has used SCP as a conduit to funnel ill-gotten gains from SCP to himself. SCP and McGinley operate as a single business enterprise under Louisiana Law, all of which will be more thoroughly established following a reasonable opportunity to conduct discovery.

32.     Sometime prior to March 2012, SCP began selling a rinse pail it calls a Shampoo Rinse Cup. The original version of the SCP Shampoo Rinse Cup was poorly constructed unattractively boxy with harsh blunt corners, a generally flat front face and a divider. Because of the divider, the SCP Shampoo Rinse Cup could not be stacked. Upon information and belief, the original SCP Shampoo Rinse Cup was not a successful product.

33.     At some time prior to March 2012, LNC became aware of the original SCP Shampoo Rinse Cup and reached the conclusion that a better designed, more attractive, rinse pail had the potential to become a successful product. Before undertaking a new product design effort,

14

LNC conducted an investigation to determine to what extent, if any, there were patents that might limit LNC's design efforts.

34.     That investigation uncovered the '651 Application, the '675 and '895 patents and the published '797 Application. After a careful investigation, it was determined that an undivided rinse pail was in the public domain. The basis for this determination was (i) the express abandonment of the '651 Application directed to an undivided rinse pail, (ii) the express requirement of a divider limitation included in all the claims of both the '675 and '895 patents and the '797 Application, and (iii) the extensive prosecution history of the '675 and '895 patents detailing the requirement for the divider limitation in order to be patentable.

35.     LNC then designed an innovative and elegant rinse pail having graceful curves with no blunt corners and no divider – it was both attractive and, unlike the SCP Shampoo Rinse Cup, it could be stacked.

36.     The LNC rinse pail, known as the Nûby Tear-Free Rinse Pail, was introduced in March 2012 and quickly became a successful product.

37.     Having failed in the marketplace and unable to compete fairly with LNC, McGinley and SCP, acting as one, upon information and belief, conspired together to hatch a scheme to trick consumers into purchasing the original SCP Shampoo Rinse Cup by copying LNC's rinse pail including its distinctive product configuration trade dress, offering that knock-off copy to consumers intending those consumers to think the knock-off was the LNC rinse pail, then in a classic bait-and-switch operation, actually delivered the original SCP Shampoo Rinse Cup to those who ordered the knock-off copy. At the same time, SCP and McGinley began

threatening and attempting to intimidate LNC with expensive patent litigation in an effort to exclude LNC's superior rinse pail from the market.

38.     Upon information and belief, SCP, operating together as a single business enterprise or alternatively acting as an instrumentality of McGinley, copied LNC's elegant and attractive rinse pail creating a knock-off rinse pail product. In contrast to the original SCP Shampoo Rinse Cup, the copying of LNC's rinse cup product included the ability to be stacked. SCP then uses the knock-off rinse pail to lure consumers to various e-commerce sites where SCP purports to offer the knock-off product for sale. Upon information and belief, consumers who see SCP's knock-off rinse pail are likely to be confused into believing they are being offered the LNC rinse pail. Then, when a consumer orders the SCP knock-off, SCP pulls a bait-and-switch and delivers the original SCP Shampoo Rinse Cup!

39.     Not only is the product delivered to the consumer not what the consumer ordered, but it is an inferior, low quality product that is poorly constructed and is unattractive. A consumer who receives SCP's inferior, low quality, unattractive product, thinking it to be associated with LNC, is likely to associate the inferior, low quality, unattractive product with LNC potentially damaging LNC's reputation. There is also a risk that post purchase consumers who see or acquire SCP's inferior, low quality, unattractive product thinking it to be in some way associated with LNC are likely to associate the inferior, low quality, unattractive product with LNC potentially damaging LNC's reputation with respect to the rinse pail but also to other LNC products as well.

40.     SCP claims it sells its SCP Shampoo Rinse Cup throughout the United States and the Western District of Louisiana through various retailers including Bed Bath & Beyond,

16

Walmart, buybuy Baby, and Baby Depot. SCP's Shampoo Rinse Cup is also offered for sale on Amazon.com throughout the United States and the Western District of Louisiana.

41.    SCP also advertises and promotes SCP Shampoo Rinse Cup on its own website: www.scproducts.net. SCP's website is accessible throughout the United States including the Western District of Louisiana. SCP's website also promotes a "Stackable Shampoo Rinse Cup" that is a knock-off of LNC's rinse pail.

42.    On its website, SCP states in its advertising "Find our Products at these stores and web sites." The websites listed are Bed Bath & Beyond, Wal-Mart, buybuy Baby and Baby Depot. The implication of the statement is that a potential customer can purchase the SCP Shampoo Rinse Cup from any of the four listed retailers. Upon information and belief, this statement is literally false. Upon further information and belief, the SCP Shampoo Rinse Cup is not available from either Wal-Mart or Baby Depot and what's actually offered by Bed Bath & Beyond and buybuy Baby is not what is sold or delivered.

43.    When a potential customer performs a search for the SCP Shampoo Rinse Cup on the Walmart website, the Walmart site displays a notice that "This item is no longer available. We're unable to show you buying options for this item."

44.    When a potential customer performs a search for the SCP Shampoo Rinse Cup on the Baby Depot website, a search panel is displayed but no product is shown. When the consumer searches for a rinse cup, LNC's rinse pail is offered.

45.    74. Despite SCP's representations that its products are at the stores and websites of Bed Bath & Beyond, Walmart, BuyBuyBaby and Baby Depot, upon information and belief, the

17

product is not at the stores or websites of Walmart and Baby Depot making the statement literally false.

46.    Both product sellers and consumers view a product's availability from a major retailer such as Bed Bath & Beyond, Walmart, BuyBuyBaby and Baby Depot as validation for the product. Upon information and belief, SCP falsely advertises its SCP Shampoo Rinse Cup product's availability on the stores and websites of Wal-Mart and Baby Depot as a way to build product validation and induce potential customers to purchase the SCP Shampoo Rinse Cup instead of LNC's rinse pail. Upon information and belief, SCP's false advertising has the effect of directing and enticing LNC's customers into buying the SCP Shampoo Rinse Cup. LNC is damaged by SCP's false advertising statement.

47.    SCP's false advertising statement together with its copying of LNC's rinse pail design has damaged LNC by falsely suggesting to the consuming public that SCP has some proprietary right in an undivided rinse pail.

48.    SCP's Shampoo Rinse Cup is sold in the United States in the same channels of trade as LNC's NUBY branded rinse pail and in fact, the two products are often offered side-by-side on the same web page. SCP's Shampoo Rinse Cup competes directly with LNC's NUBY branded rinse pail.

49.    A consumer considering the purchase of a NUBY branded rinse pail is likely to be presented with SCP's Shampoo Rinse Cup as an alternative or competing product.

50.    SCP's advertising and promotional material featuring the prominent false claim that it is available at Wal-Mart and Baby Depot is likely to attract the attention of consumers seeking to purchase a rinse pail. For those consumers seeking to purchase a rinse pail from a

18

validated seller, SCP's false statement is likely to persuade that consumer to purchase the SCP Shampoo Rinse Cup instead of the NUBY branded rinse pail.

51.     SCP's false statements also create a substantial risk of reputational damage to LNC because consumers seeing SCP's false claim are likely to question LNC's innovativeness, potentially diminishing LNC's highly valuable NUBY brand.

52.     Upon information and belief, Defendant SCP's conduct is willful, deliberate, intentional and in bad faith.

53.     Upon information and belief, consumers who would have purchased LNC's NUBY branded rinse pail instead purchased SCP's Shampoo Rinse Cup. But for SCP's unlawful conduct, at least a portion of SCP's sales would have been LNC's sales.

54.     The damage to LNC's NUBY brand caused by SCP's false representation is incalculable and irreparable.

55.     LNC respectfully requests an immediate halt to SCP's false statements, claims and representations.

56.     Counterclaim Defendant McGinley purports to be the owner of the '675 patent, the '895 patent and the '178 patent. Upon information and belief, Counterclaim McGinley calls these patents his Rinse Cup Patents.

57.     SCP purports to be the exclusive licensee of the Rinse Cup Patents.

58.     Defendants McGinley and SCP have threatened LNC in writing by "formally" notifying LNC of its "Rinse Cup Patents and demanding that LNC immediately cease and desist from infringing the '178 Patent" in a letter dated April 1, 2014.

19

59.    On March 30, 2016, Defendants McGinley and SCP sued LNC for infringement of the '178 patent in the United States District Court for the Western District of Missouri.

60.    In their complaint against LNC, Defendants McGinley and SCP have also made allegations with respect to the '675 patent.

61.    Defendant McGinley has verbally accused LNC of infringing his Rinse Pail Patents including the '675 and '895 patents.

62.    Upon information and belief, Defendant McGinley has verbally accused LNC's customers of infringing his Rinse Pail Patents including the '675 and '895 patents.

63.    As evidenced by the Complaint, an actual, substantial controversy involving allegations of infringement of the '178 patent exists of immediate and sufficient scope so as to warrant a Declaratory Judgment as to the non-infringement, invalidity and unenforceability of the '178 patent.

64.    At all times pertinent to this matter, upon information and belief, SCP has been under the direct control of McGinley and all its actions have been at his behest and direction. Upon information and belief, McGinley and SCP constitute a single business enterprise under Louisiana Law with McGinley as the dominant parent entity. As such, the Court should disregard the allegedly separate identities of McGinley and SCP and hold them jointly and severally liable for one another's unlawful acts as alleged herein.

## FIRST COUNTERCLAIM – TRADE DRESS INFRINGEMENT
### (Lanham Act Violation, 15 U.S.C. § 1125(a))

65.    Counterclaim Plaintiffs repeat and reallege each and every allegation contained in the foregoing and following paragraphs as if fully set forth herein.

66.    LNC designed and created a unique, innovative, attractive and distinctive rinse pail having a product configuration that functions as trade dress.

67.    Through substantial marketing efforts including extensive promotion, advertising and sales by independent retailers, LNC's rinse pail product configuration has acquired secondary meaning and has become in the minds of the relevant consuming public an indicator of origin associated solely and exclusively with LNC.

68.    Counterclaim Defendants have created a knock-off copy of LNC's distinctive rinse pail product configuration without authority or permission from LNC.

69.    Counterclaim Defendants' advertising, promotion, marketing, offer for sale and sale over the internet of a rinse pail that adopts the distinctive product configuration of LNC's rinse pail are broadcast throughout the United States including the Western District of Louisiana. Upon information and belief, Counterclaim Defendants have sold their knock-off copies of LNC's rinse pail with its distinctive product configuration in the Western District of Louisiana.

70.    Counterclaim Defendants' use of confusingly similar knock-off copies of LNC's rinse pail product configuration trade dress is likely to cause confusion, deception, or to cause mistake by creating the false and misleading impression that Counterclaim Defendants'

21

confusingly similar knock-off product is manufactured or distributed by LNC, or is associated or connected with LNC, or have the sponsorship, endorsement or approval of LNC.

71.     Counterclaim Defendants have used confusingly similar knock-off product configuration trade dress similar to LNC's trade dress in violation of 15 U.S.C. § 1125(a). Counterclaim Defendants' activities have caused and unless enjoined by this Court will continue to cause a likelihood of confusion and deception of members of the consuming public, and, additionally, injury to LNC's goodwill and reputation as symbolized by the LNC trade dress, for which LNC has no adequate remedy at law.

72.     Counterclaim Defendants' actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with the LNC trade dress to LNC's great and irreparable harm.

73.     Unless enjoined, Counterclaim Defendants have caused and are likely to continue causing substantial injury to the consuming public and to LNC's business reputation and goodwill which damage is irreparable and cannot be adequately compensated by money damages entitling LNC to entry of preliminary and permanent injunctive relief.

74.     LNC is also entitled to recover Counterclaim Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF – FALSE ADVERTISING**
**(Lanham Act Violation, 15 U.S.C. § 1125(a))**

75.     Counterclaim Plaintiffs repeat and reallege each and every allegation contained in the foregoing and following paragraphs as if fully set forth herein.

22

76. Counterclaim Defendants sell their SCP Shampoo Rinse Cup in interstate commerce.

77. Counterclaim Defendants market and promote the SCP Shampoo Rinse Cup using promotional material and advertising that contain the statement to the effect that the SCP Shampoo Rinse Cup can be purchased on the Walmart and Baby Depot websites.

78. Counterclaim Defendants' SCP Shampoo Rinse Cup cannot be purchased on the Walmart or Baby Depot websites and upon information and belief cannot be purchased at Wal-Mart or Baby Depot stores.

79. Counterclaim Defendant SCP's statement and claim is literally false and misleading.

80. Upon information and belief, SCP's false statement is likely to deceive or confuse consumers concerning an important material fact considered by consumers in deciding which brand of rinse pail to purchase.

81. Upon information and belief, this deceptive conduct by Counterclaim Defendants is and has been deliberate and has injured and continues to injure LNC and consumers.

82. Counterclaim Defendants know or should know that their statement regarding the rinse cup availability is false and misleading.

83. Counterclaim Plaintiff LNC has been and continues to be damaged by Counterclaim Defendants' false statements and claims made in their advertising and promotional materials, including through direct diversion of sales from LNC to Counterclaim Defendants and the lessening of the goodwill that LNC enjoys among the buying public.

84.     Counterclaim Plaintiff LNC has no adequate remedy at law to redress these injuries and is entitled to preliminary and permanent injunctive relief.

### THIRD CLAIM FOR RELIEF – FALSE REPRESENTATION
#### (Lanham Act Violation, 15 U.S.C. § 1125(a))

85.     Counterclaim Plaintiffs repeat and reallege each and every allegation contained in the foregoing and following paragraphs as if fully set forth herein.

86.     LNC designed and created a unique and innovative superior rinse pail having a distinctive product configuration that functions as trade dress.

87.     Through substantial marketing, promotion and advertising by retailers, the product configuration of LNC's rinse pail has acquired secondary meaning and has become in the minds of the relevant consuming public an indicator of origin associated with LNC.

88.     Counterclaim Defendants have created a knock-off copy of LNC's distinctive rinse pail without authority or permission from LNC.

89.     Counterclaim Defendants advertise and offer for sale over the internet a rinse cup that adopts the distinctive product configuration of LNC's rinse pail. Counterclaim Defendants' advertisements and offers for sale are broadcast over the internet throughout the United States including the Western District of Louisiana.

90.     Consumers ordering Counterclaim Defendants' knock-off copy of LNC's rinse pail product configuration are likely to be confused into believing they are ordering LNC's rinse pail when in fact they are ordering the knock-off copy. Consumers are then further confused by Counterclaim Defendants' bait-and-switch delivery of the original SCP Shampoo Rinse Cup. Counterclaim Defendants' conduct constitutes a false representation of its goods.

91.    Upon information and belief, Counterclaim Defendants' conduct is willful, deliberate, intentional and in bad faith.

92.    Upon information and belief, consumers who would have purchased LNC's NUBY branded rinse pail instead purchased Counterclaim Defendants' Shampoo Rinse Cup. But for Counterclaim Defendants' unlawful conduct, at least a portion of Counterclaim Defendants' sales would have been LNC's sales.

93.    By reason of the foregoing acts, Counterclaim Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Counterclaim Plaintiff LNC.

94.    Counterclaim Plaintiff LNC has no adequate remedy at law to address these injuries.

### FOURTH CLAIM FOR RELIEF
### (Violation of Louisiana Unfair Trade Practices and Consumer Protection Law , La. R.S. 51:1401, *et seq.* )

95.    Counterclaim Plaintiffs repeat and reallege each and every allegation contained in the foregoing and following paragraphs as fully set forth herein.

96.    Counterclaim Defendants' infringement of LNC's distinctive trade dress, false advertising and bait-and-switch misrepresentation as detailed herein constitute unfair and deceptive practices prohibited by the Louisiana Unfair Trade Practices and Consumer Protection Laws.

97.    Counterclaim Defendants' use of a knock-off copy of LNC's distinctive trade dress in the promotion, advertising, distribution and sale of that knock-off copy is taking place

25

within the State of Louisiana and constitutes trade dress infringement prohibited by the Louisiana Unfair Trade Practices and Consumer Protection Laws.

98. Counterclaim Defendants' false and misleading advertisements, made in the State of Louisiana in the course of their business, concerning the availability of their rinse cup is a false and misleading statement regarding a material fact affecting a consumer's decision to purchase rinse pails. Those false and misleading advertisements are broadcast over the internet within the State of Louisiana and are unfair and deceptive practices prohibited by the Louisiana Unfair Trade Practices and Consumer Protection Laws.

99. Counterclaim Defendants' use of a knock-off copy of LNC's distinctive trade dress in a bait-and-switch scheme whereby consumers are offered the knock-off copy over the internet broadcast in Louisiana but when they order the knock-off copy they are shipped a different and inferior product constitutes a false representation and unfair and deceptive practice in violation of the Louisiana Unfair Trade Practice and Consumer Protection Law.

100. Counterclaim Plaintiff LNC has been and continues to be damaged by Defendants' unfair and deceptive practices in an amount to be determined at trial.

101. Upon information and belief, Counterclaim Defendants' conduct is willful, deliberate, intentional and in bad faith.

102. By reason of the foregoing acts, Counterclaim Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Counterclaim Plaintiff LNC.

103. Counterclaim Plaintiff LNC has no adequate remedy at law to address these injuries.

## FIFTH COUNTERCLAIM
### (Declaratory Judgment of Non-infringement and Invalidity of the '675 and '895 Patents)

104.    Counterclaim Plaintiffs repeat and reallege each and every allegation contained in the foregoing and following paragraphs as if fully set forth herein.

105.    This Court may declare the rights and other legal relations of the parties in this action under 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57, because an actual and justiciable controversy exists concerning the rights of, and legal relations between, Plaintiffs and Defendant as regards infringement of the '675 and '895 patents.

106.    The Amended Complaint present allegations regarding the issuance and ownership by Counterclaim Defendant McGinley of the '675 patent and the licensing of same to Counterclaim-Defendant SCP. However, the Complaint only alleges infringement by Counterclaim Plaintiffs LNC and BBD of the '178 patent.

107.    The '895 patent is a continuation-in-part of the '675 patent.

108.    Briefing in the previous action pending in this Court prior to the transfer and consolidation of the Missouri Action, confirmed that both the '675 patent claims and the '895 patent claims contain a limitation requiring the presence of a divider in the rinse pail. Counterclaim Defendant McGinley has provided sworn testimony confirming that both the '675 patent and the '895 patent "cover a flexible panel pitcher that includes a divider" and that the accused *Nuby Tear Free Rinse Pail* does not include a divider.

109.    The LNC Parties do not directly or indirectly infringe the '178, '675 or '895 patents either literally or under the doctrine of equivalents as LNC does not sell a rinse pail product with a divider as required by the claims of both the '675 patent and the '895 patent. LNC also does

27

not induce others or contribute to the infringement of the '675 patent and/or the '895 patent for this same reason.

110. LNC does not infringe any valid claim of either the '675 or '895 patents.

111. To the extent that Counterclaim Defendants seek to assert infringement of the '675 or '895 patents by Counterclaim Plaintiffs' *Nuby Tear Free Rinse Pail*, the '178, '675 and '895 patents are invalid as unpatentable under 35 U.S.C. §§ 102, 103 and 112.

112. Despite verified testimony from Counterclaim Defendant McGinley that the accused *Nuby Tear Free Rinse Pail* does not include a divider as required by the claims of both the '675 patent and the '895 patent, Counterclaim Defendants have incorporated the '675 patent into the Amended Complaint under circumstances that lead the LNC Parties to believe that they have been threatened with infringement of this patent as well as the '895 patent which issued as a continuation-in-part of the '675 patent. While Counterclaim Defendants' allegations in the Amended Complaint as to the '675 patent are not relevant to the actual infringement allegations as pled and that any assertion of infringement of the '675 patent and the '895 patent is frivolous as confirmed by Counterclaim Defendant McGinley verified testimony, the continued existence in the Complaint of any reference to the '675 patent, at the very least, requires Counterclaim Plaintiff to conduct discovery and file an appropriate motion to remove these allegations from this action.

113. Upon information and belief subject to a reasonable opportunity to conduct discovery, Counterclaim Defendants have threatened LNC's customers with infringement of the '675 and '895 patents. Counterclaim Defendants have a history of filing infringement suits seeking to enforce their patents. LNC infringes no valid claim of either of the '675 or '895 patents. Based on Counterclaim Defendants' threats and litigation history, LNC has a reasonable apprehension of

it or its customers being sued over the '675 patent and '895 patents. An actual, immediate, substantial and justiciable controversy exists regarding the infringement of the '675 and '895 patents.

114.    A judicial declaration is necessary and appropriate at this time in order that LNC may ascertain its rights and duties with respect to the '675 and '895 patents.

**SIXTH COUNTERCLAIM**
**(Declaratory Judgment of Non-infringement, Invalidity,**
**Unenforceability and Correction of Inventorship of the '178 patent)**

115.    Counterclaim Plaintiffs repeat and reallege each and every allegation contained in the foregoing and following paragraphs as if fully set forth herein.

116.    This Sixth Counterclaim also seeks a declaratory judgment of non-infringement, invalidity, unenforceability and correction of inventorship of the '178 patent which issued from the '797 application on January 28, 2014. This counterclaim also arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

117.    This Court may declare the rights and other legal relations of the parties in this action under 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57, because an actual and justiciable controversy exists concerning the rights of, and legal relations between, Counterclaim Plaintiffs and Counterclaim Defendants as regards the noninfringement, invalidity and unenforceability of the '178 patent and order the correction of inventorship of the '178 patent.

*118.*    As set forth in the Amended Complaint, Counterclaim Defendants have sued Counterclaim Plaintiffs for alleged infringement of the '178 patent, literally or pursuant to the doctrine of equivalents, in the importation into the U.S., manufacture, use, offer for sale and sale of Counterclaim Plaintiff LNC's *Nuby Tear Free Rinse Pail*. Counterclaim Defendants further seek the recovery of damages for alleged infringement of the '178 patent.

119.    Counterclaim Plaintiffs do not infringe, literally or pursuant to the doctrine of equivalents, any claim of the '178 patent in the importation into the U.S., manufacture, use, offer for sale or sale of the *Nuby Tear Free Rinse Pail* within the U.S.

120.    The '178 patent is invalid for failing to meet the patentability requirements of 35 U.S.C. §§102 and 103. Prior art not presented to the U.S. Patent and Trademark Office (PTO) during the prosecution of U.S. Patent Application Serial No. 12/255,797 (the '797 application), including but not limited to U.K. Patent No. 2,269,811, CH Patent No. 274,789, and DE Published Patent Application Nos. 19,517,228 and 19,625,475 together with patents considered by the PTO such as U.S. Patent No. 2,610,490, render at least claims 1-2 and 6-7 of the '178 patent unpatentable as anticipated and/or obvious.

121.    As a sole inventor, Counterclaim Defendant McGinley filed a patent application for "Flexible Panel Pitcher" that the PTO assigned Serial No. 357,651 (the '651 application). Included in the application were Figures 1-4 that depicted a container or pitcher without any dividers. The '651 application also contained a written description of the alleged invention claimed in the '651 application. Nowhere in the written description is there a disclosure, teaching or suggestion of including a divider in the pitcher depicted in Figures 1-4. The PTO rejected the '651 application on April 5, 2004 having determined that McGinley was not entitled to a patent for the reason that the alleged invention described therein was not patentable. In particular, the Patent Examiner found that the claimed invention did not meet the requirements of 35 U.S.C. §§102 or 103. McGinley failed to respond timely to the rejection and the PTO declared the application abandoned on December 3, 2004. The Examiner noted that applicant's attorney "stated in a phone call (12/1/04) that an express abandonment letter was sent in February 2004." In fact, previously,

on February 4, 2004, McGinley had submitted to the PTO a written express abandonment of the '651 application.

122.    After having expressly abandoned the undivided pitcher invention of the '651 patent, McGinley teamed with Brian Lau to file a patent application claiming a pitcher with a divider. Lau and McGinley then filed as joint inventors a new patent application for "Flexible Panel Pitcher" that the PTO assigned Serial No. 770,325 (the '325 application). The '325 application included additional figures and written specification detailing the alleged improvement of a pitcher with a divider. After substantially modifying the claims describing their alleged invention, as required by the PTO, Lau and McGinley were issued U.S. Patent No. 7,441,675 (the '675 patent). That patent only had claims directed to a pitcher or container with a divider.

123.    In 2008, before the '675 patent issued, Lau and McGinley filed another patent application for a "Flexible Panel Pitcher" that the PTO assigned Serial No. 255,797 (the '797 application) that provided even more figures and written specification directed to additional embodiments of pitchers with dividers. Then, through a series of intricate procedural moves, Lau and McGinley transformed their claims for a pitcher or container with dividers to a container without dividers. At no time during the prosecution of the '797 application did Lau or McGinley inform the PTO Examiner that they were attempting to claim the alleged invention that was described in the '651 application and expressly abandoned in 2004. Despite knowing that the Examiner handling the '797 application was not the same Examiner who originally rejected the '651 application, Lau and McGinley also never informed the Examiner of the '797 application that their alleged invention had been the subject matter of a patent application filed by McGinley alone as a sole inventor. The information Lau and McGinley withheld from the Examiner of the '797 application was very important and relevant to the patentability of the claims presented in the '797

31

application and had the Examiner known that Lau and McGinley were trying to claim an alleged invention made by McGinley alone and that he had expressly abandoned, the Examiner would not have allowed the claims presented in the '797 application or allowed the '797 application to issue as the '178 patent, the patent-in-suit. Lau and McGinley's omission and failure to properly inform the Examiner constitutes inequitable conduct.

124. During the prosecution of the '797 application, the PTO rejected the application on the basis that Lau and McGinley were seeking to claim an invention covered by the earlier '675 patent, so-called double patenting. Double patenting is not allowed under the PTO rules. To overcome the double patenting rejection, Lau and McGinley filed a terminal disclaimer. The terminal disclaimer provided that any patent issuing on the '797 application would have a term that did not extend beyond the term of the '675 patent and would be enforceable only during such period of time as the '675 patent and any patent issuing on the '797 application were commonly owned. At the time the terminal disclaimer was submitted, the PTO records showed that the '797 application and the '675 patent were owned by Lau and McGinley. During the prosecution of the '797 application, McGinley attempted to act unilaterally, and those attempts were rejected by the PTO. McGinley now claims to own the '675 and '178 patents exclusive of Lau in violation of the terminal disclaimer filed on February 27, 2010.

125. Lau and McGinley made a series of misrepresentations during the prosecution of the '797 application including the written assertion in the declaration signed by Lau and McGinley on February 4, 2004, under the penalty of perjury, that they were co-inventors of a pitcher without a divider, when, in fact, McGinley had filed a patent application in his own name before ever working with Lau claiming to be the sole inventor of a pitcher without a divider. Lau and McGinley knew or should have known that the '651 application constituted prior art under 35 U.S.C. §102(f)

32

rendering the '178 patent invalid. Not only is the '178 patent invalid on its face but Lau and McGinley's false representations regarding the alleged invention claimed in the '797 application constitutes inequitable conduct. McGinley's assertion of the '178 patent, knowing full well that the patent is invalid and violates the terminal disclaimer, is a misuse of the'178 patent.

126.    Lau and McGinley's intentional withholding of material information from the PTO, as outlined above, constitutes inequitable conduct rendering the '178 patent unenforceable. McGinley's attempt to enforce the '178 in violation of the terminal disclaimer renders the '178 patent unenforceable. McGinley's assertion of the '178 patent knowing that the '178 patent is invalid constitutes patent misuse rendering the '178 patent unenforceable.

127.    The '178 patent is invalid for failing to meet the patentability requirements of 35 U.S.C. §§102 and 103. Prior art not presented to the PTO during the prosecution of the '797 application, including, but not limited to, U.K. Patent No. 2,269,811, CH Patent No. 274,789, DE Published Patent Application No. 19,517,228 and 19,625,475 together with patents considered by the PTO such as U.S. Patent No. 2,610,490, render at least claims 1-2 and 6-7 of the '178 patent unpatentable as anticipated and obvious.

128.    All claims of the '178 patent are invalid under 35 U.S.C. §102(f) in that the claimed invention was invented by another, namely McGinley acting alone, and that the named co-inventors Lau and McGinley did not invent the subject matter of those claims in the '178 patent.

129.    McGinley is not the owner of all right, title and interest in the '178 patent. Documents purporting to transfer ownership to McGinley expressly recognize that the '178 patent is owned by at least two others.

130. Upon information and belief, subject to the opportunity to conduct reasonable discovery, McGinley has perpetrated a further fraud upon the PTO in the filing of a Petition to Correct Inventorship Under 37 CFR 1.324 and 35 U.S.C. 256 in the PTO on June 30, 2017 and obtaining removal of Lau as a co-inventor for the sole purpose of avoiding the invalidity of the '178 patent. Upon further information and belief, subject to reasonable discovery, McGinley and Lau have perpetrated a fraud upon the PTO in the filing of their respective affidavits in support of removing Lau as a co-inventor on the '178 patent.

131. Upon further information and belief, subject to the opportunity to conduct reasonable discovery, the '178 patent includes subject matter common to earlier granted patents to the inventive entity of McGinley and Lau such that Lau is a co-inventor on some of the claims of the '178 patent and, therefore, the '178 patent remains invalid for failure to correctly name the actual inventors of the '178 patent.

132. The filing of the Petition to Correct Inventorship Under 37 CFR 1.324 and 35 U.S.C. 256 constitutes prima facie evidence of the validity of Defendants grounds for invalidity of the '178 patent based on incorrect inventorship. Given the June 30, 2017 filing of the Petition to Correct Inventorship Under 37 CFR 1.324 and 35 U.S.C. 256 and the PTO's grant of the Petition on August 7, 2017, Counterclaim Plaintiffs require a reasonable opportunity to conduct discovery underlying the recent change of inventorship on the '178 patent as well as the reasons underlying McGinley's claim that he has always been the sole inventor on the '178 patent despite the naming of Lau as a co-inventor during prosecution of the '797 application and allowing the issuance of the ''178 patent naming Lau as a co-inventor. Counterclaim Defendants' assertion of sole inventorship of the '178 patent is now diametrically opposite the position taken throughout prosecution of the

'797 application including the filing of Declarations under oath and subject to the penalty of perjury with the PTO.

*133.*    In the alternative, based upon the declarations on file in the PTO during prosecution of the '178 patent together with verified statements and judicial admissions by Counterclaim Defendant McGinley, Lau is a co-inventor on the '178 patent and the '178 patent is invalid under 35 U.S.C. §§ 102 and/or 103.

134.    An actual, immediate, substantial and justiciable controversy exists regarding the invalidity, unenforceability, alleged infringement and proper inventorship of the '178 patent by Counterclaim Defendants' importation into the U.S., manufacture, use, offer for sale and sale of the *Nuby Tear Free Rinse Pail* within the U.S.

135.    A judicial declaration is necessary and appropriate at this time so that Counterclaim Plaintiffs may ascertain their rights and duties with respect to the '178 patent.

## REQUEST FOR RELIEF

Wherefore, Counterclaim Plaintiffs respectfully request that the Court enter judgment as follows:

A.    For a declaration and entry of judgment that Defendants and Counterclaim Plaintiffs do not infringe, literally or under the doctrine of equivalents, any claim of the '178, '675 and '895 patents.

B.    For a declaration and entry of judgment that the '178, '675 and '895 patents are invalid.

C.    For a declaration and entry of judgment that the '178, '675 and '895 patents are unenforceable.

35

D.      That Counterclaim Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the Louisiana Unfair Trade Practice and Consumer Protection Law;

E.      That an Order be entered declaring Counterclaim Defendants SCP and McGinley constitute a single business enterprise under Louisiana Law;

F.      That an Order be entered preliminarily and permanently enjoining Counterclaim Defendants SCP and McGinley from further copying of LNC's distinctive trade dress, from using LNC's distinctive trade dress in promoting, advertising, distributing, offering for sale or selling any product using or incorporating LNC's distinctive trade dress;

G.      That an Order be entered preliminarily and permanently enjoining Counterclaim Defendants SCP and McGinley from importing, distributing, advertising, promoting or selling in the United States rinse cup products infringing LNC's trade dress;

H.      That an Order be entered preliminarily and permanently enjoining Counterclaim Defendants SCP and McGinley from disseminating or causing the dissemination of the false advertising, statements, claims and representations alleged herein;

I.      That an Order be entered preliminarily and permanently enjoining Counterclaim Defendants SCP and McGinley from disseminating or causing the dissemination of claims or statements, or any colorable variations thereof, in any packaging, advertising or other promotional materials that its rinse cup is available at retailers where it is not available;

J.      That an Order be entered preliminarily and permanently enjoining Counterclaim Defendants SCP and McGinley from disseminating or causing the dissemination of any false or misleading claims, representations or statements, or any colorable variations thereof, in any packaging, advertising or other promotional materials;

K.      That an Order be entered preliminarily and permanently enjoining Counterclaim Defendants SCP and McGinley from using, advertising, promoting, offering for sale or selling in the United States a rinse cup product that infringes LNC's trade dress in a bait-and-switch scheme whereby customers who order the knock-off copy are shipped and sold an inferior and different product;

L.      That an Order be entered directing an accounting by Counterclaim Defendants SCP and McGinley of their gains, profits, savings, and advantages realized by reason of their false advertising and false representations, awarding Counterclaim Plaintiff LNC damages to the fullest extent allowed by law, and trebling LNC's recovery pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 and the Louisiana Unfair Trade Practice and Consumer Protection Law;

M.      That an Order be entered awarding actual and punitive damages to Counterclaim Plaintiff LNC as proven at the trial of this action in accordance with Louisiana Unfair Trade Practice and Consumer Protection Law;

N.      A declaration that the case is exceptional within the meaning of the 35 U.S.C. § 285;

O.      That an Order be entered granting Counterclaim Plaintiffs their costs and disbursements in this action, including their reasonable attorneys' fees; and

P.      All such other and further relief as the Court may deem just and proper.

Respectfully submitted this 20th day of August 2018,

/s/ Robert M. Chiaviello, Jr.
Robert M. Chiaviello, Jr.
Louisiana State Bar Roll No.:  37370
E-Mail:  bobc@nuby.com

Hartwell P. Morse, III
Admitted *Pro Hac Vice*
Illinois State Bar No. 6199527
E-Mail:  hartwellm@nuby.com

3030 Aurora Avenue
Monroe, LA 71201
Telephone:  (318) 410-4020
Facsimile:   (318) 388-5892

*Attorneys for Defendant/Counterclaim Plaintiffs*
*Luv n' care, Ltd., Admar International, Inc., Bayou*
*Graphics & Design, LLC, BuyBabyDirect, LLC,*
*Control Services, Inc. and HHHII, LLC.*

38

## CERTIFICATE OF SERVICE

It is hereby certified that the above and foregoing document was filed electronically with the United States District Court for the Western District of Louisiana, Monroe Division, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons set out below this 20th day of August 2018 to:

Kip D. Richards
*krichards@wbsvlaw.com*
Michael B. Sichter
*msichter@wbsvlaw.com*
**WALTERS BENDER STROHBEHN & VAUGHAN, P.C.**
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, MO  64196

Jan P. Christiansen
*jpchris@hpblaw.com*
**HUDSON, POTTS & BERNSTEIN, L.L.P.**
1800 Hudson Lane, Suite 300
Monroe, Louisiana 71201

*Attorneys for Plaintiffs Michael L. McGinley and*
*S.C. Products, Inc.*

/s/ Robert M. Chiaviello, Jr.
Robert M. Chiaviello, Jr.

39