IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| MICHAEL L. McGINLEY, et al., | |
| Plaintiffs/ Counterclaim-Defendants, | Case No. 3:17-CV-00821 LEAD |
| vs. | |
| LUV N' CARE, LTD., et al., | Judge Terry A. Doughty |
| Defendants/ Counterclaim-Plaintiffs. | Magistrate Judge Karen L. Hayes |

_____

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT – LITERAL INFRINGEMENT**

_____

WALTERS RENWICK RICHARDS
SKEENS & VAUGHAN, P.C.

By   */s/ Kip D. Richards*
     Kip D. Richards – Mo. Bar 39743
     Michael B. Sichter – Mo. Bar 65154
     2500 City Center Square
     1100 Main Street
     Kansas City, MO 64196
     (816) 421-6620
     (816) 421-4747 (Facsimile)
     krichards@wrrsvlaw.com
     msichter@wrrsvlaw.com

HUDSON, POTTS & BERNSTEIN, L.L.P.
P.O. Drawer 3008
Monroe, Louisiana 71210-3008
(318) 388-4400

By:  s/*J.P. Christiansen*
     Jan P. Christiansen
     Bar Roll No. 20142

ATTORNEYS FOR MICHAEL L.
MCGINLEY AND S.C. PRODUCTS, INC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION............................................................................................................... 1

FACTUAL OVERVIEW..................................................................................................... 1

    A.    The Consolidated Lawsuits ............................................................................... 2

    B.    McGinley's Flexible Panel Pitcher Inventions .................................................. 3

    C.    The History of the '178 Patent ........................................................................... 4

    D.    The "Shampoo Rinse Cup" ................................................................................. 7

    E.    The "Nuby Tear Free Rinse Pail" ....................................................................... 7

ARGUMENTS AND LEGAL AUTHORITIES................................................................... 8

    Applicable Standards.............................................................................................. 9

    Step One: Claim Construction............................................................................... 10

    A.    Intrinsic Evidence ............................................................................................... 11

    B.    Extrinsic Evidence .............................................................................................. 14

    C.    Construction of the '178 Patent, Claims 1 and 6............................................... 15

        1.    The Inventive Container is not Limited to any Particular Size or Shape ................................................................................... 15

        2.    The Inwardly Flexible Panel Portion Also is not Limited to a Particular Size or Shape............................................................. 18

        3.    The Word "Comprising" Means "Including but not Limited

to" ................................................................................................................................18

4.    The Use of the Adverb "Generally" to Modify "Flat" Should be Given Effect ..............................................................................................19

5.    "Attached" Should not be Narrowly Construed to Require Separate Materials or Objects ...................................................................21

Step Two: Claims 1 and 6 and the Accused Device Compared .........................................23

A.    The Undisputed Facts are Such that a Reasonable Jury Can Only Find that the *Nuby Tear Free Rinse Pail* Literally Infringes Independent Claim 1...................................................................................................23

B.    The Undisputed Facts are Such that a Reasonable Jury Can Only Find that the *Nuby Tear Free Rinse Pail* Literally Infringes Independent Claim 6...................................................................................................25

CONCLUSION ...........................................................................................................................27

# TABLE OF AUTHORITIES

<u>CASES</u>

*ACTV, Inc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003)........................................................................................13

*Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*,
  No. C-93-20853 RMW, 1995 WL 419747 (N.D. Cal. July 10, 1995) .......................................23

*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*,
  340 F.3d. 1298 (Fed. Cir. 2003).........................................................................12, 14, 17

*CIAS, Inc. v. Alliance Gaming Corp.*,
  504 F.3d 1356 (Fed. Cir. 2007)........................................................................................19

*CIF Licensing, LLC v. Agere Systems Inc.*,
  565 F.Supp.2d 533 (D. Del. 2008)....................................................................................17

*Comark Communications Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998)........................................................................................17

*Erbe Elektromedizin GmbH v. Intl. Trade Commn.*,
  566 F.3d 1028 (Fed.Cir.2009)..........................................................................................12

*Fitness Quest Inc. v. Monti*,
  2007 WL 2359821 (N.D. Ohio 2007)................................................................................18

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001)........................................................................................17

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
  899 F.Supp.2d 971 (S.D. Cal. 2012).................................................................................10

*Harodite Indus., Inc. v. Astechnologies, Inc.*,
  428 F.Supp.2d 701 (E.D.Mich.2006)..................................................................................9

*Innovention Toys, LLC v. MGA Entm't, Inc.*,
  637 F.3d 1314 (Fed.Cir.2011)............................................................................................9

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005).........................................................................................10

*Keystone Glob. LLC v. Decor Essentials Ltd.*,
  No. 12CIV.9077 DLC, 2014WL888503 (S.D.N.Y. Mar. 6, 2014) ..........................................22

*Lexion Med., LLC v. Northgate Techs., Inc.*,
  641 F.3d 1352 (Fed. Cir. 2011).................................................................................10

*Magna-Mug LLC v. Novelty, Inc.*,
  No. 1:13-CV-304, 2014 WL 3895237 (S.D. Ohio Aug. 8, 2014) ...............................22

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed.Cir.1995)................................................................9, 10, 11, 13

*McGinley v. Munchkin, Inc.*,
  No. 09-257, 2010 WL 128053 (W.D. Mo., Apr. 2, 2010).........................12, 13, 14, 19

*Nazomi Comm., Inc. v. Arm Holdings, PLC*,
  403 F.3d 1364 (Fed.Cir.2005)....................................................................... 12-13, 14

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)..................................................................................11

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed.Cir.2005)........................................................................ *passim*

*Renishaw PLC v. Marposs Societa' per Azioni*,
  158 F.3d 1243 (Fed. Cir. 1998)..................................................................................13

*Rhine v. Casio, Inc.*,
  183 F.3d 1342 (Fed.Cir.1999)....................................................................................10

*Smith v. Snow*,
  294 U.S. 1 (1935)........................................................................................................14

*Taser Int'l, Inc. v. Stinger Sys., Inc.*,
  705 F.Supp.2d 1115 (D.Ariz.2010) ...........................................................................10

*TC Heartland LLC v. Kraft Food Brands Grp. LLC*,
  137 S.Ct. 1514 (2017).................................................................................................2

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015)...................................................................................................9

*Vanguard Prod. Grp., Inc. v. Diam USA, Inc.*,
  527 F.Supp.2d 747 (N.D.Ill.2007) ..............................................................................9

*Varco, L.P. v. Pason Sys. USA Corp.*,
  436 F.3d 1368 (Fed. Cir. 2006)..................................................................................14

iv

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)......................................................................................13, 14, 15

*Voice Techs. Grp., Inc. v. VMC Sys., Inc.*,
  164 F.3d 605 (Fed. Cir. 1999).....................................................................................21


**F****EDERAL**** S****TATUTES****, R****ULES****, M****ISC****.**

15 U.S.C. § 1125(a) ...........................................................................................................2

35 U.S.C. § 284.................................................................................................................2


**S****TATE**** S****TATUTES****, R****ULES****, M****ISC****.**

La. R.S. 51:1402, et seq. ..................................................................................................2


**O****THER**

"generally."  Merriam-Webster Online Dictionary.
  https://www.merriam-webster.com/dictionary/generally (8 Nov. 2018)....................................19

"generally."  Google Online Dictionary.
  https://www.google.com/search?q=google+online+dictionary&rlz=1C1CHBF_enUS704US
  704&oq=google+on&aqs=chrome.0.69i59j0j69i60j69i57j0l2.1199j0j7&sourceid=chrome
  &ie=UTF-8#dobs=generally (8 Nov. 2018)...........................................................................19

## INTRODUCTION

The Court should enter a partial summary judgment for Plaintiffs.  The undisputed facts show that the *Nuby Tear Free Rinse Pail* literally infringes claims 1 and 6 of U.S. Patent No. 8,636,178 (the "'178 patent").  The *Nuby Tear Free Rinse Pail* possesses all of the limitations of claims 1 and 6, as properly construed.  Because no reasonable jury considering the undisputed facts material to the issue of literal infringement could conclude otherwise, the Court should hold that Defendants Luv n' care, Ltd. ("LNC") and BuyBabyDirect, LLC ("BBD") infringed the '178 patent as a matter of law and enter partial summary judgment on the issue of infringement in favor of Plaintiffs, both on Plaintiffs' affirmative claim of infringement and on Defendants' converse defense and counterclaim of non-infringement.  LNC imports the *Nuby Tear Free Rinse Pail* into the United States, and both LNC and BBD have used, offered to sell, and sold the product within the United States.

## FACTUAL OVERVIEW

Plaintiffs' complaint states a claim for patent infringement against LNC in Count I and against BBD in Count II.  (Doc. 109)  The '178 patent issued on January 28, 2014.  (Doc. 109-3)  The '178 patent covers an invention in a "flexible panel pitcher device."  (Id.)  The motivation for the invention was the need to rinse shampoo from the head of a child without tears or fuss.  Plaintiff Mike McGinley ("McGinley") is the inventor and owner and the '178 patent.  Plaintiff S.C. Products, Inc. ("SCP") is the family-run Missouri business through which McGinley makes his living by selling commercial embodiments of his inventions and other products.  One of the products that SCP sells is the *Shampoo Rinse Cup*.  SCP began selling the *Shampoo Rinse Cup* in 2004.

Plaintiffs assert that Defendant LNC infringed and continues to infringe the '178 patent by

importing and using, offering to sell and selling a flexible panel rinser product that LNC calls the *Nuby Tear Free Rinse Pail*. (Doc. 109, ¶25) Plaintiffs additionally assert that Defendant BBD, an LNC affiliate, infringed and continues to infringe the '178 patent by using, offering to sell and selling the *Nuby Tear Free Rinse Pail*. (Doc. 109, ¶35) LNC admits that it first offered to sell the *Nuby Tear Free Rinse Pail* in October 2011 and completed its first sale in March 2012. (UMF, ¶¶40-42) BBD admits that it first offered to sell the *Nuby Tear Free Rinse Pail* via the internet "prior to March 2, 2012." (UMF, ¶¶43-46) Plaintiffs assert that the importation into, and the use, offers to sell and sale of the *Nuby Tear Free Rinse Pail* within the United States by LNC and BBD infringed the '178 patent. (Doc. 109, ¶¶21-41) Plaintiffs also assert that the infringement by LNC and BBD was willful and in flagrant disregard of Plaintiffs' rights. (Id.) Plaintiffs seek just compensation for the infringement pursuant to 35 U.S.C. § 284. Plaintiffs also seek injunctive relief, enhanced damages and attorneys' fees.

### A.    The Consolidated Lawsuits

McGinley and SCP originally filed their infringement lawsuit against Defendant LNC on March 30, 2016 in the United States District Court for the Western District of Missouri. (Doc. 1) In response, LNC filed a separate lawsuit against McGinley and SCP in this Court on May 10, 2016, alleging multiple claims of unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) and La. R.S. 51:1401, et seq. (3:17-cv-00822, Doc. 1)[1] LNC's lawsuit was transferred to the Western District of Missouri and consolidated with Plaintiff's original Missouri suit in May 2017. (Doc. 55) The cases were re-transferred to this Court in June 2017 based on *TC Heartland LLC v. Kraft Food Brands Grp. LLC*, 137 S.Ct. 1514 (2017), and remain consolidated under the captioned case number.

---

[1] LNC's original counter-lawsuit was filed as Case No. 3:16-cv-00641 and is now Member Case No. 3:17-cv-00822.

In July 2018, Plaintiffs amended the complaint to add the additional infringement claim against BBD. (Doc. 109) In response, LNC, BBD and the other Defendants have jointly asserted as their Second Affirmative Defense that the *Nuby Tear Free Rinse Pail* does not infringe the '178 patent. (Doc. 112, p.5) Defendants also seek a declaration of non-infringement against Plaintiffs. (Id., ¶119)

### B.      McGinley's Flexible Panel Pitcher Inventions

Plaintiff Mike McGinley obtained his first patent in 1989. (Ex. A, ¶4) U.S. Patent No. 4,877,162 covered a baseball/softball glove shaper that McGinley invented. (Id.) McGinley received his second patent in 1995. U.S. Patent 5,407,193 covered an instructional baseball pitching invention. (Id.) Roger Clemens has endorsed a commercial embodiment of McGinley's baseball pitching invention since 1991, and the product is still sold today as *The Roger Clemens Instructional Baseball*. (Id., ¶6)

In 2001, McGinley, who at that time was raising two young daughters with his wife, turned his inventive energies to a device that would solve the difficulties that parents face when they bathe their children – specifically, how to keep shampoo and suds out of the eyes, nose and mouth of a child while rinsing. (Ex. A, ¶¶7, 17) For McGinley, the ubiquitous "stadium cup" simply did not suffice. (Ex. K-31 at 1:61-2:42)[2] McGinley solved the problem by inventing his "flexible panel" pitcher, which prevents shampoo and sudsy water from running down the face of an infant or child while rinsing. The gist of the invention is to thoroughly rinse shampoo from the head of a child without tears or trouble. (Id.)

The United States Patent and Trademark Office ("PTO") has issued McGinley not one but *four* U.S. patents for his truly novel flexible panel pitcher inventions. The **first** patent, U.S. Patent

---

[2]     Ex. K-31 is a copy of the '178 patent. References to the specification and claims are by column and line numbers.

No. 7,441,675, issued on October 28, 2008, and covers McGinley's flexible panel pitcher configured with a "divider" inside the container.  (Ex. A, ¶¶4-5; Ex. K-143)  The **second** patent, U.S. Patent No. 7,757,895, followed on July 30, 2010, and covers McGinley's flexible panel pitcher configured with a "curved divider."  (Id., ¶¶4-5; Ex. K-232)  The '178 patent is McGinley's **third** flexible panel pitcher patent, and it covers a flexible panel pitcher with or without a divider.  (Ex. A, ¶¶4-5, Ex. K-31)  McGinley first disclosed the original "dividerless" configuration of his flexible panel pitcher in his first application, filed February 4, 2003.  (Ex. A, ¶¶11-12, 14, 16; Ex. K-39.3, pp. 16-20)  McGinley's **fourth** patent, U.S. Patent No. 9,446,884, issued on September 20, 2016.  (Ex. A, ¶4; Ex. K-139)  This fourth patent covers a flexible panel pitcher invention that McGinley configured without a handle or a divider, and having *two* inwardly-flexible, opposing panels.  (Id.)[3]

### C.    The History of the '178 Patent

Without question, Mike McGinley of Prairie Village, Kansas was the first to invent and protect a "flexible panel" rinser device.  The '178 patent claims priority back to 2003, when McGinley filed his original application to patent his flexible panel pitcher.  (Ex. A, ¶¶11-14; Ex. K-31)  McGinley filed Application 10/357,651 on February 4, 2003 (the '651 application).  (Ex. A, ¶11; Ex. K-39.3)  The application included Figures 1-4 and a description of a handled container having a flexible panel that "molded" to the shape of a forehead (or the object it is pressed against) to create a seal.  (Ex. K-39.3, pp. 2-23)  None of the claims submitted with the '651 application included a "divider" and McGinley was listed as the sole inventor of the "dividerless" invention disclosed in the '651 application.  (Id., p. 25)

In or about May 2003, after having filed his original patent application, McGinley

---

3    The '884 patent is not before the Court.

4

approached Brian Lau, a product engineer in the Chicago area, to help McGinley create a commercial embodiment of his inventive shampoo rinse cup.  (Ex. A, ¶12)  In the course of his work, McGinley, with the input of Lau, decided to include a divider element in the product that McGinley wanted to market and sell through SCP.  (Id.)  Given the development of a divider and Lau's input, McGinley filed a second application with the PTO, as a continuation-in-part of his original application, which was pending at the time.  (Id., ¶13)  McGinley's second patent application, No. 10/770,325, was filed on February 2, 2004 (the '325 application).  (Ex. K-39.2)  The '325 application was filed as a continuation-in-part of the original application from February 2003, which was expressly abandoned in favor of the '325 application.  (Id., pp. 4-22)  The '325 application included Figures 1-4 from the original '651 application and two new drawings, Figures 5-6, depicting an embodiment of the flexible panel pitcher invention having a divider situated inside the container.  (Id., p. 22)  The '325 application also included a description of a flexible panel pitcher having a divider and correspondingly included five additional claims (25-29) containing a divider.  (Id., pp. 17-18)  Because Brian Lau assisted with the divider feature (Ex. A, ¶13), both McGinley and Lau were identified as co-inventors in the '325 application.  (Id.; Ex. K-39.2, pp. 23-24)

The '325 application issued as U.S. Patent No. 7,441,675 (the '675 patent) on October 28, 2008.  (Ex. K-143)  Each of the twelve claims allowed as the '675 patent includes a divider.  (Id. at 7:6-8:33)  As issued, the '675 patent did not include McGinley's original or any other "dividerless" claims.  (Id.)

In September 2007, McGinley filed U.S. Application No. 11/850,476 for a flexible panel pitcher having a curved divider (the "'476 application").  (Ex. A, ¶14; Ex. I)  The '476 application was also filed as a continuation-in-part of the '325 application from February 2004, which was

5

itself a continuation-in-part of McGinley's original '651 application from February 2003. (Id.)

The '476 application added Figures 7-9 to Figures 1-4 and 5-6, and a description and additional

claims covering an embodiment of the invention having a curved divider. (Ex. I, pp. 9-32) The

'476 application issued on July 20, 2010 as U.S. Patent No. 7,757,895 (the '895 patent). (Ex. A,

¶14; Ex. K-232)

On October 22, 2008, just days before the '675 patent issued, McGinley filed his fourth

flexible panel pitcher application, Application No. 12/255,797 (the '797 application). (Ex. A, ¶15;

Ex. J) The '797 application was also filed as a continuation-in-part of the '325 application, which

was a continuation-in-part of the '651 application. (Id.) Like the '476 application before it, the

'797 application included Figures 1-9 and a description and a proffered and amended set of claims

disclosing a flexible panel pitcher, some with a divider and some without a divider. (Ex. J, pp. 2-

32)

Because the '797 application, as initially filed, included claims describing a flexible panel

pitcher with a divider, both McGinley and Lau, and not McGinley alone, were again identified as

co-inventors. (Ex. A, ¶15; Ex. J, pp. 38-39) However, during the prosecution of the '797

application, the claims changed such that all of the claims that included a divider were dropped or

cancelled and the application eventually issued as the '178 patent. (Ex. J, pp. 203-211, 224-238;

Ex. K-31) *None of the '178 patent claims, as issued, includes a divider limitation*. (UMF, ¶39;

Ex. K-31)

The '178 patent issued on January 28, 2014. (UMF, ¶¶5, 6) Due to an oversight, Brian

Lau's name was not withdrawn as an "inventor" prior to issuance of the '178 patent, as it should

have been. Lau's sole contribution to McGinley's invention related to a divider, and none of the

claims that issued as the '178 patent included a divider. (Ex. A, ¶¶15, 16; Ex. K-31) The oversight

6

was corrected via a Petition to Correct Inventorship that Lau and McGinley jointly filed with the PTO in July 2017. (Ex. J, pp. 261-267, 273) The PTO granted the petition and removed Brian Lau as an inventor of the flexible panel pitcher invention protected by '178 patent. (UMF, ¶7) As a result, McGinley is and remains the undisputed and properly named *sole inventor* of the "dividerless" flexible panel pitcher invention. (UMF, ¶8) McGinley also is the *sole owner* of the '178 patent by virtue of his status as the undisputed inventor of the original "dividerless" flexible panel pitcher. (UMF, ¶9)

### D.      The "Shampoo Rinse Cup"

SCP began selling a commercial embodiment of McGinley's flexible panel pitcher invention, known generally as the "*Shampoo Rinse Cup*," in or about July 2004. (UMF, ¶¶10-13) Substantial sales of McGinley's flexible panel pitcher invention since 2004 have made bath time considerably more enjoyable for baby bathers and bath givers alike. The commercial success of McGinley's invention **and the introduction of multiple flexible panel shampoo rinsers by LNC and others _after 2004_** establish both the novelty and ingenuity of McGinley's invention. (Ex. A, ¶29)

### E.      The "Nuby Tear Free Rinse Pail"

At some point in the latter half of 2010, more than six years after Plaintiffs introduced their first *Shampoo Rinse Cup* product, LNC decided to enter the U.S. and international baby bath rinser markets and begin selling its "own" flexible panel shampoo rinse cup product.[4] (UMF, ¶14) Plaintiffs assert that LNC did so only after noting the novelty and commercial success of McGinley's patent protected product, the *Shampoo Rinse Cup*, and other similar flexible panel rinser products then on the market, including the *Munchkin Shampoo Rinse Cup*. (Doc. 12, ¶¶32-

---

[4]    Doc. 112, ¶¶33, 35-37; Ex. B, No.'s 1, 2.

33, 35-37)  The records that LNC has disclosed to date show that LNC began engineering its "shampoo rinse cup" (LNC used that name) in November 2010.[5]  Notably, LNC began "engineering" its product just days after the patent infringement lawsuit that Plaintiffs had filed against Munchkin, Inc. in 2009 based on Munchkin's importation and sale of a shampoo rinse cup, was dismissed.  (Ex. F, ¶34 & F.3)

Not coincidentally, the evidence shows that LNC began working on its "shampoo rinse cup" by creating what appears to be an identical copy of the *Munchkin Shampoo Rinse Cup*.[6]  After generating a prototype, LNC, through Eddie Hakim, directed the engineering department to alter the design of the Munchkin reproduction and in early 2011, for reasons that it refuses to explain, LNC decided to modify that design to the molded configuration that is today the *Nuby Tear Fee Rinse Pail*.[7]  LNC received the first "completed production samples" of the *Nuby Tear Fee Rinse Pail* from its manufacturer in May 2011.[8]  LNC first offered the *Nuby Tear Fee Rinse Pail* for sale to Meijer on or about October 19, 2011.[9]  LNC's use of the *Nuby Tear Fee Rinse Pail* product occurred more than seven years after SCP had introduced the *Shampoo Rinse Cup* to the market via Right Start and Walmart.[10]  LNC contends that the version of the *Nuby Tear Free Rinse Pail* it first sold and delivered in March 2012 is the same as that which LNC admittedly markets and sells today.[11]

## ARGUMENTS AND LEGAL AUTHORITIES

Plaintiffs assert in this motion that the *Nuby Tear Free Rinse Pail* literally infringes clams

---

[5]    Ex. B, No.'s 1, 2; Ex. E at 82:3-83:12; Ex.'s K-8, K-15.
[6]    Ex.'s K-8, K-15, K-16 & K-63; Ex. E at 82:3-84:20.
[7]    Ex. B, No. 1; Ex. D at 190:6-192:7; Ex. E at 77:13-80:11; Ex. K-25; Ex. K-68; Ex.'s K-9, K-15, K-16 & K-63; see Ex.'s K-5, K-11 & K-12.
[8]    Ex. B, No.'s 1, 2.
[9]    Ex. B, No. 1.
[10]   See Ex. A, ¶9.
[11]   UMF, ¶¶15, 16.

8

1 and 6 of the '178 patent.[12] "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim." *Vanguard Prod. Grp., Inc. v. Diam USA, Inc.*, 527 F.Supp.2d 747, 756 (N.D.Ill.2007); *Harodite Indus., Inc. v. Astechnologies, Inc.,* 428 F.Supp.2d 701, 704 (E.D.Mich.2006). The *Nuby Tear Free Rinse Pail* contains each limitation of claims 1 and 6.

## Applicable Standards

A determination of patent infringement involves two steps: First, the Court determines the scope and meaning of the asserted patent claims pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995), *aff'd*, 517 U.S. 370 (1996). According to *Markman*, a district court considers the language of the "asserted claims" (for this motion, claims 1 and 6 of the '178 patent) and pronounces the meaning of the claim language used as a matter of law. *Id*. Second, the court compares the claims to the accused device to determine whether all of the claim limitations are present in the device, either literally or by a substantial equivalent. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011). While patent construction under *Markman* is a question of law,[13] the comparison of the asserted claims to the accused device and the issue of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Id*.

---

[12] This motion asserts that the *Nuby Tear Free Rinse Pail* product literally infringes claims 1 and 6 of the '178 patent. Plaintiffs do not waive and expressly reserve for trial all remaining claims against Defendants including but not limited to Plaintiffs' claims for the literal infringement of any or all of the remaining patent claims, Plaintiffs' claims that Defendants have infringed any or all of the patent claims under the doctrine of equivalents, and Plaintiffs' separate claim that Defendants are jointly and severally liable as a single business enterprise. (Doc. 109, Count III) In that regard, any reference to LNC and its actions and conduct in this motion should be deemed as including a reference to any or all of the other "LNC Parties."

[13] In those instances where a court must look beyond a patent's intrinsic evidence and consult extrinsic evidence to determine the meaning of a particular term, the court may need to make a subsidiary factual finding about the extrinsic evidence, which is reviewed for clear error. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

As with any question of fact, the issue of whether an accused device like the *Nuby Tear Free Rinse Pail* literally infringes claims 1 and 6 of the '178 patent, is subject to a determination by summary judgment standards.  *Id.* at 1319 ("a court may determine infringement on summary judgment "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device").  Accordingly, where, as here, a reasonable jury can *only* find that the accused device contains all the limitations of the asserted claims, a summary judgment on the issue of literal infringement is warranted.  *Id.* at 1320 (affirming district court's summary judgment of literal infringement); *Lexion Med., LLC v. Northgate Techs., Inc*., 641 F.3d 1352, 1359 (Fed. Cir. 2011) (same); *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1314 (Fed. Cir. 2005) (same); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1081 (Fed. Cir. 2005) (same); *cf. Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed.Cir.1999) (reversing district court's summary judgment of noninfringement due to misconstruction of the patent claims).[14]

### Step One: Claim Construction

In *Markman v. Westview Instruments*, the Supreme Court ruled that "construction of a patent, including terms of art within its claim, is exclusively within the province of the court."  517 U.S. 370, 372 (1996).[15]  The Federal Circuit's opinion in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir.2005), in turn, comprehensively sets forth the currently controlling principles of claim

---

[14]  The Court can resolve the infringement issue via partial summary judgment even where the issue of patent validity will not be decided until trial.  *See, e.g., Gen-Probe Inc. v. Becton Dickinson & Co.*, 899 F.Supp.2d 971, 987 (S.D.Cal.2012) (granting patentee's motion for summary judgment on infringement alone and rejecting argument that summary judgment cannot be granted until the defendant's invalidity defenses are resolved); *Taser Int'l, Inc. v. Stinger Sys., Inc.*, 705 F.Supp.2d 1115, 1154 (D.Ariz.2010) ("Courts routinely enter summary judgment concerning infringement, saving questions of validity for trial").

[15]  The Court may construe the asserted claims under *Markman* in its determination of this motion.  (See Amended Scheduling Order, Doc. 95)

10

construction.  *Phillips* confirmed that the claims of a patent define the patentee's invention and, as a general rule, courts should give claim terms their ordinary and customary meaning.  *Id.* at 1312. The ordinary and customary meaning of a patent claim term is the meaning that the term would have to a person of ordinary skill in the relevant art at the time of the filing of the patent application. *Id.* at 1313.

Notably, the Federal Circuit has recognized that "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314.  Although Plaintiffs submit that the '178 patent presents just such a case – i.e., that the ordinary meaning of the claim language used in the '178 patent claims is readily apparent without further construction from the Court – Plaintiffs expect that Defendants will likely offer a number of strained constructions in an effort to impermissibly restrict and re-write the patent claims.  To the extent Defendants' proposed constructions conflict with what Plaintiffs believe the ordinary meaning of the asserted claims to be, the Court should resolve the conflict pursuant to the opinion in *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1361-1362 (Fed. Cir. 2008) (district court is duty-bound to resolve fundamental dispute regarding the scope of a claim term)

**A.    Intrinsic Evidence**

Patents consist of two parts: the specification and the claims.  The claims "particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention." *Markman*, 517 U.S. at 373 (quoting 35 U.S.C. § 112).  The specification describes the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make

11

and use the same." *Id*. at 373 (quoting 35 U.S.C. § 112).  The person of ordinary skill is deemed to read a claim term in the context of both the claims and the specification.  *Phillips*, 415 F.3d at 1313. Thus, the context in which a term is used within the relevant claim can be instructive, and viewing the relevant claim against the other claims of the patent is also helpful.  *Id*. at 1314.  The specification, too, is important because it "necessarily informs the proper construction of the claims."  *Id. a*t 1316. Indeed, the Federal Circuit has explained that the specification may be the "best source" for understanding a disputed or technical claim term (*id.* at 1315), and courts generally "do not construe claim language to be inconsistent with the clear language of the specification."  *Erbe Elektromedizin GmbH v. Intl. Trade Commn.*, 566 F.3d 1028, 1034 (Fed.Cir.2009).

In addition to considering the claims and the specification, courts may also consult the patent's prosecution history and the materials within the "file wrapper," which were "created by the patentee in attempting to explain and obtain the patent."  *Phillips*, 415 F.3d at 1317.  "[T]he prosecution history provides evidence of how the PTO and the inventor understood the patent." *McGinley v. Munchkin, Inc.*, No. 09-0257, 2010 WL 1268053, at *2 (W.D. Mo. Apr. 2, 2010) (citing *Phillips*, 415 F.3d at 1317).  "However, because it represents an ongoing negotiation rather than the final product, the value of the prosecution history, which often lacks the clarity of the specification, is more limited." *Id*.  Any limitation from the prosecution history must be "clear and unmistakable."  *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d. 1298, 1306-1307 (Fed.Cir.2003).

Together the claims, specification, and prosecution history comprise the "intrinsic evidence" that the Federal Circuit regards as "the primary tool to supply the context for interpretation of disputed claim terms."  *Nazomi Comm., Inc. v. Arm Holdings, PLC*, 403 F.3d

12

1364, 1368 (Fed.Cir.2005).  When construing patent claims, a court is guided foremost by "the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *McGinley*, 2010 WL 1268053, at *1 (construing McGinley's '675 patent).  "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language."  *Id.*

In the absence of an express intent to the contrary, "terms in a claim are to be given their ordinary and accustomed meaning."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998); *McGinley,* 2010 WL 1268053, at *1.  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips*, 415 F.3d at 1313.  "A person of ordinary skill in the art is presumed to have read the claim term in the context of the entire patent, including the claim itself and the specification."  *McGinley,* 2010 WL 1268053, at *1 (citing *Phillips,* 415 F.3d at 1313).

Many times, the context of the surrounding words of a claim will provide substantial guidance in determining the ordinary and customary meaning of the disputed terms.  *McGinley,* 2010 WL 1268053, at *1 (citing *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003)).  In other instances, the other claims of the patent in suit may aid in defining a claim term. *Id.* (citing *Phillips*, 415 F.3d at 1314).  However, the patent claims cannot be read alone, but rather "must be read in view of the specification, of which they are a part."  *Markman*, 52 F.3d at 978; *McGinley,* 2010 WL 1268053, at *1.  The specification "'is the single best guide to the meaning of a disputed term'" and is often dispositive.  *Phillips*, 415 F.3d at 1315 (*quoting Vitronics*, 90 F.3d at 1582); *McGinley,* 2010 WL 1268053, at *1. "That being said, the Court may not 'import

13

limitations from the specification into the claims.'" *McGinley,* 2010 WL 1268053, at *1 (citing

*Varco, L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 1373 (Fed. Cir. 2006)).  "[T]he mere fact

that the specification drawings depict a particular embodiment of the patent does not operate to

limit the claims to that specific configuration."  *Anchor Wall*, 340 F.3d. at 1307.  The Supreme

Court declared long ago that an inventor need not "embrace in the claims or describe in the

specifications all possible forms in which the claimed principle may be reduced to practice."  *Smith*

*v. Snow*, 294 U.S. 1, 11 (1935); *Nazomi,* 403 F.3d at 1369 (claims may embrace a "different subject

matter than is illustrated in the specific embodiments in the specification"); *McGinley,* 2010 WL

1268053, at *1.[16]

## B.    Extrinsic Evidence

A court may also consider extrinsic evidence, which "consists of all evidence external to

the patent and prosecution history, including expert and inventor testimony, dictionaries, and

learned treatises."  *Phillips,* 415 F.3d at 1317; *McGinley,* 2010 WL 1268053, at *2 (citing *Varco,*

436 F.3d at 1373; *Vitronics*, 90 F.3d at 1583).  Extrinsic evidence "can be useful to a court for a

variety of purposes, such as to provide background on the technology at issue, to explain how an

invention works, to ensure that the court's understanding of the technical aspects of the patent is

consistent with that of a person of skill in the art, or to establish that a particular term in the patent

or the prior art has a particular meaning in the pertinent field."  *Id.* at 1318.  When considered,

extrinsic evidence, which is less reliable than intrinsic evidence, must be considered in the context

---

[16]    The '178 patent specification provides: "As required, detailed embodiments of the present inventions are disclosed herein; however, it is to be understood that ***the disclosed embodiments are merely exemplary of the invention***, which may be embodied in various forms.  Therefore, [the] specific structural and functional details disclosed herein are not to be interpreted as limiting, but merely as a basis for the claims and as a representative basis for teaching one skilled in the art to variously employ the present invention in virtually any appropriately detailed structure."  (Ex. K-31 at 3:62-4:3) (emphasis added)

14

of the intrinsic evidence. *Phillips*, 415 F.3d at 1319.  Reliance on extrinsic evidence is improper

where the public record unambiguously describes the scope of the patented claims. *Vitronics*, 90

F.3d at 1583.

> **C.** **Construction of the '178 Patent, Claims 1 and 6.**

The "technology" at issue in this case is relatively straightforward.  Given the parties'

respective claims and defenses as pled, Plaintiffs do not believe that the claim terms of the '178

patent necessarily require additional construction beyond the words of the claims themselves.  The

words of the claims should be allowed to speak for themselves.  Plaintiffs note, however, that given

LNC's failed attempt at *inter partes* review,[17] Plaintiffs are uncertain about which, if any, claim

terms Defendants may seek to dispute before this Court. Thus, out of an abundance of caution,

Plaintiffs are identifying what they believe to be the key terms in the asserted claims and what

Plaintiffs believe the proper meanings of those terms to be, as established by their common usage

and the intrinsic evidence before the Court. In discussing these meanings, Plaintiffs are not

suggesting that further construction from the Court is necessary, or that a genuine dispute exists

between the parties concerning any meanings.  However, to the extent a genuine dispute becomes

apparent from the parties' briefing, Plaintiffs respectfully submit that the Court should adopt the

meanings as Plaintiffs suggest below over any contrary construction that Defendants may seek to

advance.

> **1.** **The Inventive Container is not Limited to any Particular Size or Shape.**

The language of claims and the specification reveal that, although the patented container is

---

[17]    In March 2017, LNC petitioned the Patent Trial and Appeal Board ("PTAB") to initiate an *inter partes* review of the patentability of all the claims of the '178 patent.  In its petition, LNC requested the PTAB to construe the term "generally flat."  The PTAB did not do so, ruling instead, that LNC's petition was barred as untimely.  (Ex. J, pp. 284-291)

limited to a class of containers "used to hold fluids" (Ex. K-31 at 1:12-13, 2:44-50, 4:11-12), the container, itself, does not have to be any particular size or shape. The "container" need only hold and allow for fluid to be poured out of it. (Id. at 7:6-25, 7:66-8:21, 1:11-12, 2:47-50, 3:42-45, 3:50-52) The container comprises "a generally continuous sidewall" that comes together in whatever shape and planes and at whatever points to create an "inward space" "bounded" by the continuous sidewall.[18] (Id. at 4:4-15, 6:56-64, 7:6-11, 8:24-27, 8:53-60) For purposes of the invention, "continuous" means "formed from one continuous piece" – whether molded as such or conjoined.

The claims and specification further reveal that neither the size nor shape nor color of either the "container" **or** the "inward space bounded by [the] continuous sidewall" that forms the container covered by claim 1 or claim 6 is limited. (Ex. K-31 at 8:23-43, 8:52-9:9) The "continuous sidewall" must have ends, specifically: (1) a "lower end" with "a bottom" "closing" off the "lower sidewall end" (so that fluid can be contained) (Id. at 4:8-9, 8:24-31, 8:53-67) and (2) an "upper end," which is "generally open" (so that the fluid can be dispensed) (Id. at 2:47-51, 7:8-13, 8:31-32, 8:60-61). But no other limitations are imposed. The language allowed by the PTO is purposefully broad. The size and shape of the "bottom" closing the lower sidewall end and the size and shape of the opening at the upper sidewall end are not non-specific. Also unrestricted is the diameter and other cross-distances of the "continuous" sidewall "boundary" that defines (makes or creates) the "inward space." Thus, the continuous sidewall of which the container is comprised can be one shape and/or size at the lower end, another shape and/or size at the upper end, and any a number of shapes and/or sizes in between. The sidewall need only be "continuous," whether molded or formed from one piece, or created from multiple pieces joined

---

[18] Claim 6 includes the word "rigid" in its description of the "generally continuous sidewall." (Ex. K-31 at 8:23-43, 8:52-9:9)

together to form a "continuous" piece.  (Id. at 4:15-22)  This is the only meaning that can be reasonably given to the language.  The shape of the container is not confined to a cylinder or other specific shape.  (Id. at 4:4-29, 8:52-55)  Claims 1 and 6 fairly encompass any number of "inward spaces" and shaped containers.

Accordingly, if challenged by Defendants, the Court should hold that the phrase "generally continuous sidewall" as it appears in the '178 patent means a sidewall, in whatever shape, that forms an inward space created by the sidewall with a bottom closing off the lower portion of the sidewall.   Such a construction is consistent with the language of the claims, the specification and the purpose of the invention.  The specification is crystal clear: the inventive container is not to be limited to any particular shape or size.  The specification expressly contemplates a container "of any convenient shape, spanning shapes from square to circular to polygonal."  (Ex. K-31 at 4:4-4:7)

The Court should reject any argument that the scope of the asserted claims must be limited solely to what is shown by the patent drawings or the "preferred" embodiment described in the specification.  *See Anchor Wall,* 340 F.3d. at 1306-1307 ("the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration"); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1343 (Fed. Cir. 2001) ("it is well established that broad claims supported by the written description should not be limited in their interpretation to a preferred embodiment"); *Comark Communications Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims"); *CIF Licensing, LLC v. Agere Systems Inc.*, 565 F.Supp.2d 533, 536 (D. Del. 2008) ("where a patent drawing is set forth as a preferred

17

embodiment of the invention, such a drawing is not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves"); *Fitness Quest Inc. v. Monti* , 2007 WL 2359821, *6-7 (N.D. Ohio 2007) ("[A] court construing claim terms may not limit its reading of those terms on the strength of a figure depicting a single preferred embodiment"); *Phillips*, 415 F.3d at 1323 ("we have repeatedly warned against confining the claims to [the preferred] embodiments … [and] rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment").

### 2. The Inwardly Flexible Panel Portion is not Limited to a Particular Size or Shape.

The language of the claims and specification additionally reveal that the patented container is comprised of an "inwardly flexible panel" having a "generally smooth inward surface" (to allow for "unobstructed fluid flow") and forming at least "a portion" or part of "the upper sidewall end." (Ex. K-31 at 4:4-61, 8:23-40, 8:53-9:6)  The "inwardly flexible panel" must form "at least *a portion* of said upper sidewall end," face "outwardly," be sized, shaped and sufficiently pliable to matingly mold (conform) to an object during use, have "a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end," and for claim 1, but not claim 6, be "generally flat."  (Id. at 8:23-9:18)  The allowed language for these straightforward claims also is appropriately broad.  The specification is clear that the inventive flexible panel covered by claims 1 and 6 of the '178 patent also is not limited to any particular size, shape or pliability.  The panel need only be inwardly flexible, generally smooth and mold during use.  (Id. at 5:30-49; 8:33-40; 8:66-9:6)

### 3. The Word "Comprising" Means "Including but not Limited to."

If challenged, the Court should hold that the word "comprising" as used in the claims means

18

"including but not limited to." *McGinley*, 2010 WL 128053 (construing the word "comprising" for purposes of the '675 patent in McGinley's 2009 lawsuit against Munchkin); *In re Skvorecz*, 580 F.3d 1262, 1267 (Fed. Cir. 2009) (quoting *CIAS, Inc. v. Alliance Gaming Corp.,* 504 F.3d 1356, 1360 (Fed. Cir. 2007)).  "Comprising" simply means that a device "may contain elements in addition to those explicitly mentioned in the claim." *Id*.  Thus, any flexible panel rinse cup that contains all the limitations of the asserted claims will still infringe the claims with or without a divider.

### 4. The Use of the Adverb "Generally" to Modify "Flat" Should be Given Effect.

Defendants may again seek to argue that the Court should expressly construe the term "generally flat" as used in claims 1 and 6 to mean without an curve (i.e., "perfectly flat or straight") The Court should reject this argument.  The deliberate use of the adverb "generally" to modify "flat" should be given effect.  The use of the term "generally flat," as opposed to "flat" or "straight," conclusively reveals that the "generally flat" sidewall and/or panel recited in the claims includes a mostly smooth and even surface, which may or may not have some curvature, arc, bend or bow.

If genuinely challenged, the Court should construe the term "generally flat" as Plaintiffs suggest.  Plaintiffs' construction is reasonable and consistent with the plain and ordinary meaning of the term.  *See* Merriam-Webster.com ("generally": "in disregard of specific instances and with regard to the overall picture" and "flat": "having a relatively smooth or even surface"; "arranged or laid out so as to be level or even"); Google online dictionary ("generally": "1.  in most cases; usually" and "2. in general terms, without regard to particulars or exceptions." and "flat": "smooth or even; without marked lumps or indentations"; "having a broad level surface but little height or depth; shallow").

19

This proposed construction also is consistent with the ordinary and common use of the word "flat," even without the modifying adverb "generally."  The word "flat," by itself, ordinarily allows for some deviation from "perfectly flat."   One need only consider the surface of a highway or road, which is considered to be "flat," but which typically includes a crown to allow for drainage.  The ordinary understanding of a car roof, hood or trunk as being "flat" illustrates this point as well.

The patent specification and drawings also support a construction of the term "generally flat" as meaning a surface that may or may not be curved, as opposed to perfectly flat or straight. The specification does not describe the flexible panel as being "flat," but instead expressly contemplates a measurable amount of curvature or bowing required for the flexible panel to matingly mold or conform to the shape of a head, for example, when used.  The specification repeatedly explains that the purpose of the "generally flat" flexible panel is to "conform to the shape of an object, such as the head of an individual" to prevent fluid from flowing underneath the rim, a description that leaves no doubt that some curvature is intended and expected.  (Ex. K-31 at 1:14-1:16, 2:50-55; 3:30-34; 5:3-14; 7:18-22)   The specification explains that the "inwardly flexible panel" must be pliable enough to conform to the object it is pressed against (e.g., a toddler's forehead) to create an effective seal.  Thus, depending on the materials used and the method of construction, the flexible panel may have a curvature or bow to ensure that the panel will "effectively seal off [the] passage of fluids back under the flexible rim" while allowing a broad flow of water.  (Id. at 2:57-60; 4:63-5:14)  The specification also describes the rim of, or above, the flexible panel as also being "generally flat," which further confirms that the term does not require a construction meaning "straight" or "without a curve."  The flexible panel "may" differ "generally" in its shape when compared to a more curved portion of the remaining side wall rim.

20

(Id. at 4:30-38)

The patent drawings, too, support the construction of "generally flat" as meaning "generally" flat.  The drawings reveal some curvature in the flexible panel (28), including Figures 1, 2, 7 and 9, even when the flexible panel is not shown as being pressed against an object.  (Ex. K-31, pp. 2, 5, 6)  The drawings show that a flexible panel with some curvature, arc, bend or bow is "generally flat."

Finally, and if needed, the Court may consider that contemporaneous with the engineering of his original product in 2003, McGinley indicated that the "soft rubber [of the inwardly flexible panel] should be designed where it is convex or protrudes outward a little bit so it becomes more flexible.  If … its span is to [sic] straight across the cup it is not flexible enough."  (Ex. A, ¶41; Ex. K-192)  The Court may consider this evidence if it finds the intrinsic evidence to be insufficient to resolve any valid dispute over the meaning of "generally flat."  *See, e.g., Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) ("An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims.  The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems"); *Phillips*, 415 F.3d at 1317 ("Although we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and *inventor testimony,* dictionaries, and learned treatises") (emphasis added).

### 5. "Attached" Should not be Narrowly Construed to Require Separate Materials or Objects.

Finally, if challenged, the Court should give the word "attached" in claim 6 its plain and

21

ordinary meaning.  The Court should reject any effort by Defendants to narrowly construe the word as requiring a combination of two separate materials or pieces.  "The plain and ordinary meaning of the term 'attached' does not necessarily require that the two objects attached together were once separate, or that they were 'not integrally formed, or of a continuous mold' with each other."  *Keystone Glob. LLC v. Decor Essentials Ltd.*, No. 12CIV.9077 DLC, 2014WL888503, at *5-6 (S.D.N.Y. Mar. 6, 2014).  "After all, one's head is 'attached' to one's body, even though they were 'integrally formed' that way."  *Id*.  (refusing to construe "attached" to exclude stabilizing blocks that are "integrally formed, or of a continuous mold, with the base layer"); *see also Magna-Mug LLC v. Novelty, Inc.*, No. 1:13-CV-304, 2014 WL 3895237, at *4 (S.D. Ohio Aug. 8, 2014) (holding that the "ordinary meaning of 'attached' encompasses both … the joining together of separate pieces and the joining together of two ends of the same piece" and refusing to construe a claim comprising "a bottom portion attached along the lower side length of the integrated cylindrical portion" as limiting the invention to one in which the bottom portion had to be a separate piece).

Consistent with the construction given in these and other cases, the intrinsic evidence before the Court demonstrates that "attached" as used in claim 6, which describes the "bottom" of the invention as being "attached" to the "lower sidewall end" of the container, is not intended to limit the invention to one in which the bottom portion is a piece separate from the sidewall.  In particular, the specification explains that in one of the many embodiments of the invention, and "depending on the material used," the "bottom" of the lower side wall end, "could be constructed with the forming of side wall thus forming a unitary construction of side wall and bottom."  (Ex. K-31 at 4:15-19)

22

**Step Two: Claims 1 and 6 and the Accused Device Compared**

A comparison of claims 1 and 6 to the *Nuby Tear Free Rinse Pail* (Ex. L) readily reveals that a partial summary judgment on the issue of literal infringement is warranted.  The structure of Defendants' product is not disputed.  The *Nuby Tear Free Rinse Pail* contains all of the elements of these two claims.  A ruling on this discrete issue of infringement will prevent the further unnecessary expenditure of time and resources.  *See Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, No. C-93-20853 RMW, 1995 WL 419747, at \*4 (N.D. Cal. July 10, 1995) (purpose of summary judgment is satisfied when the summary adjudication of a preliminary issue, "such as infringement, helps to focus the issues to be litigated, thus conserving judicial resources).

**A.  The Undisputed Facts are Such that a Reasonable Jury Can Only Find that the *Nuby Tear Free Rinse Pail* Literally Infringes Independent Claim 1.**

The invention in claim 1 is as follows:

1.   A container comprising:

a **generally continuous sidewall** terminating in an upper sidewall end and a lower sidewall end and defining **an inward fluid holding space** bounded by said continuous sidewall, said continuous sidewall having [1] a **flexible portion thereof** that defines a generally flat sidewall section and [2] a **generally non flexible portion** joined on either end to the flexible portion,

a **bottom** closing said lower sidewall end with said upper sidewall end being generally open,

a **generally flat inwardly flexible panel forming a portion of said generally flat sidewall section and extending to form at least a portion of said upper sidewall end**, the flexible panel [1] facing outwardly and [2] being sized, shaped and sufficiently pliable to matingly mold to the head of a person during use; said flexible panel [3] having a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end, and

a **handle** located on the non flexible portion opposite the flexible panel to allow a user to lift and pour the container when filled with liquid.

23

(Ex. K-31 at 8:23-43) (emphasis given to specific limitations with bracketed numbers added for ease of reference).

The *Nuby Tear Free Rinse Pail* possesses each limitation described in and protected by claim 1 of the '178 patent. As illustrated below, the *Nuby Tear Free Rinse Pail* is a "container" that has a generally continuous sidewall (A) terminating in an upper sidewall end (B) and a lower sidewall end (C) and defining an inward fluid holding space (D) bounded by said continuous sidewall (A), said continuous sidewall having a flexible portion thereof that defines a generally flat sidewall section (E) and a generally non flexible portion joined on either end to the flexible portion (F):



(UMF, ¶¶17-26)

The *Nuby Tear Free Rinse Pail* also has a bottom (G) closing said lower sidewall end (C) and the upper sidewall end (B) is generally open. (Id.) In addition, the Nuby cup has a generally

24

flat inwardly flexible panel (H) forming a portion of said generally flat sidewall section (E) and extending to form at least a portion of said upper sidewall end (B), the flexible panel (H) facing outwardly and being sized, shaped and sufficiently pliable to matingly mold to the head of a person during use; said flexible panel also having a generally smooth inward surface (I) for unobstructed fluid flow out of said open upper sidewall end.  (Id.)  Finally, the *Nuby Rinse Pail* has a handle (J) located on the non-flexible portion of the product opposite the flexible panel (H), which allows a user to lift and pour the container when filled with liquid.  (Id.)  The *Nuby Tear Free Rinse Pail* contains every limitation in and literally infringes claim 1.  Claim 1 reads on LNC's product exactly.

     **B.**     **The Undisputed Facts are Such that Reasonable Jury Can Only Find that the *Nuby Tear Free Rinse Pail* Literally Infringes Independent Claim 6.**

The invention in claim 6 is as follows:

> 6.  A container comprising:
>
> **a generally rigid continuous sidewall having an upper sidewall end and a lower sidewall end** and defining an inward fluid holding space bounded by said continuous sidewall, said continuous sidewall having [1] a flexible portion thereof that defines a generally flat sidewall section and [2] a generally non flexible portion joined on either end to the flexible portion,
>
> a **bottom** attached to said lower sidewall end with said upper sidewall end being generally open,
>
> a **rim** connected to said upper sidewall end,
>
> a portion of said **rim being sufficiently inwardly flexible** to conform to the shape of an object to which said rim is pressed against,
>
> **an inwardly flexible and pliable panel forming a portion of said generally flat sidewall section and connecting with said inwardly flexible rim portion**, said inwardly flexible panel having [1] a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end and [2] an outward facing surface that is sized and shaped to matingly mold to the head of a person during use, and

25

a **handle** joined to the non flexible portion opposite the flexible portion to provide for lifting and pouring of the contents of the container by a user.

(Ex. K-31 at 8:52-9:9) (emphasis given to specific limitations with bracketed numbers added for ease of reference).

The *Nuby Tear Free Rinse Pail* possesses each of the elements described in McGinley's invention as protected in claim 6.  As illustrated below, the *Nuby Tear Free Rinse Pail* is a "container" that has a generally rigid continuous sidewall (A) having an upper sidewall end (B) and a lower sidewall end (C) and defining an inward fluid holding space bounded by said continuous sidewall (D), said continuous sidewall having a flexible portion thereof (E) that defines a generally flat sidewall section (F) and a generally non flexible portion joined on either end to the flexible portion (G):



(UMF, ¶¶27-38)

The *Nuby Tear Free Rinse Pail* also has a bottom (G) attached to said lower sidewall end (C) with said upper sidewall end (B) being generally open, a rim (K) connected to said upper sidewall end, a portion of said rim (K) being sufficiently inwardly flexible to conform to the shape of an object to which said rim is pressed against.  In addition, the Nuby rinse cup has a an inwardly flexible and pliable panel (H) forming a portion of said generally flat sidewall section (E) and connecting with said inwardly flexible rim portion (K), said inwardly flexible panel having a generally smooth inward surface (I) for unobstructed fluid flow out of said open upper sidewall end (B) and an outward facing surface (H) that is sized and shaped to matingly mold to the head of a person during use.  (Id.)  Finally, the Nuby rinser has a handle (J) joined to the non-flexible portion opposite the flexible portion (H) to provide for lifting and pouring of the contents of the container by a user.  The *Nuby Tear Free Rinse Pail* literally infringes independent claim 6 of the '178 patent.  The Nuby cup has every limitation recited in claim 6 and claim 6 reads on the Nuby cup exactly.

## CONCLUSION

Because no reasonable jury considering the undisputed facts material to the issue of literal infringement could conclude otherwise, the Court should hold that Defendants LNC and BBD literally infringed claims 1 and 6 of the '178 patent as a matter of law and enter partial summary judgment on that issue in favor of Plaintiffs, both as to Plaintiffs' claims of infringement against LNC and BBD, and on Defendants' jointly asserted affirmative defense and converse counterclaim for non-infringement.

Dated: November 8, 2018

27

Respectfully Submitted,

WALTERS RENWICK RICHARDS
  SKEENS & VAUGHAN, P.C.


By  */s/ Kip D. Richards*
   Kip D. Richards – Mo. Bar 39743
   Michael B. Sichter – Mo. Bar 65154
   2500 City Center Square
   1100 Main Street
   Kansas City, MO 64196
   (816) 421-6620
   (816) 421-4747 (Facsimile)
   krichards@wrrsvlaw.com
   msichter@wrrsvlaw.com


HUDSON, POTTS & BERNSTEIN, L.L.P.
P.O. Drawer 3008
Monroe, Louisiana 71210-3008
(318) 388-4400

By:  s/*J.P. Christiansen*
   Jan P. Christiansen
   Bar Roll No. 20142

ATTORNEYS FOR MICHAEL L.
MCGINLEY AND S.C. PRODUCTS, INC.


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Louisiana, Monroe Division, with notice of case activity to be generated and sent electronically by the Clerk to all designated persons this **8 day of November 2018.**


*/s/ Kip D. Richards*


28