UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| MICHAEL L. McGINLEY, et al., | |
| *Plaintiffs*, | Case No 3:17-cv-00821 LEAD |
| vs. | Judge Terry A. Doughty |
| LUV N' CARE, LTD., et al., | Magistrate Judge Karen L. Hayes |
| *Defendants.* | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Robert M. Chiaviello, Jr. (La. Bar # No. 37370)
Hartwell P. Morse, III (Admitted *Pro Hac Vice*)
**NUBYLAW**
3030 Aurora Street, 2nd Floor
Monroe, LA  71201
Telephone: (318) 410-4012
Facsimile: (318) 388-5892
Email:  bobc@nuby.com
        hartm@nuby.com

*Attorneys for Defendants Luv n' care, Ltd., Admar International, Inc., Bayou Graphics and Design, LLC, BuyBabyDirect, LLC, Control Services, Inc. and HHHII, LLC*

## TABLE OF CONTENTS

Page

I.    FACTS ...................................................................................................................1

   A.  '178 Patent ...................................................................................................1

   B.  The Prosecution History ...............................................................................3

   C.  The Nuby Tear Free Rinse Pail......................................................................7

II.   LEGAL STANDARD..........................................................................................7

   A.  Summary Judgment Standard .......................................................................7

   B.  Requirements for Infringement.....................................................................8

   C.  Claim Construction Guiding Principals ........................................................9

   D.  The Nuby Tear Free Rinse Pail with Curved Sidewalls and a Curved Flexible Sheet Does Not Meet the "Generally Flat" Requirements of the Claims ........................................................................................................10

   E.  The Doctrine of Equivalents Does Not Apply.............................................15

III.  CONCLUSION..................................................................................................15

i

## TABLE OF AUTHORITES

**Case**                                                                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................................8

*Boudreaux v. Swift Transp. Co., Inc.*,
    402 F.3d 536 (5th Cir. 2005) ....................................................................................................8

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004)...................................................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................................7

*Dynacore Holdings Corp. v. U.S. Phillips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004).................................................................................................8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)................................................................................................................15

*Freedman Seating Co. v. American Seating Co.*,
    420 F.3d 1350 (Fed. Cir. 2005).................................................................................................8

*Home Diagnostics, Inc., v. Lifescan, Inc.*,
    381 F.3d 1352 (Fed. Cir. 2004)...............................................................................................10

*Lavespere v. Niagara Mach & Tool Works, Inc.*,
    910 F.2d 167 (5th Cir. 1990) ....................................................................................................8

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995).....................................................................................................9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005).............................................................................................8, 9

*Schoell v. Regal Marine Indus.*,
    247 F.3d 1202 (Fed. Cir. 2001)...........................................................................................13, 15

*Standard Oil Co. v. Am. Cyanamid Co.*,
    774 F.2d 448 (Fed. Cir. 1985).................................................................................................10

*TechSearch, LLC v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002).................................................................................................9

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002)..................................................................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)..................................................................................................9

*Wallace v. Texas Tech. Univ.*,
   80 F.3d 1042 (5th Cir. 1996) ...................................................................................................8

Luv n' care, Ltd. (LNC), Admar International, Inc. ("Admar"), BuyBabyDirect, LLC (BBD), Bayou Graphics and Design, LLC (BGD), Control Services, Inc. (CS), and HHHII, LLC (HHHII), (collectively Defendants) are entitled to summary judgment that U.S. Patent No. 8,636,178 (the '178 Patent) asserted by Plaintiffs Michael L. McGinley and S.C. Products, Inc. (collectively McGinley) is not infringed.  The '178 Patent issued with claims directed to a container or flexible panel pitcher that requires, among other limitations not at issue in this motion, a "generally flat sidewall section" and "a generally flat inwardly flexible panel."  The only product accused of infringement is the Nuby Tear Free Rinse Pail.[1]  As is readily apparent from a visual inspection of the Nuby Tear Free Rinse Pail, that rinse pail has neither a "generally flat sidewall section" nor "a generally flat inwardly flexible panel."  Failure to find all the claim limitations in the accused product renders the accused product non-infringing.  There is no material fact in dispute and the Defendants are entitled to a judgment of noninfringement as a matter of law making this issue ripe for summary judgment.

## I.    FACTS

### A.    The '178 Patent

The '178 Patent is directed to a flexible panel pitcher.  It has ten claims and five sheets of drawings.  A copy of the '178 Patent is attached as Exhibit 31.  The alleged invention described in the '178 Patent is directed to a container or pitcher providing a flexible sidewall section that can conform to the shape of an object.  The primary purpose is for rinsing shampoo or soap from the head of a child.  Figures 3 and 6 set out below illustrates different versions of the alleged invention with and without the divider.

---

[1] An example of the accused Nuby Tear Free Rinse Pail is being provided to the Court as Exhibit 249 and photographs of the accused product are attached to this motion as Exhibits 249A-E.

1



Ex. 31, Figures 3 and 6.

As explained in the '178 Patent, the alleged invention provides a pitcher or container for holding rinse water.  The container has continuous sidewalls 12 with one of the sidewalls having a sidewall portion 24 with a flexible panel portion 28.  The flexible panel portion is constructed of a rubber-like material and is capable of conforming to the shape of the head.  In operation, the flexible panel portion is pressed against the front of the head above the eyes and the rinse water pours over the top of the head.  The flexible panel portion prevents the rinse water from flowing into the child's eyes or face.  Throughout the '178 Patent, containers are shown both without a divider (Figure 3) and with a divider (Figure 6).  The divider is provided so that the rinse water flows over the head more evenly.  In Figure 9, set out below, another embodiment is shown where a sidewall section is shown to be flat with a flat flexible panel 28 flexed slightly inward.

2



*Fig. 9*

Ex. 31, Figure 9.

The alleged invention of the '178 Patent is described in the ten claims at the end of the '178 Patent. All ten claims are drawn to the Figure 9 embodiment but without the divider 50.

**B.     The Prosecution History**

The '178 Patent was issued after a chain of three consecutive applications. Those applications are listed on the cover page of the '178 Patent and include:

1.      Application Serial No. 10/357,651 (the Original Application) filed on February 4, 2003, by plaintiff Michael L. McGinley. A copy of the Original Application is attached as Exhibit 39-3. The Original Application was expressly abandoned on February 2, 2004.

2.      Application Serial No. 12/255,797 (the '675 Application) filed on February 4, 2003 by plaintiff Michael L. McGinley and alleged co-inventor Brian Lau as a continuation-in-part of the Original Application. The '675 Application is attached as Exhibit 39-2. The '675 Application ultimately issued as U.S. Patent No. 7,441,675 (the '675 Patent).

3

3.      Application Serial No. 12/255,797 (the '178 Application) filed on October 22, 2008 by plaintiff Michael L. McGinley and alleged co-inventor Brian Lau as a continuation-in-part of the '675 Application.  The '178 Application is attached as Exhibit 39-1.

The Original Application was filed with two sheets of drawings showing four figures of a flexible panel pitcher with no divider and twenty-four claims all directed to a "container" but without limitations to a divider or to a generally flat sidewall section or a generally flat flexible panel.  The original drawings are set out below.



Ex. 39-3, pgs. 22-23.

 Before that application was evaluated by the United States Patent and Trademark Office (USPTO), McGinley's attorney filed on February 2, 2004, an Express Abandonment in favor of the '675 Application.  Subsequently, the USPTO rejected all claims of the Original Application.

4

The '675 Application was a continuation-in-part application meaning it included additional information.   In particular, the '675 Application included an additional sheet of drawings depicting a pitcher with a divider.  The additional drawings are set out below.



Ex. 39-2, pg. 22.

After repeated rejections and responses, the USPTO allowed claims directed to a pitcher with a divider.  The claims of the '675 Application did not include any "generally flat" limitations. Those claims issued as the '675 Patent.  The '675 Patent is not at issue in this case as it is undisputed that all the claims of the '675 Patent require a divider and it is also undisputed that the Nuby Tear Free Rinse Pail has no divider.  Before the '675 Patent issued, McGinley together with his alleged co-inventor filed the '178 Application.

The '178 Application was also a continuation-in-part application and included an additional sheet of drawings depicting a pitcher with a divider and a flat sidewall section and a flat flexible panel.  The additional drawing is set out below.

5



*Fig. 9*

Ex. 39-1, pg. 6.

The '178 Application as filed included claims that did include a divider but did not include limitations to a generally flat sidewall section or a generally flat flexible panel.  The USPTO rejected those claims for the reason that they were directed to the same invention claimed in the '675 Patent, a so-called double patenting rejection.  Ex. 39-1, pgs. 80-83.

In response to the double patenting rejection, the claims were amended to add the limitations to a "generally flat sidewall section" and a "generally flat flexible panel".  Ex. 39-1, pgs. 85-93.  In remarks, Ex. 39-1, pgs. 86-89, submitted with the claim amendments, Ex. 39-1, pgs. 91-93, McGinley expressly stated that the limitations to a generally flat sidewall section and a generally flat flexible panel were added to overcome the prior art.  McGinley stated (1) that "the present invention claims a generally rigid continuous sidewall having a portion thereof that defines a generally flat sidewall section" and that (2) "the present invention recites generally rigid continuous sidewall having a generally flat sidewall section and an inwardly flexible panel within the generally flat sidewall section."  McGinley went on to say that "these references do not teach or suggest either of these limitations." Ex. 39-1, pg. 087.  The '178 Application

6

ultimately issued as the '178 Patent, the only patent asserted in this action, with all claims including limitations to a "generally flat sidewall section" and a "generally flat flexible panel."

### C.      The Nuby Tear Free Rinse Pail

The Nuby Tear Free Rinse Pail is intended to protect the eyes and face of a child when rinsing shampoo out of the child's hair.  While the Nuby Tear Free Rinse Pail includes a flexible sheet embedded in the sidewall, as can be easily observed from a visual inspection of the Nuby product, nether the sidewall nor the flexible sheet has any flat surfaces.  The sidewall is curved in all respects both up and down and from side-to-side without any flat sections.  Within this multiply curved sidewall, the flexible sheet is also curved not only up and down and from side-to-side but also curved outwardly.  Both the sidewall and the flexible sheet are curved in multiple directions as shown in the photographs set out below.



Ex. 249A-E, photos of Nuby Tear Free Rinse Pail.

## II.      LEGAL STANDARDS

### A.      Summary Judgment Standards

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). When a party

moves for summary judgment on a claim for which its opponent bears the burden of proof, summary judgment is proper if (1) there is no evidence to support an essential element of the claim, or (2) the moving party submits summary judgment evidence that negates one of the essential elements of the claim. *Id.*, 477 U.S. at 322–24; *Lavespere v. Niagara Mach & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). The party opposing summary judgment must "set forth facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Instead, the opponent "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). For the reasons set forth below, the Court should render summary judgment in favor of Defendants. There are no genuine questions of material fact in dispute, and Defendants are entitled to judgment in their favor as a matter of law.

## B. Requirements for Infringement

LNC seeks summary judgment of non-infringement on all claims in the '178 Patent. A determination of patent infringement involves a two-step inquiry. "The court must first interpret the claims to determine their scope and meaning. It must then compare the properly construed claims to the allegedly infringing device." *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004) (citation omitted). The first step of this inquiry is a legal determination. The second step is primarily factual, though to support a judgment of infringement the accused device must satisfy every limitation in the asserted claims, either literally or under the doctrine of equivalents. *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005). "[A]lthough equivalence is a factual matter normally

8

reserved for a factfinder, the trial court should grant summary judgment in any case where no reasonable factfinder could find equivalence." *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).

### C.    Claim Construction Guiding Principals

The claims of a patent define the invention to which the patentee is entitled. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). To determine the meaning of the claims, courts start by considering the intrinsic evidence including the claims themselves, the specification and the prosecution history. *Id.* at 1314 and *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004). Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312-12. The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. A term's context in the asserted claim can be very instructive. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In this case, the written specification does not offer specific guidance as the terms "generally flat sidewall section" and "generally flat flexible panel" were not used in the written description. They were added directly to the claims during prosecution of the '178 Application. The written specification does however refer to "a generally flat portion of side wall rim 20." Ex. 31, col. 4,

lns. 31-32.  McGinley was fully aware of the difference between items that are generally flat and items that are generally flat and items that are "cylindrical," Ex. 31, col.4, ln. 35, or "circular," Ex. 31, col. 4, ln.36.  To the extent the term "generally flat" is used in the written specification of the '178 Patent, it is used in its ordinary meaning as an item that is mostly flat or level and not curved or rounded.

In this case the Court must turn to the prosecution history as another tool to supply the proper context for claim construction because a patent applicant may also, as in this case, define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).  In this case, the introduction of the terms "generally flat sidewall section" and "generally flat flexible panel" during prosecution were introduced to secure allowance of the claims and has the effect of excluding curved or round containers.

**D.     The Nuby Tear Free Rinse Pail with Curved Sidewalls and a Curved Flexible Sheet Does Not Meet the "Generally Flat" Requirements of the Claims**

The independent claims are 1 and 6 and are set out below with the terms in question bolded:

> 1. A container comprising: a generally continuous sidewall terminating in an upper sidewall end and a lower sidewall end and defining an inward fluid holding space bounded by said continuous sidewall, said continuous sidewall having a flexible portion thereof that defines **a generally flat sidewall section** and a generally non flexible portion joined on either end to the flexible portion, a bottom closing said lower sidewall end with said upper sidewall end being generally open, **a generally flat inwardly flexible panel** forming a portion of **said generally flat sidewall section** and extending to form at least a portion of said upper sidewall end, the flexible panel facing outwardly and being sized, shaped and sufficiently pliable to matingly mold to the head of a person during

10

use; said flexible panel having a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end, and a handle located on the non flexible portion opposite the flexible panel to allow a user to lift and pour the container when filled with liquid.

6. A container comprising: a generally rigid continuous sidewall having an upper sidewall end and a lower sidewall end and defining an inward fluid holding space bounded by said continuous sidewall, said continuous sidewall having **a flexible portion thereof that defines a generally flat sidewall section** and a generally non flexible portion joined on either end to the flexible portion, a bottom attached to said lower sidewall end with said upper sidewall end being generally open, a rim connected to said upper sidewall end, a portion of said rim being sufficiently inwardly flexible to conform to the shape of an object to which said rim is pressed against, **an inwardly flexible and pliable panel forming a portion of said generally flat sidewall section** and connecting with said inwardly flexible rim portion, said inwardly flexible panel having a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end and an outward facing surface that is sized and shaped to matingly mold to the head of a person during use, and a handle joined to the non flexible portion opposite the flexible portion to provide for lifting and pouring of the contents of the container by a user.

While both claims have a number of limitations, the Court need not be concerned with them as the claims cannot be infringed if the accused product omits even one limitation. In this case, the two limitations bolded above are missing from the accused product. Both claims require "a generally flat sidewall section." Claim 1 also requires a "generally flat inwardly flexible panel forming a portion of said generally flat sidewall section." Claim 6 requires "an inwardly flexible and pliable panel forming a portion of said generally flat sidewall section." The operative terms in these limitations are "generally" and "flat."

The claim term "generally flat" while not requiring perfect flatness, cannot be construed to cover a curved, cylindrical or rounded surface. This is compelled by the plain meaning of the term "generally" meaning "mostly" and "flat" meaning level or not curved. The "generally flat" limitations is the claims in consistent with descriptions of other features described in the '178 Patent. With respect to the rim of the container, shown as 20 in the figures, it is described as "a

11

generally flat portion." Ex. 31, col. 4, lns. 31-42. Based on that written description and the associated drawings it is clear that the patentee was using "generally flat" in its ordinary meaning of mostly level and not curved or rounded. This meaning is further reinforced by the patentee's distinguishing the generally flat rim from those that are cylindrical or circular. There is no other alternative construction suggested in either the '178 Patent specification or the prosecution file history; "generally flat" must mean mostly level and not curved or rounded.

This construction of "generally flat" to mean mostly level and not curved or rounded is consistent with the prosecution history of the '178 Application where Figure 9 was included with the '178 Application when it was filed. Figure 9 depicts a flexible panel pitcher with a flat sidewall section and a flat flexible panel. Figure 9 was included in the '178 Application when it was filed at the conclusion of prosecution of the '675 Application and before the '675 Patent issued. The presumption must be that it was added to distinguish the '178 Application from the '675 Application and the '675 Patent. This presumption is confirmed by the double patenting rejection issued by the USPTO in the '178 Application. The USPTO issued the double patenting rejection noting that the '178 Application claims were the same as the '675 Patent. Ex. 39-1, pg. 82. McGinley never disputed that rejection and instead amended the claims to add the "generally flat" limitations. The only conclusion based on the addition of Figure 9, the remarks overcoming the double patenting rejection and the "generally flat" amendment to the claims is that intent was to distinguish the claims from the round container of the '675 Patent and the prior art.

This proposed construction is further compelled by the prosecution history where McGinley added the "generally flat" limitations not only to avoid the double patenting rejection but also to overcome the prior art that showed rounded pitchers. In the earlier '675 Application, McGinley added the divider limitation that was not shown in prior art round pitchers to

overcome the USPTO rejection. Then in the '178 Application, McGinley dropped the divider limitation but now faced the round pitcher prior art. To overcome the round pitcher prior art, McGinley added the "generally flat" limitations and expressly stated that he was adding those limitations to overcome that prior art. Under the doctrine of file history estoppel, the patentee cannot argue the absence of the limitation explicitly added to overcome a prior art rejection. Based on McGinley's representations to the USPTO, the "generally flat" limitations cannot include curved or rounded surfaces.

Construing the term "generally flat" has been addressed by other courts and most notably by the Federal Circuit. In *Schoell v. Regal Marine Indus.*, 247 F.3d 1202 (Fed. Cir. 2001), the Federal Circuit was faced with construing the term "generally flat" in connection with boat hulls. The Court engaged in a detailed discussion of the terms "generally" and "flat." The Court explained that the term "generally" means "mostly" and does not require perfect flatness. *Id.* at 1208. The Federal Circuit observed that the trial court construed flat to mean horizontal and almost as if anticipating this case noted "that interpretation may not apply in some cases, for example, a vertical surface may be flat but not horizontal." *Id.* The Federal Circuit went on to approve the interpretation by noting that regardless of the meaning of "generally flat" a v-shaped boat hull could not meet the limitation. Like this case, the "generally flat" limitation was added to overcome a double patenting rejection based on an earlier patent to the patentee Schoell. The Federal Circuit noted that Schoell's earlier patent that formed the basis for a double patenting rejection showed a V-shaped hull. *Id.* Schoell amended his claims to add the "generally flat" limitation to avoid the double patenting rejection. Based on that amendment, Schoell could not later argue that a V-shaped hull was "generally flat." *Id.*

13

As the Court can observe from an examination of an actual Nuby Tear Free Rinse Pail, the entire sidewall is curved and shaped in multiple directions to form a container with no flat surfaces. The curvature of the Nuby Tear Free Rinse Pail sidewalls is illustrated in the series of photographs set out below depicting various views of the Nuby Tear Free Rinse Pail submitted as Exhibit 249.[2]



Ex. 249A-C.

There are simply no flat surfaces to be found. The sidewalls are curved both from side-to-side and up and down. The curvature of the sidewall is further demonstrated by placing the Nuby Tear Free Rinse Pail with the flexible sheet side down on the desk and watch it rock back and forth as one would expect from a round object. In contrast, if a rinse cup having the generally flat sidewall and generally flat flexible panel as depicted in Figure 9 and claimed in the '178 patent is placed on the same desk, it will not rock at all as one would also expect from a generally flat object.

As for the flexible sheet, it not only follows the curvature of the sidewall with curvature up and down and from side-to-side, it also includes additional curvatures away from the center of the rinse pail (in and out) (Figure 249B) as well as curved around the rim of the rinse pail creating a highly curved surface as shown in the photograph Exhibits 249A-C above.

---

[2] Photographs of the Nuby Tear Rinse Pail are attached as Exhibits 249A-E.

In this case, McGinley argued around his earlier '675 Patent that disclosed curved pitchers by adding the "generally flat" limitations. This concession, as the Federal Circuit noted in the *Schoell* Case, prevents the patentee from trying to recapture what he conceded. McGinley, having conceded that his claims including the "generally flat" limitations were added to overcome both the prior art and the double patenting rejection based on the '675 Patent, he cannot now argue that a pitcher with curved sidewalls and a curved flexible panel can meet those "generally flat" limitations.

### E.    The Doctrine of Equivalents Does Not Apply

As explained in the *Schoell* Case, the patentee bears the burden establishing infringement either directly or under the Doctrine of Equivalents. Here, there are not facts establishing equivalents and as a matter of law, no such facts can be established. When a limitation is added to overcome double patenting and prior art rejections, as was the case during the prosecution of the '178 Application, an estoppel is effected preventing the patentee from arguing equivalents. McGinley cannot establish infringement under the Doctrine of Equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002).

## III.    CONCLUSION

For these reasons, the Court should grant Defendants' Motion for Summary Judgment and dismiss Plaintiffs' claims with prejudice.

Date:    November 8, 2018.

Respectfully submitted,

*/s/ Robert M. Chiaviello, Jr.*

Robert M. Chiaviello, Jr. (La. Bar # No. 37370)
Hartwell P. Morse, III (Admitted *Pro Hac Vice*)
**NUBYLAW**
3030 Aurora Street, 2nd Floor
Monroe, LA  71201

15

Telephone: (318) 410-4012
Facsimile: (318) 388-5892
Email:  bobc@nuby.com
          hartm@nuby.com

*Attorneys for Defendants Luv n' care, Ltd., Admar International, Inc., Bayou Graphics and Design, LLC, BuyBabyDirect, LLC, Control Services, Inc. and HHHII, LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 8th day of November 2018, the foregoing document was served,

via electronic mail, upon the following:

Michael L.  McGinley and S.C.  Products, Inc.,
Through its counsel of record:

Kip D.  Richards
krichards@wbsvlaw.com
Michael B.  Sichter
msichter@wbsvlaw.com
**WALTERS BENDER STROHBEHN & VAUGHAN, P.C.**

Jan P.  Christiansen
jpchris@hpblaw.com
**HUDSON, POTTS & BERNSTEIN, L.L.P.**

/s/ Robert M.  Chiaviello, Jr.
Robert M.  Chiaviello, Jr.