**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

MICHAEL L. McGINLEY, et al.,

      Plaintiffs/Counterclaim Defendants

vs.

LUV N' CARE, LTD., et al.,

      Defendants/Counterclaim Plaintiffs.

Case No. 3:17-CV-00821 LEAD

Judge Terry A. Doughty

Magistrate Judge Karen L. Hayes

# EXHIBIT A

---

**TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PATENT VALIDITY**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| MICHAEL L. McGINLEY, et al., | |
| Plaintiffs/Counterclaim Defendants, | Case No. 3:17-CV-00821 LEAD |
| vs. | Judge Terry A. Doughty |
| LUV N' CARE, LTD., | Magistrate Judge Karen L. Hayes |
| Defendant/Counterclaim Plaintiffs. | |

## **AFFIDAVIT OF Q. TODD DICKINSON**

Q. Todd Dickinson, being a person over 18 years of age, and duly sworn, states as follows:

1.     My name is Todd Dickinson.  I am over 18 years of age and work as an attorney specializing in the field of intellectual property law.  I am a member of the bars of the Commonwealth of Pennsylvania, the states of Illinois and California, and the District of Columbia. I am registered to appear and practice before the United States Patent and Trademark Office (the "Patent Office" or the "USPTO").

2.     I am currently a Senior Partner of the law firm Polsinelli, PC, 1401 I St. NW, Ste. 800, Washington, D.C. and have worked as an attorney, U.S. government official, and policy leader in the field of intellectual property for almost 40 years.  I have served as an expert witness more than 15 times.

3.     As an expert witness in these other cases, I have provided opinions on a variety of matters, including patent office practice, industry practice in the area of patent law, willful infringement issues, patent enforceability, patentability issues, and intellectual property litigation strategies.

4.      I obtained my law license and passed the patent bar in 1977 and I have concentrated my practice since that time on intellectual property matters working for a number of clients, managing intellectual property litigation, and evaluating, analyzing, filing and prosecuting patent applications. I prepared and prosecuted hundreds of patent applications before the USPTO as a patent practitioner. I have also worked and served as intellectual property counsel for a number of companies.

5.      From 1981 to 1990, I served as Counsel to Chevron Corporation. From 1990 to 1995, I was a patent and trademark lawyer with Baxter Travenol Laboratories. From 1990 to 1995, I was Chief Intellectual Property and Technology Counsel for Sun Company, Inc. (Sunoco, Inc.). Form 2004-2008, I served as Vice President and Chief Intellectual Property Counsel of the General Electric Company.

6.      From 1997 to 2001, I served the United States government as the Undersecretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, having been nominated by the President of the United States and confirmed by the U.S. Senate. As Director of the USPTO, I was also the principal advisor to the President of the United States on all aspects of intellectual policy and practice. I reported directly to the Secretary of Commerce and was also responsible for the management and direction of all aspects of the work of the USPTO, including patent operations. Among my responsibilities were the oversight and final say on the drafting and implementation of all patent examination policies, regulations, and guidelines.

7.      I serve on the Board of Trustees of the University of Pittsburgh School of Law and on the IP Advisory Board of the George Washington University School of Law. I am also currently an adjunct professor of law at the George Washington University School of Law, and

2

have lectured or taught intellectual property courses at Stanford University, Yale University, Harvard University, and the University of California Berkeley School of Law ("Boalt Hall") and Georgetown University.

8.    I have also served as Executive Director of the American Intellectual Property Law Association (AIPLA), which is an independent bar association specializing in intellectual property matters.

9.    My *curriculum vitae* is attached as Exhibit A and it accurately describes my background and experience.

10.    The plaintiffs in this lawsuit have retained me as an expert witness to offer my opinions in regard to the various defenses, affirmative defenses and counterclaims that the defendants are asserting in their Answer to Amended Complaint, Affirmative Defenses and Counterclaims.  The plaintiffs have also asked me to provide my opinions in regard to certain arguments the defendants are making in this case with regard to the effective filings date for the claims of the patent in suit, and whether the application from which that patent issued, filed October 22, 2008, No. 12/255,797 (called the "'178 CIP application") can claim priority from a prior CIP application filed February 2, 2004, No. 10/770,325 (the "'675 CIP Application"), which was filed as a CIP of Application No. 10/357,651, filed February 4, 2003 (the "Original 2003 Application"), which was abandoned after the '675 CIP Application was on file.

11.    I have reviewed Plaintiffs' Amended Complaint (Doc. 109) and Defendants' Answer to Amended Complaint, Affirmative Defenses and Counterclaims (Doc. 112) in this case.  I understand that the plaintiffs are asserting claims for patent infringement against Defendant Luv n' care, Ltd. ("LNC") and its affiliate based on the claims of U.S. Letters Patent No. 8,636,178 (the '178 patent).

12.    I have reviewed the subject patents and the corresponding prosecution histories for the patents.

13.    The product accused of infringing the '178 patent is the Nuby Tear Free Rinse Pail. I understand that "Nuby" is a trademark for the defendants' Tear Free Rinse Pail. I have reviewed **Exhibits K-5 (Doc. 136-12), K-11 (Doc. 136-15), K-12 (Doc. 136-16)**, and **L (Doc. 136-32)** in the case.

14.    I am submitting this affidavit to the Court and in support of Plaintiffs' Cross-Motion for Summary Judgment on Patent Validity (Doc. 181) in response to the issues relating to the '178 patent claims that Defendants have raised in the Motion for Summary Judgment on Patent Invalidity (Doc. 158).

15.    For purposes of the opinions set forth in this affidavit, I have also reviewed the following:

   a.    The file wrappers for the '178 CIP Application (provided to me as **Exhibit J (Doc. 136-11)**, the '675 CIP Application Provided to me as **Exhibit K-39.2 (Doc. 136-22)**, and the Original 2003 application (provided to me as **Exhibit K-39.3 (Doc. 136-23).**

   b.    The '178 CIP application papers as filed (Doc. 136-11, pp.2-32), the Office Action of January 4, 2010 and McGinley's Amendment and Remarks in response to the Office Action (Doc. 136-11, pp.71-84, 85-94), and the claims of the '178 patent as allowed.

   c.    The specifications and drawings included with each of the three applications and as set forth in the '675 and '178 patents.

**Opinion No. 1**

16.    Plaintiffs, through counsel, have requested my opinion on whether certain claim limitations identified by the defendants as the being the "generally flat sidewall section" as recited in claims 1 and 6 of the '178 patent and the "generally flat inwardly flexible panel" as

4

recited in claim 1 of the '178 patent are supported by the related earlier applications, specifically the '675 CIP Application and the Original 2003 Application, and if so, whether the priority date of the '178 patent is February 4, 2003, the date on which Mr. McGinley filed the Original 2003 Application for his invention.

17.    It is my opinion based on my review and analysis of the '178 CIP Application, the '675 CIP Application, and the Original 2003 Application as identified above that the "generally flat" limitations that McGinley' patent counsel added to the claim language in February 2010 regarding (a) the "section" of "the continuous sidewall" recited in claims 1 and 6 of the '178 patent as issued (originally claim 34), and (b) the "inwardly flexible panel" recited in  claim 1 of the '178 patent as issued (originally claim 35), are supported by the specification of the '675 CIP Application and the specification of the Original 2003 Application, as well as by the specification of the '178 CIP Application.

18.    The drawings disclosed in the Original 2003 Application and in the '675 Application, and also the '178 CIP Application as filed, also disclose these same "generally flat" limitations. The Original 2003 Application filed on February 4, 2003 included four drawings, Fig.'s 1-4 (**Doc. 136-23, pp.22-23**). The same four drawings appear in the '675 Application, together with two additional drawings, Figures, 5 and 6, which added a divider feature (40) to the containers depicted in Fig.'s 3 and 4 (**Doc. 136-22**, **pp.20-22**). All six drawings were included without alteration as Fig.'s 1-6 in the '178 Application as filed on October 22, 2008, together with three additional drawings, Fig.'s 7-9, disclosing a curved divider (50) feature (**Doc. 136-11**, pp.**6-10**).

19.    The shapes of the containers depicted in Figures 1-6 included in the Original 2003 Application and the '675 Application are **not** uniformly or perfectly cylindrical.  The containers

depicted in the six drawings or figures instead disclose containers with a sidewall segment or "section" on the front of the device that is "generally flat" as compared to the shape of the rest of the container.

20.    Figures 1-4 of the Original 2003 Application and the '675 CIP Application disclose the claimed containers with continuous sidewalls that appear to be uniformly curved and rounded at the back and sides, but which becomes visibly less curved and less rounded at the front or face of the containers.  The arc or degree of curvature of the continuous sidewall at the front or face of the containers is demonstrably and materially less than that of sidewall to the sides and back of the devices. The arc or degree of curvature of the continuous sidewall at the front of the containers does not "follow the curvature" of the back and sides such that it will form or complete a uniform circle.[1] The arc or degree of curvature of the continuous sidewall depicted in Figures 1-4 of the Original 2003 Application and the '675 CIP Application is measurably reduced at the front of the containers, opposite the handle, and is mostly or "generally" flat.  The same is true of the containers depicted in Figures 5 and 6 of the '675 CIP Application, which appear to be simply copies of Figures 3 and 4 with a divider feature added.  Moreover, Figures 5 and 6 of the '675 CIP Application show a container having the same continuous sidewall having a "generally flat" section at the front with a divider added. In this regard, I note that the initial claims 25-29 of the '675 CIP Application all describe a container "comprising a divider spanning the interior of said container, said divider being oriented generally parallel to said flexible panel." In order for the divider spanning the interior of the container to be generally parallel to the flexible panel, the flexible panel of the device must be generally or mostly flat, just as Figures 5 and 6 disclose. This limitation requiring that the "divider be oriented generally parallel to said flexible panel" appears in claim 1 and 7.  The phantom (dashed) lines in

---

[1]    The generally flat sidewall section or segment disclosed by the container depicted in Fig. 1 is less extensive than that depicted in Fig. 2 and the lower portions of the front of the container shown in Figure 1 may follow the curvature and shape of the remaining portion of the generally continuous sidewall.

Figures 4 and 5 also disclose that the sidewall section and the flexible panel portion of the sidewall section are "generally flat," and generally parallel to the divider in Figure 5.

22. The specification in each of the three applications describes a "preferred embodiment" of the invention having a "generally flat" sidewall section or "segment" and a "generally flat portion of the sidewall rim 20" consistent with the containers disclosed in Fig.'s 1-6 of the '675 CIP Application:

> **Referring now to FIG. 1, an embodiment of the inventive container 10 is shown** which is comprised of generally continuous side wall 12 which can be of any convenient shape, spanning shapes from square to circular to polygonal. Continuous sidewall 12 terminates at either end in upper sidewall end 14, and lower side wall end. … **As shown in FIG. 1,** upper side wall end 14, depending on the material used for the construction of side wall 12, can form in and of itself a side wall rim 20, or an additional structure 20 (FIG. 3) can be attached to upper side wall end 14 to form a discreet side wall rim 20 (FIG. 3). Generally, side wall rim 20 will take the shape of upper side wall end 14, however, alternatively, decorative materials could be used to modify the shaping of side wall rim 20. …
>
> **Side wall rim 20, in a preferred embodiment is comprised of side wall portion 24**, **which is a generally flat portion of side wall rim 20**, and which may, therefore, **differ, generally, in its shape as compared to the remainder of** side wall rim [20] **and side wall [12]**. For example, if side wall 12, in its construction, comprises a cylindrical container, **then side wall rim 20 will be comprised of a generally circular side wall rim portion 26 and a generally flat side wall rim portion or side wall segment or rim segment 24**. The utility and benefits of generally flat rim segment 24 will be described hereinafter. In a preferred embodiment, and in the vicinity of generally flat side wall rim portion 24, is flexible panel 28 which extends from side wall 12 toward generally flat side wall rim segment 24 to connect side wall 12 with rim segment 24.

(Doc. 136-22, pp.9-10; also see Doc. 136-23, pp.10-11; also see Doc. 136-11, pp. 17-18) (emphasis added)

22. The specification in the '675 CIP Application (and the 2003 Original Application) also states:

> Further, the present invention, **as previously described**, allows the flexible portion of the container to mold to a shape against which it is pressed and to allow large volumes of fluid to be passed from the container onto the object **by virtue of the generally flat rim segment** which may contain a rubber cushion to ease contact with

7

the head.

(Doc. 136-22, p.11)

23.    The text in each specification describing a "preferred embodiment" of the flexible panel pitcher invention "As shown in FIG. 1" discloses the "generally flat" limitations in claims 1 and 6.[2]

## Opinion No. 2

24.    The disclosures of Mr. McGinley's invention in the specification and drawings in each of the three applications are such that a person skilled in the art, reviewing the '675 CIP Application in February 2004, and the Original 2003 Application in February 2003, would know and understand that McGinley's flexible panel pitcher invention included both a "generally flat" sidewall section and a "generally flat" flexible panel portion of that section in 2003 and 2004 even though those limitations were not included in the claims of the '675 CIP Application or the Original 2003 Application.

## Opinion No. 3

25.    As shown in the prosecution history of the '178 CIP patent, the patent examiner imposed what is known as a "double patenting rejection."   That means that the examiner considered the claims of the '178 CIP Application to be drawn to the same invention as that of a predecessor application. In order to overcome the "double patenting rejection," McGinley added by amendment the "generally flat" limitations as independent claims 34 and 35 in February 2010, stating:

> Both new independent claims 34 and 35 recite the limitation of 'said sidewall having a portion thereof that defines a **generally flat sidewall section**".   Claim 34 further recites "a **generally flat** inward flexible panel forming a portion of said generally flat sidewall section" Claim 35 further recites, "an inwardly flexible panel forming a portion of said **generally flat** sidewall section".

---

[2]    See *supra*, n.1.

> This flat sidewall section that is flexible is a limitation is not present in the claims of U.S. Patent No. 7,441,675, but it is supported in drawing Figures 2 and 9. **Therefore no new matter has been entered into the case**. It is believed this new limitation avoids the "same invention" type double patenting identified by the Examiner.
>
> The flat sidewall section is a particular benefit to the user of the device as it avoids the obstruction presented by the nose of the person against whom the device is being applied.

(Doc. 136-11, p.89) (emphasis mine)

26.    Once the amendments were made, the patent examiner did not maintain the double-patenting objection. That fact and the lack of any continued objection by or comment from the examiner in response to McGinley's remarks, and specifically the remark that the "**flat sidewall section that is flexible is a limitation [added to claims 34 and 35] is supported in drawing Figures 2 and 9 … Therefore no new matter has been entered into the case,**" clearly suggests that the subject matter of the amendments, i.e., the "generally flat" sidewall section and flexible panel, did not appear for the first time in the 2008 application, but was instead supported in the earlier applications.

27.    My opinions as expressed in this affidavit are based on my personal review and knowledge of the materials identified above, and on my education, training and occupational experiences.

28.    I have stated each opinion to a reasonable degree of certainty as practitioner of intellectual property law examining such issues.

29.    The opinions stated in this affidavit are not the only opinions that I have been asked to give or may provide in this case.  I reserve the right to offer additional opinions concerning other issues in this case, including any issues that Defendants raise or seek to raise as a defense, affirmative defense or counterclaim.  I may also offer opinions in response to the

9

opinions of any experts that the defendants may seek to designate, as well as rebuttal opinions in response to any counter-opinions.

30.     I reserve the right to supplement and modify and expand these opinions after the defendants respond.

**[THIS SPACE INTENTIONALLY BLANK. SIGNATURE FOLLOWS]**

I, Q. Todd Dickinson, do hereby verify and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and correct and are based on my personal knowledge and my personal review and analysis of the referenced file wrappers and other documents.

Executed at Washington, D.C., this 31nd day of January 2019.

Q. Todd Dickinson

# EXHIBIT A

**Q. TODD DICKINSON**
**1401 I St. NW**
**Suite 800**
**Washington, DC 20005**
**tdickinson@polsinelli.com**

**202-626-8379 (W)**                                               **202-550-9157 (C)**

## PROFESSIONAL EXPERIENCE

**POLSINELLI, PC**                                                **2016-present**
*Shareholder and*                                          **(Merger with Novak, Druce)**
*Chair, Intellectual Property Public Policy Practice Group*

Practice includes:
- Advice and counsel a wide range of clients regarding intellectual property strategy and management
- Develop and implement intellectual property public policy strategies for clients.
- Counsel and represent clients on intellectual property matters before Congress and the Administration.
- Advise clients on intellectual property prosecution and litigation matters.
- Post-grant practice in the USPTO, including Inter Partes Reviews (IPR's) and Transitional Program for Covered Business Methods actions (CBM's).
- Providing policy and governmental affairs guidance on IP legislation and regulation, world-wide.
- Serve as an expert witnessing in Federal and state courts on IP matters.
- Serve as media commentator on IP matters.

**NOVAK DRUCE CONNOLLY BOVE + QUIGG**                          **2015-16**
*Partner and Chair, Client Select Strategic Services Group*

Lead firm function providing strategic planning and advice to a wide range of clients on all intellectual property matters.

Practice included:
- Advice and counsel a wide range of clients regarding intellectual property strategy and management
- Advise clients on intellectual property prosecution and litigation matters.
- Post-grant practice in the USPTO, including Inter Partes Reviews (IPR's) and Transitional Program for Covered Business Methods actions (CBM's).
- Providing policy and governmental affairs guidance on IP legislation and regulation, world-wide.
- Serve as an expert witnessing in Federal and state courts on of IP matters.

# EXHIBIT B

### Previous Testimony of Q. Todd Dickinson
### under Federal rule of Civil Procedure 26(a)(2)(B)(v)

1.   *MAG Aerospace, LLC v. B/E Aerospace, Inc.* (Case No. 2:13-cv-06089-SJO-FFM); USDC CDCA.
2.   *FTC v. AbbVie Inc.*; (Case No. 2:14-cv-5151); USDC EDPA.
3.   *Ashgari-Kamrani et al v. United Services Automobile Association, et al.* (Civ. Act. No. 2:15-cv-478); USDC EDVA.
4.   *ShuffleTech, et al. v. Scientific Games, et al.* (Civ. Act 1:15-cv-3702); USDC NDIL.
5.   *Intellisoft, Ltd. v. Acer America Corp., et al.* (Case No.: 1-14-CV-272381) CA Sup. Ct., Santa Clara County.
6.   *Telebrands Corp. v. Tennus Enterprises, LLC* (PGR2017-00015).

**AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION**          2008 - 2014
*Executive Director*

Chief Executive Officer of leading independent 15,000+ member professional association in the field of intellectual property law and public policy, reporting to  the Board of Directors. Responsibilities included overall strategic, programmatic, financial and operational management of the organization and leading all advocacy and outreach, including relations with Congress and the Administration and extensive amicus brief filings in Federal courts.  Primary representative to negotiations leading to the enactment of the America Invents Act.

**GENERAL ELECTRIC COMPANY**          2004 -2008
*Vice President and Chief Intellectual Property Counsel*

Corporate level officer with principal responsibility for management and strategic direction of the intellectual property assets of a top 5 Fortune 500® corporation, including advising CEO-level management on IP matters; management of 170+ attorney intellectual property organization, including intellectual property creation and maintenance, strategic counseling and strategic intellectual asset management in all areas of corporate research, including industrial, life science, financial services and media technologies; oversight of patent and trademark litigation, company-wide.

**HOWREY SIMON ARNOLD & WHITE**          2001- 2004

*Partner*
Washington, DC/San Francisco, CA

Co-chair of 100+ attorney Intellectual Property Practice Group in major, global law firm, focusing on IP, antitrust and commercial litigation.  Successfully opened, recruited and staffed new San Francisco office.  Lead organization of Maxiam, Inc., intellectual asset management subsidiary.

**U.S. DEPARTMENT OF COMMERCE**                                          **1997-2001**

**UNITED STATES PATENT AND TRADEMARK OFFICE**

***Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office***
Washington, DC
*Appointed by President and confirmed by U.S. Senate*

Chief Executive Officer of 6,500 person, $2 billion organization, responsible for all aspects of examination and issuance of U.S. patents and trademarks.  Principal policy advisor to the President on all intellectual property policy matters, including patents, copyrights, trademarks, and databases, foreign and domestic.  Co-Chair, National Intellectual Property Law Enforcement Coordination Council.

Prior Related Positions:

- Assistant Secretary of Commerce and Commissioner of Patents and Trademarks; 1999
- Acting Assistant Secretary of Commerce and Acting Commissioner of Patents and Trademarks; 1999
- Deputy Assistant Secretary of Commerce and Deputy Commissioner of Patents and Trademarks*;* 1998 *(also President Appointment, confirmed by U.S. Senate)*
- Senior Advisor to the Secretary of Commerce; 1997-1998

Major accomplishments include:

- Lead Administration effort leading to enactment of American Inventors Protection Act (AIPA)
- Successful drafting and implementation of AIPA rule package.
- Finalization of arrangements and groundbreaking for new 2 Million + sq. ft. Alexandria Campus.
- New examiner guidelines on both utility and written description, esp. regarding biotech/genomic inventions.
- Initiated and implemented Business Method Initiative following the State St. Bank decision, e.g. the "second pair of eyes" improving examination quality with minimal political fallout.
- Initiated revival of substantive patent harmonization discussions at WIPO.
- Lead US delegation in successful negotiation of Patent Law Treaty, Trademark Law Treaty and revised Hague Agreement on Industrial Designs.
- Maintained strong, positive relationships with stakeholder organizations.

**DECHERT PRICE & RHOADS**                                          **1995-1997**

*Counsel*

Philadelphia, PA

Member of Intellectual Property Group of major multi-office general practice firm. Primary responsibility for patent organization, with extensive responsibilities in patent and trademark prosecution, litigation, counseling, licensing and technology agreements, mergers and acquisitions.

**SUN COMPANY, INC. (SUNOCO, INC.)**                                **1990-1995**

*Chief Counsel, Intellectual Property and Technology*
Philadelphia, PA

Primary legal and management responsibility for all matters relating to intellectual property, technology transfer and licensing of Fortune 100 energy company having extensive technology interests and major brands.  Oversight and management of all IP litigation.  Primary general legal counsel to Sun R&D and Engineering Departments.

**CHEVRON CORPORATION**                                             **1981-1990**
*Counsel*
San Francisco, CA

Intellectual property drafting, prosecution and licensing, U.S. and foreign.

**BAXTER TRAVENOL LABORATORIES, INC.**                              **1979-1981**
*Patent Attorney*
Deerfield, IL

Intellectual property drafting and prosecution, U.S. and foreign.

**BLENKO, BUELL, ZIESENHEIM AND BECK**                              **1977-1979**
*Associate*
Pittsburgh, PA

Intellectual property drafting, prosecution and litigation.

## EDUCATION

University of Pittsburgh School of Law
Pittsburgh, PA
J.D., 1977

Allegheny College
Meadville, PA
B.S., 1974; Major: Chemistry
Alumni Award, Gold Citation, 2002

## BAR MEMBERSHIPS

Pennsylvania (1978); Illinois (1980); California (1982); District of Columbia (2002); United States Patent and Trademark Office (1977)

## PROFESSIONAL AFFILIATIONS AND ACTIVITIES

- American Intellectual Property Law Association
  Executive Director, 2008-14
- Intellectual Property Owners Association
   Executive Committee, 2006-7
- American Bar Association
  Section on Intellectual Property Law:
    Vice-Chair, 2008; Council Member 2004-8
- Licensing Executives Society Foundation
  Board of Directors, 2002-5
- Association of Corporate Patent Counsel;
  Member, 2004-8
  Emeritus Member, 2008- present
  Program Committee, 2018-present
- Patent Trial and Appeal Board (PTAB) Bar Association
  Board of Directors, 2016-present
- Federal Circuit Bar Association
- District of Columbia Bar Association
    Section on Intellectual Property
- IIPCC - USA Society Board of Advisors;  2018-

- U.S. Bar/European Patent Office (EPO) Liaison Council; 2008-present
- U.S. Bar/Japanese Patent Office (JPO) Liaison Council; 2008-present

- U.S. Bar/State Intellectual Property Office (SIPO - China) Liaison Council; 2010-present
- National Arbitration Forum, Panel of Arbitrators and Mediators
- BNA, *Patent, Trademark and Copyright Journal*, Board of Advisors; 2002-2016
- National Research Council of the National Academies of Science;
  Committee on IP Rights and Genomic and Protein Research, 2005-6
- Philadelphia Intellectual Property Law Association
  Board of Governors, 1994-6

- Giles Sutherland Rich Inn of Court; Washington, DC; Master
- Benjamin Franklin Inn of Court; Philadelphia, PA; Founding Master
- Q. Todd Dickinson Inn of Court; Honorary Member

- University of Pittsburgh School of Law
  Board of Visitors, 2006 - present
- George Washington University School of Law
  Advisory Board on Intellectual Property, 2000 - present
  Professorial Lecturer in Law
- U.C. Berkeley Center for Law & Technology,  IP Advisory Board, 2003-4

## MISCELLANEOUS

- "Intellectual Property Hall of Fame", *IP Hall of Fame Academy*, inducted 2012.
- "50 Most Influential People in Intellectual Property", 2004-2006, 2008, 2010,2013;
  *Managing Intellectual Property.*
- "Q. Todd Dickinson Intellectual Property Inn of Court", namesake, Pittsburgh, PA, 2012.
- "IAM 300: World's Leading IP Strategists", 2016
-  "500 Leading Lawyers in America"; *LawDragon Publications.*
- "Voices of the Bar IP",  Law360, 2015-16

## <u>SELECTED WRITINGS, SPEECHES AND TESTIMONY</u>

### <u>Reports, Articles, Books, Memoranda and Policy Statements</u>

### <u>2018</u>

"Supreme Court Upholds IPR's for Now, But Profoundly Reshapes the PTAB's Role.

https://www.law.com/therecorder/2018/04/30/supreme-court-upholds-iprs-for-now-but-profoundly-reshapes-the-ptabs-role/

### <u>2016</u>

"Finding a Middle Ground on Motions to Amend Claims in Inter Partes Review", with A.S. Baluch; *Intellectual Asset Management Blog*, May 10, 2016

### <u>2014</u>

The National Academies, Board on Science, Technology and Economic Policy (STEP) Committee on Science, Technology, and Law, Policy and Global Affairs Division; Panel on Effect of Patent Assertion Entities on Research and Public Policy

### <u>2013</u>

"PBS Newshour", June 13, 2013; Comment on the Supreme Court decision in *Association for Molecular Pathology, et. al. v. Myriad Genetics.*

"PBS Newshour", May 13, 2013; Comment on the Supreme Court decision in *Bowman v. Monsanto.*

### <u>2008</u>

<u>Pitt Law Magazine</u>, Fall 2008, *Patents, Progress and Unforeseen Consequences*

### <u>2003</u>

The National Academies, Board on Science, Technology and Economic Policy (STEP); Joint Working Group Study and Report: "Genomics, Proteomics, and Intellectual Property Rights

### <u>2001</u>

<u>Cardoza Arts & Entertainment Law Journal</u>, 2001, Volume 19, Number 3, *The Eighth Annual Hebert Tenzer Distinguished Lecture in Intellectual Property 2000, E-Commerce, Business Method Patents and the USPTO: An Old Debate for a New Economy*

Global Counsel, July/August 2001, *IP Management:  A Game of Strategy for Global Players*

American University Law Review, Vol. 51, Number 3, October 19, 2001, *The Human Genome Project, DNA Science and the Law:  The American Legal System's Response to Breakthroughs in Genetic Science, Panel Three:  Privacy:  Genetic Profiling and Discrimination*

**2000**

Science & Technology, 2000, *Reconciling Research and the Patent System*


**Testimony and Official Statements**

**2013**

Testimony before the U.S. Senate Judiciary Committee; "Protecting Small Businesses and Promoting Innovation by Limiting Patent Troll Abuse", Dec. 13, 2013.

**2006**

Testimony before U.S. House Judiciary Committee, Subcommittee on Courts, the Internet and Intellectual Property; "Patent Harmonization", April 27, 2006.

**2005**

Testimony before the Senate Committee on the Judiciary, Subcommittee on Intellectual Property:"Perspectives on Patents: Harmonization and Other Matters", July 26, 2005;

**2002**

Federal Trade Commission and U.S. Department of Justice Hearing Statement on Competition and Intellectual Property Policy in the Knowledge-Based Economy;  February 6, 2002

FTC/DOJ Roundtables on Competition and Intellectual Property Law and Policy in the Knowledge-Based Economy;  October 25, 2002

**2000**

Testimony on PTO Operations and Budget before House Judiciary Committee, Subcommittee On Courts and Intellectual Property;  March 9, 2000

Testimony on Genomic Patents before the House Judiciary Subcommittee on Courts and Intellectual Property;  July 13, 2000

Testimony on Internet Piracy's Impact on the Music and Software Industries before the House Subcommittee on International Economic Policy and Trade;  July 19, 2000

Testimony on State Sovereign Immunity and its Effects on Intellectual Property Enforcement Before the House Judiciary Subcommittee on Courts and Intellectual Property;  July 27, 2000

Testimony before the Senate Committee on the Judiciary, September 29, 1999

**1999**

Testimony on Stem Cell Research before the Senate Appropriations Committee, Subcommittee on Labor, Health and Human Services, Education and Related Agencies;  January 12, 1999

Testimony on the American Inventors Protection Act, and H.R. 1225 before the House Committee on the Judiciary, Subcommittee on Courts and Intellectual Property;  March 25, 1999

Hearing on the Nomination of Q. Todd Dickinson before the Senate Committee on the Judiciary; September 29, 1999

Testimony on International Intellectual Property Enforcement before the US House of Representatives Subcommittee on International Economic Policy and Trade, Committee on International Relations; October 13, 1999

**Speeches and Panels – Available on Request**

**Interviews**

**2011-2018**

Being collated.  Available on request.

**2011**

Internet Retailer, January 1, 2011, *Defusing the Patent Bomb*

Bloomberg News, January 27, 2011, *Microsoft's Gutierrez Pledges Suits, Licenses to Defend Patents*

Bloomberg News, February 18, 2011, *U.S. Patents Held Hostage by Skimming Lawmakers in Budget Fight*

National Journal, February 24, 2011

Bloomberg News, April 25, 2011, *Patent Office Freezes Hiring, Expansion on Budget Limits*

**2010**

IP Watchdog, Inc., September 8, 2010, *Former USPTO Director Todd Dickinson*

IP Watchdog, Inc., September 12, 2010, *Patent Reform is Not Dead*

IP Watchdog, Inc., September 16, 2010, *Todd Dickinson Interview Part 3:  Fee Diversion, Kappos,
3 Track*

IP Watchdog, Inc., October 21, 2010, *AIPLA Meeting:  David Kappos Q&A with Q. Todd Dickinson*


**2009**

iam, 2009, *Blog – Dickinson Relishing his AIPLA Role*

Reuters, January 22, 2009, *IP Counsel Café Announces Conference Keynotes by Lanny Davis, Daniel McCurdy and Q. Todd Dickinson on Patent Strategy and More*

The National Law Journal, January 26, 2009, *Options Dwindle for Foes of State Immunity*

Bio, April 16, 2009, *Dickinson and Figg on Patent Reform*


**2008**

The National Law Journal, November 6, 2008, *Legal Stars of the New Administration*


**2006**

New York Law School Press Release, October 20, 2006, *GE to Put its "Imagination at Work" for Patent Reform by Becoming Lead Sponsor of Community Patent Review*


**2002**

Legal Times IP, June 17, 2002, *One Singular System-Harmonization*

Managing Intellectual Property, September 2002, Cover Story, *Death pangs of the doctrine of equivalents*

The Scientist – Magazine of the Life Sciences, December 4, 2002

**2001**

Managing Intellectual Property, November 2001, Issue 114, Cover Story, *Avoid the Licensing Trap 10 Tips for Drafting Technology Agreements*

**2000**

Forbes Magazine, 2000, *Patently Absurd*

Business of Government Hour, April 25, 2000

O'Reilly Network, The Pizzo Files, May 24, 2000, *Who's Really Being Protected (Part 1)*

O'Reilly Network, The Pizzo Files, May 24, 2000, *Who's Really Being Protected (Part 2)*

O'Reilly Network, October 2000, *Internet Society Panel on Business Method Patents*

The New York Times, December 4, 2000, *Patents; A New Law Removes Some Secrecy from the Applications*

**1999**

John Marshal Law School Magazine, 1999, *Intellectual Property Growth spurs Innovation at Federal Agencies*

USPTO News, June 23, 1999, *Commissioner of Patents to Visit Walnut Creek Camp Invention*

USPTO News, June 24, 1999, *Patent Commissioner to Chair San Francisco Hearings on Software Patent Examination*

USPTO News, July 6, 1999, *President Clinton Nominates Todd Dickinson to Top Post at U.S. Patent and Trademark Office*

USPTO News, July 28, 1999, *President Clinton Nominates Anne Chasser as Assistant Commissioner for Trademarks at U.S. Department of Commerce*

IP Worldwide, September 1999, Cover Story, *Can Q. Todd Dickinson Tame the USPTO?*

USPTO News, October 14, 1999, *Patent Commissioner to Participate in the Yankee Invention Exposition*

Bloomberg Businessweek, November 22, 1999, *Patent Reform Pending, A New Bill Has Small Inventors on the Defensive*

The Washington Post, The Federal Page, December 10, 1999 *For the Patent Office, Time to Reinvent Itself*

USPTO News, December 21, 1999, *Patent and Trademark Office Orders Reexamination of Y2K Fix Patent*