**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

MICHAEL L. McGINLEY, et al.,

      Plaintiffs/Counsetrclaim Defendants

vs.

LUV N' CARE, LTD., et al.

      Defendants/Counterclaim Plaintiffs.

Case No. 3:17-CV-00821 LEAD

Judge Terry A. Doughty

Magistrate Judge Karen L. Hayes

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE PERMITTING
PLAINTIFFS TO CALL EXPERT WITNESS TO TESTIFY AT TRIAL
<u>VIA VIDEO TELECONFERENCING</u>**

Plaintiffs are asking the Court to permit them to call their damages expert, Kurt Krueger, Ph.D., to testify at trial via video teleconferencing instead of presenting Dr. Krueger's testimony by videotape. Plaintiffs submit that good cause and compelling circumstances exist for granting Plaintiffs leave with appropriate safeguards. In support of this motion, Plaintiffs show the following:

1.     The issue presented by this motion is not whether Plaintiffs' damages expert, Kurt Krueger, Ph.D. will testify in person at trial. That has already been decided.[1] Dr. Krueger cannot appear in person.

2.     The issue, instead, is whether Plaintiffs may call Dr. Krueger "live" at trial and present his testimony from Kansas City, Missouri via **video teleconferencing** or whether Plaintiffs must videotape Dr. Krueger's testimony in advance of trial and play a compilation of the **videotaped depositions**.

---

[1]    The Court has already held that "either party may depose an expert witness to preserve his or her testimony for trial if the deposition is taken before … April 1, 2019…" (Doc. 175)

3. Plaintiffs suggest that the contemporaneous transmission and presentation of Dr. Krueger's expert opinions at trial by video teleconferencing will be far better than presenting the testimony by videotape playback. Testimony "through live video in open court, under oath, and [when] defendants will have the opportunity to cross-examine the witness ... [gives the court] ample opportunity to assess the credibility of [the witness] ... [and] the court will have a greater opportunity through the use of live video transmission to assess the credibility of the witness than through the use of deposition testimony." *F.T.C. v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000); *see Sallenger v. City of Springfield*, 2008 WL 2705442, at \*1 (C.D. Ill. July 9, 2008) ("Video conferencing allows the jury to view the witness as he testifies, and thus, it satisfies many of the goals of in-person testimony, while avoiding the shortcomings that accompany the reading of deposition testimony at trial").

4. The Court is authorized by the Rules of Civil Procedure to permit any witness to testify at trial by "contemporaneous transmission" from a different location. Rule 43(a), Fed.R.Civ.P. provides:

> For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a).

5. Plaintiffs submit that the criteria of Rule 43(a) are met given Dr. Krueger's circumstances.

6. Plaintiffs have designated Dr. Krueger as an individual who will be called at trial to offer expert opinions and calculations in support of Plaintiffs' claims for damages under 35 U.S.C. § 284. The Court and jury can rely on Dr. Krueger's testimony in determining, among other things, lost profits and the amount of a minimum but reasonable royalty for Defendants' use of McGinley's invention.

7.     Plaintiffs initially contacted Dr. Krueger in this case in or around April 2016, shortly after they commenced this patent infringement lawsuit against Defendant Luv n' care in Missouri. It made sense for Plaintiffs to do so since Dr. Krueger was a testifying expert in Plaintiffs' lawsuit against Munchkin, Inc., *McGinley v. Munchkin, Inc.*, Case No. 09-0257-CV-W-GAF (W.D.Mo.), Dr. Krueger was thus already familiar with Plaintiffs, the Shampoo Rinse Cup and the relevant market.[2]

8.     At the time Plaintiffs filed suit, venue was proper in the Western District of Missouri and Plaintiffs believed they would be able to call Dr. Krueger in person at trial. Only with the Supreme Court's decision in *TC Heartland LLC v. Kraft Food Brands Grp. LLC*, 137 S.Ct. 1514 (2017), which upended more than 27 years of precedent, did Plaintiffs' expectations change. Based on *TC Heartland*, the parties' cases, which were then pending in Missouri, were transferred to this Court.[3]  Plaintiffs note this development not to contest the propriety or fairness of *TC Heartland* as applied to small businesses and individual inventor-patentees, but simply to note that Plaintiffs reasonably believed that Dr. Krueger would be able to testify in person at trial in Kansas City. The question for Plaintiffs now is how best to present Dr. Krueger's testimony at the trial in Monroe.

9.     Dr. Krueger's opinions as to Plaintiffs' damages are an important part of Plaintiffs'

---

[2]  *See McGinley v. Munchkin, Inc.*, No. 09-0257-CV-W-GAF, 2010 WL 1268053 (W.D. Mo. Apr. 2, 2010), in which the district court construed U.S. Patent No. 7,441,675 (the "'675 patent"), which was the first of the four U.S. Patents that the Patent Office has to date awarded McGinley for his flexible panel pitcher invention. The '675 patent issued from the "parent" application to the CIP application resulting in the patent now in suit, the '178 patent. The Munchkin lawsuit was voluntarily dismissed in September 2010, just two months before LNC began creating CAD drawings for its rinse cup product at issue here.

[3]  These consolidated cases were originally filed as two separate civil lawsuits.  Plaintiffs filed the first lawsuit in Missouri as **Case No. 4:16-cv-00283**. Two months later, Defendant Luv n' care, Ltd. filed its counter-suit in this Court as **Case No. 3:16-cv-00641**, but the counter-suit was transferred to Missouri and consolidated with Plaintiffs' original suit in May 2017. (Doc. 55) In June 2017, the consolidated cases were transferred to this Court based on *TC Heartland*.

case.  Dr. Krueger is familiar with McGinley's' flexible panel pitcher invention, with Plaintiffs' business, and with the accused device – the Nuby Tear Free Rinse Pail. Dr. Krueger is also familiar now with Defendants' financial condition and with Defendants' business model and the costing, sales and the margins of its products. Plaintiffs suggest that at this point, the Court and jury should hear Dr. Krueger's testimony and opinions with regard to damages, and his rebuttal of the counter-opinions of Joshua Lynn, Defendants' expert, "live" via video teleconferencing instead of through videotape.

10.     Of course, Plaintiffs would prefer to call Dr. Krueger in person at trial instead of by video teleconferencing or videotape, but they cannot do so. Dr. Krueger suffers from physical disabilities necessitating his use of bilateral AFO's (Ankle-Foot Orthotics) and a walker for ambulation. Dr. Krueger's physical disabilities are such that he is not able to travel overnight, as he requires daily therapies administered nightly in a hospital-bed environment at his home in the Kansas City Area. The distance from his home to the courthouse in Monroe prevents Dr. Krueger from traveling to and from the Kansas City Area to Monroe during the same waking day, given the nature of his disabilities.[4]

11.     Accordingly, the question for the Court is whether to allow Dr. Krueger's testimony to be presented at trial via a set of edited videotaped depositions, or "live" via video conferencing. Plaintiffs respectfully suggest that video-conferencing is more preferable than videotape. *See, e.g., In re Actos (Pioglitazone) Prod. Liab. Litig.*, No. 12-CV-00064, 2014 WL 107153, at *8 (W.D. La. Jan. 8, 2014) (as is true with in-person testimony, testimony via contemporaneous transmission permits the fact-finder to "'see' the live witness along with 'his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration'")(quoting *In re Vioxx*

---

[4]   If the Court requires, Dr. Krueger will submit a declaration or affidavit describing the specific nature of his disabilities along with a letter from his primary care physician.

*Prods. Liab. Litig.,* 439 F. Supp. 2d 640, 644 (E.D. La. 2006)).

12.     Although Dr. Krueger can provide his expert opinions via a videotaped "trial" deposition, Plaintiffs believe that the technology currently available to litigants in federal court is such that the testimony of many witnesses, and certainly that of an expert witness in a civil patent infringement case like this, is far better presented to the Court and jury by "live" video feed instead of a static videotape.  Allowing Dr. Krueger to testify "live" at trial via video teleconferencing is readily accomplished and a far better option for all concerned, including the witness, the parties, the jury and the Court. A contemporaneous transmission via "live feed" will be far more engaging than playing a set of heavily-edited videotapes.  This is especially true in this case since the testimony to be offered via video teleconferencing is that of Plaintiffs' damages expert, subject to his written reports.  Dr. Krueger's opinions will be disclosed before trial to Defendants and the exhibits he will utilize to explain his calculations can be readily presented and explained live via electronic means.

13.     Notably, Defendants are taking Dr. Krueger's videotaped deposition in Kansas City on March 26, 2019. This will be a "discovery" deposition.  Hence, if Plaintiffs must present Dr. Krueger's testimony at trial by videotaped deposition, Plaintiffs will have to conduct a second videotaped "trial" deposition following Defendants' discovery deposition, and Defendants will have to conduct cross-examination without the benefit of the transcript from their prior deposition. Moreover, even after those two videotaped depositions are complete, Dr. Krueger will likely have to supplement his current set of calculations and opinions regarding the amount of damages shortly before trial based on Defendants' 2019 financial performance and product sales. Defendants have not yet provided Plaintiffs with any sales or financial data for its products for 2019. Video teleconferencing will thus conserve judicial resources and the parties' expenses by obviating the need and cost of what would likely be at least three videotaped depositions to preserve and present

Dr. Krueger's testimony.

14.    In addition, allowing Dr. Krueger to testify "live" at trial via video teleconferencing more effectively achieves the point and purpose of the rule requiring witness testimony in open court. The available technology allows the jury to view and consider Dr. Krueger's testimony "live" as opposed to watching an edited, videotaped deposition. *In re Actos*, 2014 WL 107153, at *8.[5]

15.    Plaintiffs submit that Dr. Krueger's inability to travel to Monroe from his home and appear in person at trial, given the medical and geographic limitations arising from his physical disabilities, is itself "good cause" within the meaning of Rule 43(a). The Court may grant this motion on that ground alone. *See, e.g., F.T.C.*, 197 F.R.D. at 2 (good cause was shown where requiring witness to travel from Oklahoma to Washington, D.C. that justified permitting witness to testify live through contemporaneous transmission); *Humbert v. O'Malley*, 303 F.R.D. 461, 464 (D. Md. 2014) (good cause and compelling circumstances show when witness suffered from PTSD and travel would inconvenience her ability to care for her child); *Sallenger, supra*, 2008 WL 2705442, at *1 (good cause shown when witness would have to travel from New Mexico to Illinois); *Timber v. U.S.*, 93 Fed.Cl. 498 (2010) ("'geographical distance between Oregon and Washington, D.C. represents a 'compelling circumstance' justifying the use of contemporaneous transmission.")

16.    Defendants will not be unfairly prejudiced if the Court permits Plaintiffs to present

---

[5]    "[C]ontemporaneous transmission of live witness testimony will better allow the jury to more realistically "see" the live witness along with "his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration," without editing or the unavoidable esthetic distance created by a video deposition and, thus, more fully and better satisfy the goals of live, in-person testimony, while avoiding the short-comings of either written or video deposition testimony perhaps recorded weeks or months earlier, prior to whatever developments might have occurred between the time the deposition was recorded and the time the testimony by video deposition is presented at trial." *Id.*

Dr. Krueger's testimony via video teleconferencing instead of by videotaped deposition. This is not a criminal case; nor is Dr. Krueger an officer, manager, director or testifying designee of any of the businesses that are parties to this lawsuit. Dr. Krueger also is not an eye-witness to any physical occurrence. Given the nature and substance of the testimony he will give, a contemporaneous transmission of Dr. Krueger's testimony will be far superior to a videotaped playback. This is true for ***both*** sides of the case. A contemporaneous transmission of the testimony will allow for a better and more developed examination of the witness on direct and will afford Defendants a fluid cross-examination. *F.T.C.,* 197 F.R.D. at 2 ("there is no practical difference between live testimony and contemporaneous video transmission"); *cf., Warner v. Cate*, No. 1:12-CV-1146-LJO-MJS, 2015 WL 4645019, at *2 (E.D. Cal. Aug. 4, 2015) ("The use of live video transmission should not diminish Plaintiff's ability to cross-examine [the witness] or the Court's ability to assess his credibility"); *Sallenger*, 2008 WL 2705442, at *1 ("Video conferencing allows the jury to view the witness as he testifies, and thus, it satisfies many of the goals of in-person testimony, while avoiding the shortcomings that accompany the reading of deposition testimony at trial").

17. In this regard, the Court is authorized to adopt appropriate "safeguards" to ensure that if a witness testifies via video teleconference, he or she will do so under oath and that protects against influence by persons present with the witness. In assessing the safeguards of such contemporaneous transmissions, the courts focus on whether the testimony was made in open court, under oath, and whether the opportunity for cross examination was available. In this regard, Plaintiffs propose the following safeguards:

      a. The witness will testify from a secure video conferencing facility in a federal courthouse or an alternate transmitting location provided the following safeguards and requirements are met.

b.  The witness will be visible to the jury at all times while testifying via the witness screen.

c.  The witness will hear all objections unless the Court otherwise instruct.

d.  Whenever feasible, documents or evidence will be shown to the witness electronically; if not feasible, documents will be handed to the witness by the court reporter at the instruction of the Court.

e.  Other than a videographer, spectators and counsel will not be allowed in the room where the witness testifies.

f.  The videographer present will certify that no counsel were present in the room while the witness was testifying and confirm the hard copy versions of exhibits used, if applicable.

18.  Today, federal courts are equipped with video teleconferencing. The Court, respectfully, should make use of this resource. Plaintiffs have confirmed with Mr. Brent Norris, Electronic Courtroom Administrator for the United States District Court for the Western District of Louisiana, that this Court is equipped and can readily accommodate video teleconferencing from any location having the capability, including a court reporter's office.  Appino & Biggs, a court reporting firm at 6420 W. 95th Street, Suite 101, in Overland Park, KS, provides live video teleconferencing services and is equipped to host a video teleconference for the courthouse in Monroe.  (See Exhibit 1) Plaintiffs suggest that allowing Dr. Krueger to appear before a certified court reporter at Appino & Biggs subject to the stated safeguards will satisfy the requirements of Rule 43(a).  In the alternative, Plaintiffs submit that Dr. Krueger can appear live and testify via video teleconference from W.D. Mo Courthouse, 400 E. 9th Street, Kansas City, Missouri.

19.  There is nothing about Dr. Krueger's opinions that would make the presentation of his opinions in this case by *videotaped deposition* more preferable than video teleconferencing. In fact, it would be difficult to find a situation where a videotaped deposition can be credibly viewed as a better alternative to video conferencing, when safeguards like those that Plaintiffs are

proposing are put in place.[6]

20.      Plaintiffs will not gain any tactical advantage if Dr. Krueger testifies live via video teleconferencing.  There is no practical difference between live testimony and contemporaneous video transmission.  Defendants, and the Court, will be able to "see the live witness along with 'his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration.'" *In re Actos,* 2014 WL 107153, at *8. Defendants will be able to cross-examine Dr. Krueger just as if he was providing testimony in person.

21.      Defendants already know that Dr. Krueger will not be appearing live at trial.  On January 9, 2019, the undersigned formally advised defense counsel by email that Dr. Krueger could not appear in person and that Plaintiffs would seek to present Dr. Krueger's trial testimony live via "close circuit" (i.e., video teleconferencing) or videotaped deposition. Defendants did not object.  The parties thereafter jointly presented the issue of taking the trial depositions of experts in their *Joint Motion to Amend the Scheduling Order* (Doc. 163), and again in Plaintiffs' *Unopposed Motion to Amend Scheduling Order* (Doc. 174).  The Court granted the motions in this regard. (Doc. 175)

22.      When Defendants recently advised the undersigned that they were going to depose Dr. Krueger on March 26, 2019, Plaintiffs decided to seek leave to present Dr. Krueger's trial testimony via video teleconferencing – given what it will likely cost to take and edit what Plaintiffs expect to be three videotaped depositions for trial. Plaintiffs advised defense counsel and

---

[6]   *See, e.g.,* F.T.C., 197 F.R.D. at 2 ("I am mystified as to why anyone would think that forcing a person to travel across the continent is reasonable when his testimony can be secured by means which are a) equivalent to his presence in court and b) preferable to reading his deposition into evidence. To prefer live testimony over testimony by contemporaneous video transmission is to prefer irrationally one means of securing the witness's testimony which is exactly equal to the other"); *Warner*, 2015 WL 4645019, at *1 ("Because a witness testifying by video is observed directly with little, if any, delay in transmission, however, courts have found that video testimony can sufficiently enable cross-examination and credibility determinations, as well as preserve the overall integrity of the proceedings").

Defendants objected.  Defendants, through Joe D. Guerrriero, reaffirmed their objection on March 6, 2019.

23.	Plaintiffs are filing this motion in good faith, based on Dr. Krueger's physical disabilities and resultant inability to travel to Monroe, and to conserve judicial resources, and not for any dilatory purpose.

WHEREFORE, Plaintiffs respectfully request the Court to find that good cause in compelling circumstances and appropriate safeguards exist and enter an Order granting Plaintiffs leave to present the testimony of Dr. Kurt Krueger, Plaintiffs' damages expert, at trial via video teleconferencing, thereby obviating the cost and expense of multiple videotaped depositions to preserve and present Dr. Krueger's testimony at trial, and awarding Plaintiffs such other relief as the Court deems just and proper.

Dated:  March 7, 2019

Respectfully submitted,

WALTERS RENWICK RICHARDS
SKEENS & VAUGHAN, P.C.

By   */s/ Kip D. Richards*
	Kip D. Richards – Mo. Bar 39743
	Michael B. Sichter – Mo. Bar 65154
	2500 City Center Square
	1100 Main Street
	Kansas City, MO 64196
	(816) 421-6620
	(816) 421-4747 (Facsimile)
	krichards@wrrsvlaw.com
	msichter@wrrsvlaw.com

HUDSON, POTTS & BERNSTEIN, L.L.P.
P.O. Drawer 3008
Monroe, Louisiana 71210-3008
(318) 388-4400

By:  s/*J.P. Christiansen*
	Jan P. Christiansen
	Bar Roll No. 20142

ATTORNEYS FOR MICHAEL L. MCGINLEY AND S.C. PRODUCTS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Louisiana, Monroe Division, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons this 7th day of March 2019.

/s/ Kip D. Richards

11