UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MICHAEL L. McGINLEY, ET AL.** | **CASE NO. 3:17-CV-00821** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LUV N' CARE, LTD., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion for Summary Judgment [Doc. No. 158] filed by Luv n' care, Ltd. ("LNC"), Admar International, Inc. ("Admar"), BuyBabyDirect, LLC ("BBD"), Bayou Graphics and Design, LLC ("BGD"), Control Services, Inc. ("CS"), and HHHII, LLC ("HHHII") (collectively "Defendants"). Plaintiffs Michael L. McGinley and S C Products, Inc., (collectively "Plaintiffs") have filed an Opposition [Doc. No. 180], and Defendants have filed a Reply [Doc. No. 186]. The matter is fully briefed.

Also pending before the Court is Plaintiffs' Cross-motion for Summary Judgment [Doc. No. 181]. Defendants have filed an Opposition [Doc. No. 191], and Plaintiffs have filed a Reply [Doc. No. 195]. The matter is fully briefed.

The Court is now prepared to rule on these motions.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Defendants move for summary judgment that the claims in United States Patent No. 8,636,178 ("the '178 Patent"), are invalid because the patentee failed to comply with the "on-sale bar" of section 35 U.S.C. § 102(b). [Doc. No. 158]. Plaintiffs move for summary judgment that the effective filing date of the claims of the '178 Patent is February 4, 2003. [Doc. No. 181]. Plaintiffs contend that this effective filing date is before they first offered to sell and began selling an embodiment of the flexible panel pitcher in 2004. *Id.*

1

The claimed invention of the '178 Patent is directed to a pitcher that includes a generally flat sidewall section and a generally flat flexible panel forming a portion of the generally flat sidewall section. The '178 Patent was based on a continuation-in-part ("CIP") application Serial No. 12/255,797 ("the '178 Application"), filed on October 22, 2008. [Doc. No. 136-11]. The '178 Application was a CIP of Application Serial No. 10/770,325 ("the '675 Application") filed on February 2, 2004. [Doc. No. 136-22]. The '675 Application issued as United States Patent No. 7,441,675 (the '675 Patent) with all claims directed to a flexible panel pitcher or container with a divider. The '675 Application was a CIP of Application Serial No. 10/357,651 filed on February 4, 2003 ("the Original Application"). [Doc. No. 158-6]. After the '675 Application was filed and assigned a serial number, the patentee abandoned the Original Application. [Doc. 158-6 at 48].

The application included with the Original Application contained four drawings:



[Doc. No. 158-6 at 22-23].[1]  The application included with the '675 Application contained six drawings:





[Doc. No. 158-5 at 20-22].  The application included with the '178 Application contained the six

---

[1] Citations to the parties' filings are to the filing's number in the docket (Doc. No.) and pin cites are to the page numbers assigned through ECF.

drawings disclosed in the Original Application and the '675 Application. The '178 Application also added Figures 7, 8 and 9, which were not previously included in either the '675 Application or the Original Application.



[Doc. No. 158-4 at 2-6]. Figures 7, 8 and 9 of the '178 Application disclose a container with a flat sidewall and a flat flexible panel. On February 26, 2010, the patentee through his patent counsel filed Claims 34 and 35 in the '178 Application:

> Claim 34 (New) in part provided:
>
> a generally rigid continuous sidewall terminating in an upper sidewall end and a lower sidewall end and defining an inward space bounded by said continuous sidewall, <u>said continuous sidewall having a portion thereof that defines a generally flat sidewall section</u>, …
>
> <u>a generally flat inwardly flexible panel forming a portion of said generally flat sidewall section</u> and extending to form-at least a portion of said upper sidewall end, said flexible panel having a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end.
>
> Claim 35 (New) in part provided:
>
> a generally rigid continuous sidewall having an upper sidewall end and a lower sidewall end and defining an inward space bounded by said continuous sidewall, <u>said continuous sidewall having a portion thereof that defines a generally flat</u>

>    sidewall section, …
>
>    an inwardly flexible panel forming a portion of said generally flat sidewall section and connecting with said inwardly flexible rim portion, said inwardly flexible panel having a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end.

[Doc. No. 158-4 at 92-93]. When the new independent claims 34 and 35 were added to the '178 Application, the patentee's counsel stated the following:

>    Both new independent claims 34 and 35 recite the limitation of "said sidewall having a portion thereof that defines a generally flat sidewall section". Claim 34 further recites "a generally flat inward flexible panel forming a portion of said generally flat sidewall section" Claim 35 further recites, "an inwardly flexible panel forming a portion of said generally flat sidewall section".
>
>    This flat sidewall section that is flexible is a limitation [and] is not present in the claims of U.S. Patent No. 7,441,675, but it is supported in drawing Figures 2 and 9. Therefore no new matter has been entered into the case. It is believed this new limitation avoids the "same invention" type double patenting identified by the Examiner.
>
>    The flat sidewall section is a particular benefit to the user of the device as it avoids the obstruction presented by the nose of the person against whom the device is being applied.

[Doc. No. 158-4 at 86] (emphasis in original). On January 28, 2014, the United States Patent and Trademark Office ("PTO") issued the '178 Patent. Plaintiffs concede that their Shampoo Rinse Cup embodies the invention of the '178 Patent, and that the Shampoo Rinse Cup was first offered for sale and sold in the United States by July 2004. [Doc. No. 180-1 at ¶ 16].

## II.  LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248).

The summary judgment standard on a patent claim is the same as the standard for other claims. *Avia Group Int'l v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1560-61 (Fed. Cir. 1988). A patent is, however, presumed to be valid. 35 U.S.C. § 282. As a result, "the burden of proving invalidity [is] on the attacker." *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1536 (Fed. 1984). Consequently, on summary judgment, Defendants' "burden of demonstrating an entitlement to judgment as a matter of law includes the burden of overcoming the presumption of patent validity

found in 35 U.S.C. § 282." *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1022 (Fed. Cir. 1985), overruled on other grounds by *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-61 (Fed. Cir. 1999). "The standard of proof of facts necessary to support a legal conclusion of invalidity is 'clear and convincing.'" *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1537 (Fed. Cir. 1984) (quoting *R.R. Dynamics, Inc. v. Stucki Co.*, 727 F.2d 1506, 1516 (Fed. Cir. 1984). As a result, in order to be entitled to summary judgment, Defendants must demonstrate that there is no genuine issue of material fact regarding the patent's validity and that clear and convincing evidence demonstrates that the patent is invalid.

### B. Analysis

The "on-sale bar" rule is set forth in the portion of section 102(b) that provides that a person shall not be entitled to a patent if the invention was "on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (pre-AIA)[2]. One of the primary purposes of section 102(b) is to preclude commercial exploitation of an invention which has the effect of expanding the period of exclusive rights granted by the statute. *General Electric Co. v. United States*, 228 Ct. Cl. 192, 654 F.2d 55, 61 (1981). The determination of whether an invention is placed on sale is a question of law. *UMC Elecs. Co. v. United States*, 816 F.2d 647, 657 (Fed. Cir. 1987), cert. denied, 108 S. Ct. 748 (1988). This question of law may properly be resolved in a summary judgment proceeding. *E.g., Barmag Barmer Machinenfabrik AG v. Murata Mach. Ltd.*, 731 F.2d 831 (Fed. Cir. 1984). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S.

---

[2] Because the application resulting in the '178 Patent was filed before September 16, 2012, the effective date of the America Invents Act ("AIA"), the Court refers to the pre-AIA version of § 102.

574, 586 (1986).

The Supreme Court in *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67-68 (1998), established a two-part test for determining when the on-sale bar of section 102(b) operates to invalidate a patent. First, the product whose sale is claimed to be invalidating must have been "the subject of a commercial offer for sale" more than one year prior to the date of the patent application. *Id.* at 67. In this regard, the date one year prior to the patent application is referred to as the "critical date" for purposes of assessing the validity of the patent. *Id.* at 57-58.

Second, the invention embodied in the invalidating product must have been "ready for patenting" before the critical date. *Id.* at 67. A party can satisfy the second part of the *Pfaff* test with "proof of reduction to practice before the critical date" or with proof that before the critical date the inventor of the invalidating product "had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67-68. Although an invention need not be ready for patenting before the commercial offer for sale, there can be no offer for sale of an invention "until such time as the invention is conceived." *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1289 (Fed. Cir. 2011). In order for a patent claim to be anticipated under the on-sale bar, "each and every limitation" of the claim must be found "either expressly or inherently in the device or process that was sold." *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1376 (Fed. Cir. 2003) (internal quotation marks omitted).

Plaintiffs concede that their Shampoo Rinse Cup embodies the invention of the '178 Patent, and that the Shampoo Rinse Cup was first offered for sale and sold in the United States by July 2004. [Doc. No. 180-1 at ¶ 16]. Thus, the outcome of the parties' motions rest on the determination of the effective filing date for the asserted claims in the '178 Patent. For the following reasons, the

Court finds that claims 1 and 6 of the '178 Patent are entitled to the February 4, 2003 filing date of the Original Application. Accordingly, claims 1 and 6 of the '178 Patent are not invalid for failing to comply with the on-sale bar of section 35 U.S.C. § 102(b).

The PTO defines a continuation-in-part application as follows:

> A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and *adding matter not disclosed in the said earlier nonprovisional application*. A continuation-in-part application may only be filed under 37 CFR 1.53(b). The continuation-in-part application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 120 or 365(c).

Manual of Patent Examining Procedure § 201.08 (emphasis added). As discussed above, the '178 Patent issued from the '178 Application, which was a CIP from the '675 Application, which was in turn a CIP from the Original Application. In other words, the '675 Application and the Original Application are the "parent" and "grandparent" applications to the '178 Application, each of which have different filing dates. Specifically, the '178 Application was filed on October 28, 2008, the '675 Application was filed on February 2, 2004, and the Original Application was filed on February 4, 2003. The Court now must determine which of these filing date is the proper effective filing date for the asserted claims of the '178 Patent for purposes of the on-sale bar.

By definition, "[a] CIP application contains subject matter from a prior application and may also contain additional matter not disclosed in the prior application." *Augustine Med., Inc. v. Gaymar Indus., Inc*. 181 F.3d 1291, 1302 (Fed. Cir. 1999). Different claims of a CIP may receive different effective filing dates. *Id*. "Subject matter that arises for the first time in the CIP application does not receive the benefit of the filing date of the parent application." *Id*. "Claims containing any matter introduced in the CIP are accorded the filing date of the CIP application." *Waldermar Link v. Osteonics Corp*., 32 F.3d 556, 558 (Fed. Cir. 1994). The effective filing date for the "subject matter claimed in the CIP application depends on when that subject matter first appeared in the

patent disclosure." *Augustine Med., Inc.,* 181 F.3d at 1302.

The only limitations that Defendants contend were not disclosed in either the '675 Application or the Original Application are the "generally flat" limitations recited in claims 1 and 6 of the '178 Patent. Contrary to Defendants' contention, the Court finds that the "generally flat" limitations are disclosed in the specification and drawings included in the parent and grandparent applications. Plaintiffs correctly argue that the "generally flat" claim limitations did not have to be disclosed as proposed "claims" in the prior applications. Instead, the "disclosure" required can be evidenced by the written description in the specification or the drawings, in this case Figures 1-6. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1565 (Fed.Cir.1991) ("We agree with the district court's conclusion that drawings alone *may* be sufficient to provide the 'written description of the invention' required by [35 U.S.C. § 112, ¶1.]") (emphasis in original).

Here, the "generally flat" features were disclosed in both the '675 Application and the Original Application. Although the patentee did not choose to claim the "generally flat" features in 2003 and 2004, the drawings and written description in both the Original Application and the '675 Application disclose both of the "generally flat" limitations. The Original Application included four drawings, Figures 1-4. [Doc. No. 158-6 at 22-23]. The same four drawings appear in the '675 Application, together with two additional drawings, Figures 5 and 6, which added a divider feature (40) to the containers depicted in Figures 3 and 4. [Doc. No. 158-5 at 20-22]. All six drawings were included without alteration in the '178 Application. The shapes of the containers depicted in Figures 1-6 included in the Original Application and the '675 Application are not uniformly or perfectly cylindrical. As illustrated below, the containers depicted in the six figures disclose containers with a sidewall segment or "section" on the front of the device that is "generally flat" as compared to the shape of the rest of the container.





[Doc. No. 158-5 at 20-22]. Specifically, Figures 1-4 of the Original Application and the '675 Application disclose the claimed containers with continuous sidewalls that appear to be uniformly curved and rounded at the back and sides, but which becomes less curved and less rounded at the front or face of the containers. As illustrated, the arc or degree of curvature of the continuous sidewall at the front or face of the containers is less than that of sidewall to the sides and back of

11

the devices. Moreover, the arc or degree of curvature of the continuous sidewall at the front of the containers does not "follow the curvature" of the back and sides such that it will form or complete a uniform circle. Indeed, the Court found that the disputed term "generally flat sidewall section" should be construed to mean "a section of the sidewall that is not perfectly flat, and differs in its shape as compared to the remainder of the continuous sidewall," and that the disputed term "generally flat inwardly flexible panel" should be construed to mean "a portion of the flat sidewall section that is not perfectly flat, and differs in its shape as compared to the remainder of the continuous sidewall."

As illustrated below, the arc or degree of curvature of the continuous sidewall depicted in Figures 1-4 of the Original Application and the '675 Application is reduced at the front of the containers, opposite the handle, and is "generally" flat.



[Doc. No. 118 at 18].

The same is true of the containers depicted in Figures 5 and 6 of the '675 Application. Figures 5 and 6 show a container having the same continuous sidewall having a "generally flat" section at the front with a divider (40) added.



[Doc. No. 158-5 at 22]. Furthermore, initial claims 25-29 of the '675 Application describe a container "comprising a divider spanning the interior of said container, said divider being oriented generally parallel to said flexible panel." [Doc. No.158-5 at 17-18].[3] In order for the divider spanning the interior of the container to be generally parallel to the flexible panel, the flexible panel of the device must be generally flat, as Figures 5 and 6 illustrate. The phantom lines in Figures 4 and 5 also disclose that the sidewall section and the flexible panel portion of the sidewall section are "generally flat," and generally parallel to the divider in Figure 5.

In addition, the specification in each application describes a "preferred embodiment" of the invention having a "generally flat" sidewall section or "segment" and a "generally flat portion of the sidewall rim 20" consistent with the containers disclosed in Figures 1-6 of the '675 Application:

> *Referring now to FIG. 1, an embodiment of the inventive container 10 is shown* which is comprised of generally continuous side wall 12 which can be of any

---
[3] The limitation requiring that the "divider be oriented generally parallel to said flexible panel" appears in claims 1 and 7 of the '675 Patent.

> convenient shape, spanning shapes from square to circular to polygonal. Continuous sidewall 12 terminates at either end in upper sidewall end 14, and lower side wall end. … *As shown in FIG. 1,* upper side wall end 14, depending on the material used for the construction of side wall 12, can form in and of itself a side wall rim 20, or an additional structure 20 (FIG. 3) can be attached to upper side wall end 14 to form a discreet side wall rim 20 (FIG. 3). Generally, side wall rim 20 will take the shape of upper side wall end 14, however, alternatively, decorative materials could be used to modify the shaping of side wall rim 20. …
>
> *Side wall rim 20, in a preferred embodiment is comprised of side wall portion 24, which is a generally flat portion of side wall rim 20,* and which may, therefore, *differ, generally, in its shape as compared to the remainder of* side wall rim [20] *and side wall [12]*. For example, if side wall 12, in its construction, comprises a cylindrical container, *then side wall rim 20 will be comprised of a generally circular side wall rim portion 26 and a generally flat side wall rim portion or side wall segment or rim segment 24*. The utility and benefits of generally flat rim segment 24 will be described hereinafter. In a preferred embodiment, and in the vicinity of generally flat side wall rim portion 24, is flexible panel 28 which extends from side wall 12 toward generally flat side wall rim segment 24 to connect side wall 12 with rim segment 24.

[Doc. No. 136-22 at 10-11; Doc. No. 136-23 at 11-12; Doc. No. 136-11 at 18-19] (emphasis added).

The specification in the '675 Application (and the Original Application) also states:

> Further, the present invention, *as previously described*, allows the flexible portion of the container to mold to a shape against which it is pressed and to allow large volumes of fluid to be passed from the container onto the object *by virtue of the generally flat rim segment* which may contain a rubber cushion to ease contact with the head.

[Doc. No. 136-22 at 12] (emphasis added). This language indicates that the "rim segment" is configured to be "generally flat" so that the rim portion and/or flexible panel will *comfortably conform* and mold to the shape of the object it is pressed against (*i.e.*, a child's forehead). In summary, Figures 1 and 2 of the prior applications do not disclose a perfectly round or cylindrical container:



These figures, as well as Figures 3-6, show a container that is of an irregular shape. Although the illustrative container depicted in the drawings is generally circular *at the back and sides*, the portion or "segment" at the front of the container, opposite a handle, is "generally flat" and not circular or round like the rest. Accordingly, the disclosures of the invention as contained in the parent and grandparent applications provide sufficient detail to convince a person of ordinary skill in the art that the patentee possessed the "generally flat" limitations as claimed in the '178 Patent. Moreover, the disclosures would enable such persons to make and use the invention without "undue experimentation." *See, e.g., In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991). Indeed, the information conveyed by Figure 2 is enough for one skilled in the art to construct the inventive flexible panel pitcher with the "generally flat" limitations as depicted.

Accordingly, the Court finds that the effective filing date of claims 1 and 6 of the '178 Patent is February 4, 2003, the filing date of the Original Application, and not October 28, 2008, the date on which the '178 Application was filed with the Patent Office. This effective filing date is based on the disclosures made in the '675 Application, which claims priority from the Original Application. Specifically, the '178 Application claims priority from the '675 Application filed on February 2, 2004, which in turn claims priority from its parent, the Original Application filed on

February 4, 2003. Thus, the effective filing date of claims 1 and 6 of the '178 Patent is February 4, 2003. It is undisputed that Plaintiffs did not offer to sell or begin selling an embodiment of flexible panel pitcher invention until 2004, and after the "critical date" of February 4, 2002 (*i.e.*, one year before the effective filing date). As a result, the bar in 35 U.S.C. § 102(b) on which Defendants rely is not applicable.

Defendants base their argument on the remarks that the patentee made in response to the double patenting rejection. Defendants argue that the patentee told the PTO that both Figures 2 and 9 supported the new "generally flat" claims. According to Defendants, this means that the effective filing date for these claims is October 22, 2008, which is the filing date of the '178 Application. The Court disagrees. It is clear from the rejection and the response that the patentee was not relying exclusively on Figures 2 and 9 to make his point. Instead, Figures 2 and 9 were two examples showing that the "generally flat" limitations being added to the claims had been previously disclosed in the prior applications and the '675 Patent. The patentee indicated that "[the generally flat limitation] is not present in the claims of [the '675 patent], but it is supported in drawing Figures 2 and 9. *Therefore no new matter has been entered into the case.* It is believed this new limitation avoids the *'same invention'* type *double patenting* identified by the Examiner." [Doc. No. 143-5 at 86] (emphasis added). In other words, the container in Figure 9 possessed the same irregular shape and generally flat limitations as the container disclosed in Figure 2, as well as those in Figures 1, 3, 4, 5, 6, 7, and 8.

Defendants argue that *Bradford Co., v. Conteyor N.A., Inc*., 603 F.3d 1262 (Fed.Cir. 2010) is directly on point. [Doc. No. 186 at 4]. The Court finds that *Bradford* is inapposite. In *Bradford*, the patentee "told the patent examiner that the [parent application] did not teach the very feature" added to and claimed in the CIP. *Id.* at 1269. Here, the patentee did not argue that the parent

application did not include the "generally flat" limitation. Instead, the patentee did the opposite by referring to at least Figure 2, and stating that no new matter was entered into the case by the amendments. [Doc. No. 143-5 at 86]. Defendants also argue that there was no mention of a generally flat sidewall section or a generally flat flexible panel in the written description of the Original Application. [Doc. No. 158-2 at 5]. As indicated and discussed above, Defendants' contention is refuted by the intrinsic evidence. For example, Figures 1 and 2 show a container that is generally circular at the back and sides, and the portion or "segment" at the front of the container, opposite a handle, is "generally flat" and not circular or round like the rest.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 158] is DENIED, and Plaintiffs' Motion for Summary Judgment [Doc. No. 181] is GRANTED IN PART and DENIED IN PART. The Court finds that the effective filing date of claims 1 and 6 of the '178 Patent, which issued from the CIP application filed on October 22, 2008, is February 4, 2003. Accordingly, the Court finds that the '178 Patent is not invalid for failing to comply with the "on-sale bar" of section 35 U.S.C. § 102(b), because the sale of Plaintiffs' Shampoo Rinse Cup occurred after the critical date of February 4, 2002.

Monroe, Louisiana, this 15th day of May, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE