UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **MICHAEL L. McGINLEY, ET AL.** | **CASE NO. 3:17-CV-00821 LEAD** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LUV N' CARE, LTD., ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

This is a patent action involving U.S. Patent No. 8,636,178 (the '178 Patent). The '178 Patent issued on January 28, 2014, and is related to a "flexible panel pitcher device." Pending before the Court is the Motion to Exclude Testimony of Plaintiffs Expert Tiffany Lewis [Doc. No. 312] filed by Luv n' care, Ltd. ("LNC"), Admar International, Inc. ("Admar"), BuyBabyDirect, LLC ("BBD"), Bayou Graphics and Design, LLC ("BGD"), Control Services, Inc. ("CS"), and HHHII, LLC ("HHHII"), (collectively "Defendants"). Michael L. McGinley and S C Products, Inc., (collectively "Plaintiffs") filed an Opposition [Doc. No. 363]. The matter is fully briefed. The Court is now prepared to rule on the motion.[1]

**I.   LEGAL STANDARD**

   **a)  Fed. R. Evid. 702 and *Daubert* Motions**

Fed. R. Evid. 702 provides that a witness who is qualified "by knowledge, skill, experience, training, or education," may provide opinion testimony if that testimony will assist the trier of fact and "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The witness must possess

---

[1] After carefully considering the paper filed, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; LR 78.1.

"specialized knowledge, skill, experience, training, or education in the relevant field," in order to be qualified to express his expert opinion on the topic in issue. *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir. 1991).

The Supreme Court in *Daubert* charged trial courts with the task of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

> The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community . . . . These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered . . . . But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (internal citations omitted).

### b) 35 U.S.C. § 271(a)

Section 271(a) of U.S. Patent Law provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Section 271(a)'s reach is limited to activity within the United States as "no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007). "Where a physical product is being employed to measure damages for the infringing use of patented methods," only one domestic action needs to be present for territoriality to be satisfied. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015). In other words, if the product is made and used abroad but a sale takes place

domestically, U.S. patent law applies. *See id.* Additionally, U.S. patent law provides that a successful claimant is entitled to compensation for the infringement, including "a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C.§ 284. However, a claimant is not entitled to compensation for "defendant's foreign exploitation of a patented invention, which is not infringement at all." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013).

## II. ANALYSIS

Defendants state that they do not challenge the basic qualifications of Ms. Lewis to render opinions as McGinley's financial expert. [Doc. No. 312 at 6].[2] Defendants instead challenge the methodology employed by Ms. Lewis in quantifying and calculating reasonable royalty damages for alleged infringement of the '178 Patent under 35 U.S.C. § 271(a). *Id.* Specifically, Defendants originally argued that the following aspects of her opinions are unreliable or irrelevant as a matter of law:

> 1. Ms. Lewis should be precluded from calculating damages based on allegedly infringing sales occurring prior to the April 1, 2014 date of actual notice of infringement and such sales should be excluded from the royalty base;
>
> 2. Ms. Lewis should be precluded from calculating damages based upon foreign sales of the Nuby Tear Free Rinse Pail ("NTFRP") and such sales must also be excluded from the royalty base;
>
> 3. Ms. Lewis should be precluded from relying on the 2020 Chodorow License in support of a reasonable royalty rate of 1.00 per unit; and
>
> 4. Ms. Lewis should be precluded from relying on the unsuccessful 2021 Pearhead License Negotiations in support of a reasonable royalty rate of $1.00 per unit.

---

[2] Citations are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

*Id.* On March 16, 2023, the parties filed a notice that certain issues raised in this motion were resolved by joint stipulation. [Doc. No. 398]. Specifically, the parties indicated that the only remaining issue pending for resolution is "Part II,"[3] which relates to the calculation of a reasonable royalty for infringement under 35 U.S.C. §271(a) based upon foreign sales. *Id.* at 1 (citing Doc. No. 397 at ¶ 6). The parties ask the Court to deny Part I and Part III of the present motion as moot. [Doc. No. 398 at 1] (citing Doc. No. 397 at ¶¶ 1,5). Given the parties' stipulation, the Court finds that Part I and Part III should be denied as moot.

Regarding the issue of foreign sales of the Nuby Tear Free Rinse Cup ("NTFRP") (*i.e.*, Part II), Defendants argue that the Court should exclude all testimony, opinions, argument and evidence from Ms. Lewis that calculates reasonable royalty damages on a royalty base that includes sales of the accused NTFRP that occur solely outside the United States. [Doc. No. 312-1 at 13]. According to Defendants, none of the named Defendants in this action made any of the foreign sales of the NTFRP included in her royalty base. *Id.* Defendants further argue that Ms. Lewis assumed that sales of the NTFRP to foreign distributors may also be included in the royalty base. *Id.* at 14 (citing Doc. No. 314-1 at ¶ 19). Defendants contend that Ms. Lewis does not otherwise provide any factual basis or identify any theory of infringement under §271(a) justifying the inclusion of these extraterritorial sales in the royalty base. [Doc. No. 312-1 at 14].

Plaintiffs respond that Defendants' foreign sales argument relates to, at best, a factual dispute in this case to be resolved by the jury, not an issue of law or reliability of expert opinion.

---

[3] "Part I" corresponds to Number 1 in the list above, which relates to calculating damages based on allegedly infringing sales occurring prior to the April 1, 2014. "Part II" corresponds to Number 2 in the list above, which relates to calculating damages based upon foreign sales of the NTFRP. "Part III" corresponds to Numbers 3 and 4 in the list above, which relates to relying on the "2020 Chodorow License" and the "2021 Pearhead License Negotiations" in support of Ms. Lewis' opinions of the reasonable royalty rate.

[Doc. No. 363 at 7]. Plaintiffs argue that although these infringing sales were allegedly made to LNC's "foreign distributors," the evidence in this particular case is such that Plaintiffs should be compensated for these additional sales as infringing sales pursuant to the 35 U.S.C. §§ 271(a) and 284. *Id.* Plaintiffs contend that where a substantial level of sales activity occurs within the United States (in this case, from LNC's headquarters in Monroe), such sales are deemed "sales" within the U.S. for purposes of § 271(a) and damages should be awarded. *Id.* According to Plaintiffs, the calculations and opinions that Defendants are requesting the Court to exclude turn on multiple disputed facts that the jury must decide. *Id.* at 9.

Plaintiffs argue that chief among those facts is whether the level of the sales activity occurring at LNC's headquarters in Monroe was "substantial" so that those sales by Defendants are properly deemed to be sales from within the U.S. for purposes of § 271(a). *Id.* at 9 n.2. Plaintiffs further argue that Defendants' request to exclude Ms. Lewis' calculations in regard to LNC's "foreign sales" is improper, because those facts are and will remain disputed at the trial. *Id.* According to Plaintiff, Ms. Lewis' opinions concerning these sales is proper and Plaintiffs should be permitted to offer evidence relating to these sales at trial in support of their claims even if the products were made, delivered, and used entirely overseas. *Id.* at 10.

The Court finds that Defendants' motion should be denied. "It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations*, 711 F.3d at 1371 (citation omitted); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country."). As discussed above, 35 U.S.C. § 271 states in relevant part that

> whoever without authority makes, uses, *offers to sell*, *or sells* any patented invention, *within the United States* or imports into the United States any

> patented invention during the term of the patent therefor, infringes the patent.

(emphasis added). "The patent statute does not define the meaning of a 'sale' within the United States for purposes of § 271(a)." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377 (Fed. Cir. 2016). As a result, and in order to protect the rights of U.S. patent holders, courts have recognized that no "single, universally applicable fact" controls the answer of where a sale occurs for purposes of § 271(a). *Carnegie Mellon*, 807 F.3d 1308. The Federal Circuit has held that sales may be found to have occurred in the United States [for purposes of § 271(a)] where a substantial level of sales activity occurs here, even for products manufactured, delivered, and used entirely abroad. *Cal. Inst. of Tech. v. Broadcom Ltd.,* 25 F.4th 976, 993 (Fed. Cir. 2022) (affirming the use of an instruction apprising the jury of this law). While the place of negotiating, contracting, and actual or anticipated performance are all relevant in determining where a sale took place, when the majority of activities underlying a sales transaction occur outside the United States, there may not be liability under Section 271(a). *See Halo*, 831 F.3d at 1137-38.

Accordingly, "[t]he standards for determining where a sale may be said to occur do not pinpoint a single, universally applicable fact that determines the answer, and it is not even settled whether a sale can have more than one location." *Carnegie Mellon*, 807 F.3d at 1308 (citing *Halo*, 769 F.3d at 1378-79). Thus, it was not improper for Ms. Lewis to consider these sales in the royalty base given the testimony of LNC and its agents and employees. [Doc. No. 363 at 9 n. 2]. However, Plaintiffs will have to prove that these sales actually occurred within the United States. For example, Plaintiffs may prove that the level of the sales activity occurring at LNC's headquarters in Monroe was "substantial," and that those sales by LNC are properly deemed to be sales from within the U.S. for purposes of § 271(a). Accordingly, the Court agrees with Plaintiffs that the calculations and opinions that Defendants are requesting the Court to exclude turn on multiple

disputed facts that should be decided by the jury.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion to Exclude Testimony of Plaintiffs Expert Tiffany Lewis [Doc. No. 312] is **DENIED.**

- Part I, which relates to calculating damages based on allegedly infringing sales occurring prior to the April 1, 2014, is **DENIED AS MOOT**,

- Part III, which relates to relying on the "2020 Chodorow License" and the "2021 Pearhead License Negotiations" in support of Ms. Lewis' opinions of the reasonable royalty rate, is **DENIED AS MOOT.**

- Part II, which relates to calculating damages based upon foreign sales of the NTFRP, is **DENIED.**

MONROE, LOUISIANA, this 26th day of September 2023.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE