# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **MICHAEL L. McGINLEY, ET AL.** | **CASE NO. 3:17-CV-00821 LEAD** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LUV N' CARE, LTD., ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

This is a patent action involving U.S. Patent No. 8,636,178 (the '178 Patent). The '178 Patent issued on January 28, 2014, and is related to a "flexible panel pitcher device." Pending before the Court is the Motion to Exclude and Strike Portions of Expert Testimony of Phillip Brida [Doc. No. 322] filed by Michael L. McGinley and S C Products, Inc., (collectively "Plaintiffs"). Luv n' care, Ltd. ("LNC"), Admar International, Inc. ("Admar"), BuyBabyDirect, LLC ("BBD"), Bayou Graphics and Design, LLC ("BGD"), Control Services, Inc. ("CS"), and HHHII, LLC ("HHHII"), (collectively "Defendants") filed an Opposition [Doc. No. 358]. The matter is fully briefed. The Court is now prepared to rule on the motion.[1]

## I. LEGAL STANDARD

### a) Fed. R. Evid. 702 and *Daubert* Motions

Fed. R. Fed. R. Evid. 702 provides that a witness who is qualified "by knowledge, skill, experience, training, or education," may provide opinion testimony if that testimony will assist the trier of fact and "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The witness

---

[1] After carefully considering the paper filed, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; LR 78.1.

must possess "specialized knowledge, skill, experience, training, or education in the relevant field," in order to be qualified to express his expert opinion on the topic in issue. *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir. 1991).

The Supreme Court in *Daubert* charged trial courts with the task of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

> The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community . . . . These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered . . . . But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (internal citations omitted).

When applying *Daubert*, the Court's task "is to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). Importantly, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994). That said, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II. ANALYSIS

Plaintiffs move the Court to exclude and strike any testimony to be offered by Defendants' damages expert, Mr. Phillip Brida, regarding any of the "RoyaltySource Royalty Reports" on

which he relies. [Doc. No. 322-1 at 1] (citing Doc. No. 356-3 at ¶¶ 92-94).[2] Plaintiffs argue that the RoyaltySource Royalty Reports compile information from a plethora of different businesses in the "consumer, retail, and leisure" industries that market and sell a variety of different "consumer, retail, and leisure" products. [Doc. No. 322-12 at 1] (citing Doc. No. 356-3 at ¶93).

Plaintiffs contend that the "customary" royalty rates as stated by the RoyaltySource Royalty Reports are "industry-wide" and have no reasonable relationship with the parties, patents, and products at issue in this case. [Doc. No. 322-1 at 1]. Plaintiffs argue that use of such industry-wide reports would be speculative since it is impossible to tell whether the royalties paid by any of the "consumer, retail, and leisure" businesses in relation to the "consumer, retail, and leisure" products as the basis for the reports are fairly related. *Id.* Plaintiffs further argue that the same is true of the generic industry research reports Mr. Brida relies on in support of his opinions regarding the events and conditions of the market for baby care products. *Id.* at 3 (citing Doc. No. 356-3 at ¶¶ 20-23).

Defendants respond that Mr. Brida did not rely on this data to compute a royalty rate, but instead relied on this data "as a reasonableness check on Ms. Lewis' royalty conclusion." [Doc. No. 358 at 2] (citing Doc. No. 356-3 at ¶ 93). Defendants argue that Mr. Brida considered the industry database in examining the average and median royalty rates in the "Consumer Goods, Retail & Leisure" industry during the period of the hypothetical license term. [Doc. No. 358 at 5]. Defendants further argue that Mr. Brida noted that this category would include baby care products like the accused product. *Id.* Defendants contend that if Plaintiffs wish to attack the propriety of this data for use in this manner, the proper way to do so is through cross-examination or the presentation of contrary data. *Id.* at 6.

---

[2] Citations are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

Regarding the "industry research reports," Defendants argue that the data and materials relied upon by Mr. Brida included a November 2016 *Forbes* article addressing the baby care industry; market research regarding the effect of the COVID-19 pandemic on various categories of baby care products; and research from an industry research providers regarding the online baby product sales industry. *Id.* at 2 (Doc. No. 356-3 at ¶¶ 20-23). Defendants contend that while this data is largely empirical and not a direct component of a royalty calculation, both Mr. Brida and Ms. Lewis agree that it is proper to consider when analyzing the hypothetical negotiation and the resulting reasonable royalty. [Doc. No. 358 at 8]. Defendants further argue that Mr. Brida referenced well-respected and established industry sources, and provided precise data on the "other industry and market factors" that should be considered. *Id.* at 9.

For the following reasons, the Court finds that Plaintiffs' motion should be granted in part and denied in part. The Court's "gatekeeping obligation" applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174 (1999). While questions regarding which facts are most relevant for calculating a reasonable royalty are properly left to the jury, a critical prerequisite is that the underlying methodology be sound. Regarding the RoyaltySource Royalty Reports, Mr. Brida states that he "considered and reviewed several annual royalty rate industry studies procured by RoyaltySource (the "RoyaltySource Royalty Reports"), a royalty rate and licensing agreement database founded in 1997, as a reasonableness check on Ms. Lewis' royalty conclusion." [Doc. No. 356-3 at ¶ 93]. The problem, however, is that he has not shown that any of the "royalty rate industry studies" from the RoyaltySource Royalty Reports bear a reasonable relationship to the '178 Patent and shampoo rinse cups at issue in this case. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice.").

Courts have recognized that using generic industry data and royalty databases is improper when the data "is not tethered to the relevant facts and circumstances of the present case." *See, e.g., Multimedia Patent Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 U.S. Dist. LEXIS 165928, at *34 (S.D. Cal. Nov. 20, 2012) (excluding expert opinions based on generic industry data). Indeed, the Federal Circuit has cautioned "district courts performing reasonable royalty calculations [to] exercise vigilance when considering past licenses to technologies other than the patent in suit," *ResQNet.com, Inc. v. Lansa, Inc*, 594 F.3d 860, 869 (Fed. Cir. 2010), and to "account for differences in the technologies and economic circumstances of the contracting parties." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010).

Here, the Court finds that the RoyaltySource Royalty Reports are speculative and unreliable, because they are derived from unidentified and unquantified products marketed and sold by unidentified and unquantified businesses. [Doc. Nos. 322-3, 322-4]. The only identification is that the businesses were members of the "consumer, retail, and leisure industry." This information is too speculative and not reliable, because it is not tethered to the relevant facts and circumstances of the present case. Accordingly, the Court excludes Mr. Phillip Brida's expert testimony to the extent that it relies on or is based on the RoyaltySource Royalty Reports as part of his damages analysis [Doc. No. 356-3 at ¶¶ 92-94].

Turning to the "industry research reports," Mr. Brida cited this information to address the "other industry and market factors" identified by Plaintiffs' expert, Ms. Lewis. Both Mr. Brida and Ms. Lewis agree that it is proper to consider this type of empirical data when analyzing the hypothetical negotiation and the resulting reasonable royalty. [Doc. No. 359-2 at ¶ 16]. Thus, the Court agrees with Defendants that this information is neither speculative nor unreliable. If Plaintiffs want to attack the propriety of this data, the proper way to do so is through cross-

examination or the presentation of contrary data. Accordingly, Plaintiffs' motion to exclude any opinions and testimony to be offered by Mr. Phillip Brida on the identified "industry research reports" is denied [Doc. No. 356-3 at ¶¶ 20-23].

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Exclude and Strike Portions of Expert Testimony of Phillip Brida [Doc. No. 322] is **GRANTED IN PART** and **DENIED IN PART.**

- Mr. Phillip Brida is precluded from offering expert opinion testimony that relies on or is based on the RoyaltySource Royalty Reports as part of his damages analysis [Doc. No. 356-3 at ¶¶ 92-94].

- Mr. Phillip Brida is not precluded from offering expert opinion on the identified "industry research reports" [Doc. No. 356-3 at ¶¶ 20-23].

MONROE, LOUISIANA, this 26th day of September 2023.

                                                                      _____
                                                                      TERRY A. DOUGHTY
                                                                      UNITED STATES DISTRICT JUDGE